## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANEL GRANT, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:24-cv-00090-JAM |
| v. | ) |
| | ) |
| WORLD WRESTLING ENTERTAINMENT, INC., | ) |
| a/k/a WORLD WRESTLING ENTERTAINMENT, | ) |
| LLC; VINCENT K. MCMAHON; and JOHN | ) |
| LAURINAITIS, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT VINCENT K. McMAHON'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

James A. Budinetz (ct16068)
McElroy, Deutsch, Mulvaney &
   Carpenter, LLP
One State Street, 14th Floor
Hartford, CT  06103
Telephone: (860) 522-5175
Facsimile:  (860) 522-2796
jbudinetz@mdmc-law.com

**KASOWITZ BENSON TORRES LLP**

Jessica T. Rosenberg
   (admitted *pro hac vice*)
Jonathan L. Shapiro
   (admitted *pro hac vice)*
1633 Broadway
New York, NY  10019
Telephone: (212) 506-1700
Facsimile   (212) 506-1800
JRosenberg@kasowitz.com
JShapiro@kasowitz.com

*Attorneys for Defendant*
*Vincent K. McMahon*

**ORAL ARGUMENT REQUESTED**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 4

    I.    THERE ARE NO GROUNDS FOR THE COURT TO EXERCISE ITS "INHERENT POWER" AND IMPOSE SANCTIONS ON DEFENDANT OR HIS COUNSEL ........... 4

    II.   RULE 12(F) IS INAPPLICABLE AND, EVEN IF IT WERE, THE PRELIMINARY STATEMENT IS APPROPRIATE AND SHOULD NOT BE STRICKEN ..................... 5

CONCLUSION............................................................................................................................ 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Cabble v. Rollieson*,
   No. 04-cv-9413, 2006 WL 464078 (S.D.N.Y. Feb. 27, 2006) ................................................. 7

*Ferry v. Mead Johnson & Co., LLC*,
   No. 3:20-cv-00099, Doc. 82 (D. Conn. Aug. 26, 2020) ..................................................... 6, 8

*Hart v. World Wrestling Ent., Inc.*,
   No. 3:10-cv-0975, 2012 WL 1233022 (D. Conn. Apr. 10, 2012) ....................................... 5, 8

*Innovation Ventures LLC v. Pittsburg Wholesale Grocers Inc.*,
   No. 13-cv-06397, 2019 WL 3817389 (S.D.N.Y. Aug. 14, 2019) ........................................... 6

*Kounitz v. Slaatten*,
   901 F. Supp. 650 (S.D.N.Y. 1995) ..................................................................................... 5, 8

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976) .................................................................................................. 7

*Marshall v. Webster Bank, N.A.*,
   No. 3:10-cv-00908, 2011 WL 219693 (D. Conn. Jan. 21, 2011) ........................................... 6

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................................ 10

*Nimmons v. United States Tennis Ass'n*,
   No. 18-cv-02499, 2019 WL 8197772 (E.D.N.Y. Jan. 7, 2019) ......................................... 6, 7

*Politico v. Promus Hotels, Inc.*,
   184 F.R.D. 232 (E.D.N.Y. 1999) .......................................................................................... 5

*Prout v. Vladeck*,
   326 F.R.D. 407 (S.D.N.Y. 2018) .......................................................................................... 8

*Schoolcraft v. City of New York*,
   299 F.R.D. 65 (S.D.N.Y. 2014) ............................................................................................ 7

*Smith v. AVSC Int'l, Inc.*,
   148 F. Supp. 2d 302 (S.D.N.Y. 2001) ............................................................................... 5, 8

*Wermann v. Excel Dentistry, P.C.*,
   No. 13-cv-07028, 2014 WL 846723 (S.D.N.Y. Feb. 25, 2014) ........................................ 7, 8

*Wood v. Mike Bloomberg 2020, Inc.*,
 No. 20-cv-02489, 2023 WL 5747343 (S.D.N.Y. Sep. 6, 2023) .................................................7

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ................................................................................................................1, 5

Fed. R. Civ. P. 12(f) ............................................................................................................. *passim*

Defendant Vincent K. McMahon respectfully submits this memorandum of law in opposition to Plaintiff Janel Grant's Motion to Strike filed on April 24, 2024 (Dkt. No. 31).

## PRELIMINARY STATEMENT

Plaintiff's Motion to Strike is meritless and the height of hypocrisy. Having falsely accused Defendant in a public forum, despite an obligation to arbitrate, in an inflammatory 67-page Complaint that completely disregards the mandate of Rule 8(a)(2) of the Federal Rules of Civil Procedure, Plaintiff now seeks to strike the Preliminary Statement of the Memorandum of Law in Support of Defendant's Motion to Compel Arbitration (Dkt. No. 30-1) on the purported basis that it is too "inflammatory." Plaintiff fails to demonstrate, nor could she based on the standard, that this Court should use its "inherent power"—a power that must be exercised with restraint and discretion—to strike a preliminary statement providing context to a motion to compel arbitration. In addition, motions made under Rule 12(f), on which Plaintiff relies, are rarely granted and the Rule is inapplicable here because Defendant's Preliminary Statement is contained in its Memorandum of Law, which is not a pleading. Even if the Court were to invoke its inherent power and even if Rule 12(f) were somehow applicable, the Motion should be denied as the Preliminary Statement, including the pertinent factual statements within it, provides relevant context to the Motion to Compel Arbitration.

*First*, Plaintiff's Motion is based on the misguided premise that the Court should exercise its "inherent power" to impose sanctions—a power that courts "must take pains to exercise restraint and discretion when yielding" and is reserved for bad faith abuses of the judicial process proven by clear evidence—by striking Defendant's Preliminary Statement. It should not be exercised where a Defendant submits a brief containing pertinent background facts that the Plaintiff purports to find offensive. That power is reserved for bad faith litigation abuses. Plaintiff

cites no precedent, nor could she, for a court to invoke its inherent power to strike a preliminary statement for including pertinent background facts.

*Second*, recognizing that the Court should not invoke its "inherent power" here, Plaintiff relies on inapposite cases brought under Rule 12(f) of the Federal Rules of Civil Procedure, which allows a court to strike immaterial or scandalous allegations from pleadings. Not only are Rule 12(f) motions viewed unfavorably and rarely granted, but the Rule is inapplicable because Defendant's Preliminary Statement is contained in its Memorandum of Law, which is not a pleading. Even if the Court were to entertain the substantive merits of Plaintiff's Motion under Rule 12(f) (which it should not), Plaintiff is required to demonstrate that the Preliminary Statement has no bearing on the issues in the case. She cannot do so. The Preliminary Statement provides necessary background and context regarding the parties' consensual relationship and circumstances under which the Agreement was entered. For example, although Plaintiff quibbles with the term "fiancé" (Plaintiff claims that attorney Brian Goncalves was actually her "*ex*-fiancé"), the fact that Plaintiff was living in a luxury multi-million dollar building with another man during her entire relationship with Defendant is relevant context to the validity and enforceability of the arbitration provision, which Defendant bears the initial burden of showing. There is no basis to strike either the entire Preliminary Statement or any sentence within it simply because Plaintiff doesn't want those facts known to the public.

Plaintiff chose to violate the Parties' explicit agreement to "preserve the confidential and private nature" of any dispute that may arise by commencing this lawsuit. Ignoring her obligations to keep the nature of their relationship or the dispute private, the Complaint unnecessarily includes private sexual text messages from Defendant without including any of Plaintiff's responses to those texts—responses which are equally and often more aggressive and provocative than

2

Defendant's communications and show not only that the relationship was consensual, but also that in many instances the Plaintiff was the initiator. Indeed, while Defendant no longer is in possession of the text messages between the Parties as he deleted them when he broke off the relationship, the discovery in this case will show that Plaintiff sent him sexually explicit images of herself and texted him to say, among other things:

- That she was in love with him and he was the love of her life;
- That he was her best friend;
- That she wanted to have sex with him and providing graphic detail;
- That she fantasized about being held down, enjoyed being in pain, and wanted rough sex;
- That she wanted Defendant to watch her have sex with other people and know about her sex with others;
- That she wanted Defendant to give her thousands of dollars for clothes, plastic surgery, and other gifts;
- That she wanted to have a future with Defendant even after signing the Agreement; and
- That she wanted Defendant to keep living in the same building, so she could continue to see him, even after signing the Agreement.

Plaintiff sent messages like this to Defendant through the entire duration of their relationship—including through the time they signed the Agreement in January 2022. Plaintiff presumably still has all of these text messages but she did not include them in her publicly filed Complaint because she wanted to paint a distorted, false picture. It is indeed astonishing that after filing her highly salacious Complaint which omitted the truth about her own conduct, Plaintiff now takes issue with purported "mudslinging" and "vicious falsehoods attacking [one's] moral character" in Defendant's Motion to Compel Arbitration. (Dkt. Nos. 31 at 1; 31-1 at 3, 4.) Plaintiff cannot have it both ways, and her Motion should be denied for these reasons and those set forth herein.

3

**ARGUMENT**

**I.   THERE ARE NO GROUNDS FOR THE COURT TO EXERCISE ITS "INHERENT POWER" AND IMPOSE SANCTIONS ON DEFENDANT OR HIS COUNSEL**

Plaintiff asks this Court to use its "inherent power" to strike the Preliminary Statement of Defendant's Motion to Compel Arbitration in order to "address McMahon's shocking incivility." (Dkt. No. 31-1 at 3.)  But the cases Plaintiff cites stand for the simple proposition that a court can exercise its "inherent power" to sanction a party where they have committed extreme, bad-faith litigation abuses.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991); *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998); *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 352-53 (D. Conn. 1981).  The power was invoked in those cases to sanction parties for "attempt[ing] to perpetrate a fraud on the court," *Chambers*, 501 U.S. at 51, "'conscious[ly] disregard[ing] … their discovery obligations,'" *DLC Mgmt. Corp.*, 163 F.3d at 136, and their "prolonged and unjustified failure to provide discovery … [and] fail[ure] to obey the discovery orders of the court," *J.M. Cleminshaw Co.*, 93 F.R.D. at 344.  These cases recognize that a court must exercise its inherent power "with restraint and discretion." *Chambers*, 501 U.S. at 44; *DLC Mgmt. Corp.*, 163 F.3d at 136 ("Because of the potency of the court's inherent power, courts must take pains to exercise restraint and discretion when wielding it.").

There is no basis for the Court to exercise the "inherent power" doctrine here.  Plaintiff does not cite a single case, nor could she, where a court exercised such power to sanction a party for including relevant statements in a preliminary statement.  Plaintiff's belief that the facts in Defendant's Preliminary Statements are contrary to the misleading narrative she is trying to create is not a valid reason for the Court to strike them.  It is also unclear what relief Plaintiff seeks by requesting that the Court "admonish Defendant and his counsel"—that request appears in the

4

Notice of Motion, the introduction section of her brief supporting the motion, and in the conclusion of the brief, without any legal support or analysis.

Finally, in considering Plaintiff's request that the Court exercise its "inherent power," Defendant respectfully requests the Court consider Plaintiff's own conduct in filing a highly salacious, 67-page Complaint. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Courts in this Circuit have noted that "[t]he complaint should not plead evidence." *Politico v. Promus Hotels, Inc.*, 184 F.R.D. 232, 234 (E.D.N.Y. 1999) (citing *Geisler v. Petrocelli*, 616, F.2d 636, 640 (2d Cir. 1980)). In *Politico*, the court cautioned that the complaint should "avoid unnecessary facts, descriptive terms, and repetitions," must avoid "argumentative language," and not function as a "preview of counsel's argument to the jury at the end of the case." 184 F.R.D. at 233. Here, Plaintiff intentionally cast aside this obligation in a case that she knew would draw media attention, and that her irresponsible allegations—and especially her one-sided text messages—would have a profound impact on Defendant. Plaintiff thus improperly seeks to invoke this Court's inherent power even though her own pleading has violated the express mandate of the Federal Rules.

II. **RULE 12(F) IS INAPPLICABLE AND, EVEN IF IT WERE, THE PRELIMINARY STATEMENT IS APPROPRIATE AND SHOULD NOT BE STRICKEN**

Lacking support for her request that the Court exercise its "inherent power," Plaintiff's Motion relies on inapposite cases brought under Rule 12(f) pursuant to which a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *See Hart v. World Wrestling Ent., Inc.*, No. 3:10-cv-0975, 2012 WL 1233022, at *12 (D. Conn. Apr. 10, 2012) (striking statements in a complaint under Rule 12(f)); *Smith v. AVSC Int'l, Inc.*, 148 F. Supp. 2d 302, 317 (S.D.N.Y. 2001) (same); *Kounitz v. Slaatten*, 901 F. Supp. 650, 657-58 (S.D.N.Y. 1995) (same). Plaintiff's reliance on cases concerning motions to strike brought

5

under Rule 12(f)—which motions are viewed with "disfavor[]" and rarely granted, *Nimmons v. United States Tennis Ass'n*, No. 18-cv-02499, 2019 WL 8197772, at *4 (E.D.N.Y. Jan. 7, 2019)—is entirely misplaced.

As a threshold matter, Rule 12(f) is not applicable because it applies to ***pleadings***, not legal memoranda. "Courts in this Circuit routinely deny motions to strike under Rule 12(f) which target legal briefs and memoranda as opposed to pleadings." *Innovation Ventures LLC v. Pittsburg Wholesale Grocers Inc.*, No. 13-cv-06397, 2019 WL 3817389, at *1 (S.D.N.Y. Aug. 14, 2019) (collecting cases and denying motion to strike seeking to strike portions of a reply brief); *see also Marshall v. Webster Bank, N.A.*, No. 3:10-cv-00908, 2011 WL 219693, at *12 (D. Conn. Jan. 21, 2011) (denying a motion to strike reply memorandum because "a reply memorandum is not a 'pleading'"). Because the Preliminary Statement is contained with Defendant's *Memorandum of Law*—which is not a pleading—Rule 12(f) is simply inapplicable. *See id.* In the only case Plaintiff cites that involved statements made in a brief (rather than a pleading), *Ferry v. Mead Johnson & Co., LLC*, No. 3:20-cv-00099, Doc. 82 (D. Conn. Aug. 26, 2020), the court, in an oral bench ruling (the transcript of which is only available on PACER), struck the plaintiff's additional allegation made in an opposition to a Rule 12(b)(6) motion to dismiss that defendants were "killing infants for profits" because that additional allegation had "no value" where plaintiff's complaint alleged other grounds for punitive damages. *Id.* at 52:10–14 ("And you've alleged—you say ignored studies and continue to market the product. That's appropriate in an allegation for punitive damages. But what becomes inflammatory is language like killing infants for profit. There's no value in that phrase."). No such new inflammatory allegation was made here. Unlike in *Ferry*, the factual statements made by Defendant in the Preliminary Statement of his Memorandum of

6

Law regarding the Parties' history and background are entirely appropriate and have "value" because they are relevant to Defendant's Motion to Compel Arbitration.

Moreover, even if the Court were to consider the merits of Plaintiff's Motion under Rule 12(f), there is no basis to strike either (i) the Preliminary Statement or (ii) the relevant factual statements within it. To prevail on a Rule 12(f) motion to strike, the movant must show "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Nimmons*, 2019 WL 8197772, at *4 (internal quotation marks and citations omitted); *see also Schoolcraft v. City of New York*, 299 F.R.D. 65, 67 (S.D.N.Y. 2014) (denying motion to strike "inflammatory" statement that "bear[ed] on relevant issues"); *Wermann v. Excel Dentistry, P.C.*, No. 13-cv-07028, 2014 WL 846723, at *6 (S.D.N.Y. Feb. 25, 2014) (denying motion to strike preliminary statement and paragraphs from Amended Complaint that defendants claimed were "solely designed to publicly and gratuitously humiliate" them because they were relevant to the claims); *Cabble v. Rollieson*, No. 04-cv-9413, 2006 WL 464078, at *11 (S.D.N.Y. Feb. 27, 2006) (denying motion to strike unflattering allegations that were potentially relevant).

*First*, Assuming Rule 12(f) applies (and it does not), Plaintiff's indiscriminate request to strike the Preliminary Statement *in its entirety* is baseless. "To invoke Rule 12(f), a party must identify with specificity the portion of a pleading that it seeks to strike, and failure to do so bars relief under the rule." *Nimmons*, 2019 WL 8197772, at *5 (motions to strike must not be "sweeping" or "indiscriminate" but rather stated with "particularity") (citation omitted); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 894 (2d Cir. 1976) (a motion to strike requires that a pleading be "pruned with care"); *Wood v. Mike Bloomberg 2020, Inc.*, No. 20-cv-02489, 2023 WL 5747343, at *9 (S.D.N.Y. Sep. 6, 2023) (a motion to strike must "specifically identify which

portions of the [pleading] it seeks to strike"). For this reason, courts deny Rule 12(f) motions seeking to strike entire preliminary statements from pleadings. *See*, *e.g.*, *Prout v. Vladeck*, 326 F.R.D. 407, 410 (S.D.N.Y. 2018) (holding that "strik[ing] the entire Preliminary Statement [to defendants' counterclaims] … would be unjustified"). Here, Defendant's Preliminary Statement introduces Defendant's background for his motion to compel arbitration by describing the Agreement, pertinent facts about the parties and their relationship, the negotiation of the Agreement, and applicable law governing the motion. (Dkt. No. 30-1 at 1-4.) There is no basis to strike the Preliminary Statement in its entirety. *See Prout*, 326 F.R.D. at 410; *see also Wermann*, 2014 WL 846723, at *6.

*Second*, there is no basis to strike the specific statements in the Preliminary Statement concerning Plaintiff's relationships with her parents and Mr. Goncalves. Although Plaintiff contends that "[n]one of these statements are relevant in any way to the arguments made in [Defendant's Motion to Compel Arbitration]" (Dkt No. 31-1 at 3), these statements bear on and are highly relevant to Defendant's Motion.[1] They demonstrate the nature of the Parties' relationship and the circumstance and context under which the Agreement was entered, which, in

---

[1] In each case Plaintiff relies on, unlike here, the courts struck the statements in the pleading because they were irrelevant. In *Ferry*, as noted above, the court held that the additional allegations in the plaintiff's opposition to a 12(b)(6) motion to dismiss regarding "killing infants" had "no value" when other grounds were properly alleged for punitive damages. *Ferry*, No. 3:20-cv-00099, Doc. 82, 52:10–14. *In Hart*, the court held that statements regarding the defendant's conduct that either allegedly led to the plaintiff's husband's death or reflect a blatant disrespect to the decedent were "unnecessary and inflammatory," where the claims at issue were breach of contract and privacy claims involving the decedent's intellectual property. 2012 WL 1233022, at *12. In *Smith*, the court struck allegations regarding the defendant's behavior toward "other employees who were not also older white men" and plaintiff's "ethical obligations to report financial misconduct, and specific instances of such acts" as not relevant to the claims of employment discrimination. 48 F. Supp. 2d at 317–18. And in *Kounitz*, the court found that the complaint's allegations that the defendant "suffer[ed] from a personality disorder, ha[d] a deep-seated hatred of heterosexual, fertile, female lawyers, and emotionally abuse[d] her staff with deadlines and obscenities" were "immaterial and impertinent as well as inflammatory and scandalous" where the claims were based on gender discrimination. 901 F. Supp. at 659. Nothing in these cases supports Plaintiff's assertion that statements must be stricken just because they impugn Plaintiff's moral character. Indeed, Plaintiff's own cases support that even "clearly inflammatory" statements cannot be stricken if they are also "highly probative" to issues in dispute. *Smith*, 48 F. Supp. 2d at 318 (declining to strike "clearly inflammatory" allegations regarding a death threat to the plaintiff's family after reporting defendant's discrimination that had the potential to be "highly probative of retaliation").

turn, speak to the validity and enforceability of the Agreement, issues fundamental to Defendant's motion to compel arbitration. Plaintiff herself admits these facts are relevant in this litigation—it is Plaintiff who puts these very matters at issue in her Complaint in attacking the validity and enforceability of the Agreement. For example, Plaintiff attempts to paint herself as extremely vulnerable when the Parties met and that she was in a financial crisis from unemployment, partly because of the loss of her parents and the foreclosure on her parents' home. (*See*, *e.g.*, Dkt. 1 ("Compl.") ¶¶ 3, 46, 53.) Based on such allegations, the Complaint alleges that "Ms. Grant entered into the contract under duress and undue influence" because, among other things, "[t]here was a drastic power difference and economic disparity: Ms. Grant, who had never held a paying office job in her life due to caretaking for her parents, was up against McMahon and WWE – titans of the wrestling and entertainment worlds." (*Id.* ¶ 281.) In light of this, there is no basis for Plaintiff to argue that Defendant is not entitled to address her allegations in a public forum.

With support from publicly available court filings—not "groundless accusations" as described by Plaintiff—Defendant's Preliminary Statement refutes Plaintiff's false allegations and provides necessary context for the Motion to Compel Arbitration by establishing that: (i) when the Parties met, two years had passed since her father passed away, and her mother passed away prior[2]; (ii) Plaintiff responded to requests regarding the foreclosure action by stating she did not want to be associated with "any of this"; (iii) the neighbor of Plaintiff's parents informed the investigator in the foreclosure action that, before Plaintiff's mother passed away, the neighbor would visit often, bring food to Plaintiff's mother, and help around the house; and (iv) Plaintiff's father lived in a senior home before he passed away, while Plaintiff resided in her luxury apartment with Mr. Goncalves. (*See* Dkt. No. 30-1 at 1–2.) These facts bear on the vulnerability Plaintiff alleges

---

[2] Defendant does not suggest that a deadline applies to the grief for losing one's parents. However, the passage of significant time before the Parties met is relevant to the vulnerability Plaintiff alleges she felt.

9

when the Parties met, both emotionally and financially, especially in light of the Complaint's allegations of "Defendants' predatory conduct," and that "Ms. Grant was a [s]ubordinate and [v]ulnerable [v]ictim to [p]redators." (*See* Compl. ¶¶ 26, Factual Allegations Section III at 47.)

Plaintiff also attacked the validity of the Agreement by arguing that "[t]he NDA purports to silence a victim of unlawful sexual abuse and prevent her from taking steps to protect other women at WWE," and that the Agreement was a contract of adhesion because she had "no meaningful choice." (*See* Compl. ¶¶ 282, 284.) Defendant's Preliminary Statement provides the necessary and crucial context that the Parties were involved in a consensual relationship and that the Agreement was clearly bargained for. Such background information underscoring the consensual nature of the Parties' relationship, which is devoid of deceit and coercion, includes that the Parties were fully aware of each other's other romantic affairs. (*See* Dkt. No. 30-1 at 2.) Further, the Complaint's implication that Plaintiff was faced with "titans of the wrestling and entertainment worlds" single-handedly is belied by the fact that she was engaged to a successful lawyer and high-ranking entertainment industry executive (Mr. Goncalves) and had/has resided with him for years, including during the time the relevant events in this action allegedly occurred. (*See* Compl. ¶ 281.) Critically, while Plaintiff's Motion to Strike disputes the status of her relationship with Mr. Goncalves (Plaintiff now claims she was his *ex*-fiancé), it concedes that Plaintiff resided with him during her relationship with Defendant. To the extent that Plaintiff disagrees with any of Defendant's factual statements concerning her parents or Mr. Goncalves, the proper means to respond to them is in her opposition papers to the Motion to Compel Arbitration, not in a Motion to Strike. *See Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 229 (2d Cir. 2016) (explaining that "[i]n deciding motions to compel, courts apply a 'standard similar to that

applicable for a motion for summary judgment.'") (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)).

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that Plaintiff's Motion to Strike be denied.

Date: May 13, 2024

Respectfully submitted,

| **McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP** | **KASOWITZ BENSON TORRES LLP** |
|---|---|
| James A. Budinetz (ct16068)<br>McElroy, Deutsch, Mulvaney & Carpenter, LLP<br>One State Street, 14th Floor<br>Hartford, CT  06103<br>Telephone: (860) 522-5175<br>Facsimile:  (860) 522-2796<br>jbudinetz@mdmc-law.com | By: */s/ Jessica T. Rosenberg*<br>  Jessica T. Rosenberg<br>    (admitted *pro hac vice*)<br>  Jonathan L. Shapiro<br>    (admitted *pro hac vice)*<br>  1633 Broadway<br>  New York, NY  10019<br>  Telephone: (212) 506-1700<br>  Facsimile   (212) 506-1800<br>  JRosenberg@kasowitz.com<br>  JShapiro@kasowitz.com<br><br>  *Attorneys for Defendant*<br>  *Vincent K. McMahon* |

**CERTIFICATE OF SERVICE**

   I certify that on May 13, 2024 a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

                 */s/ Jessica T. Rosenberg*