**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JANEL GRANT, | : | |
| | : | |
| Plaintiff, | : | Case No.: 3:24-cv-00090-SFR |
| | : | |
| vs. | : | |
| | : | |
| WORLD WRESTLING | : | |
| ENTERTAINMENT, INC. n/k/a WORLD | : | |
| WRESTLING ENTERTAINMENT, LLC; | : | |
| VINCENT K. MCMAHON; and JOHN | : | January 13, 2025 |
| LAURINAITIS, | : | |
| | : | |
| Defendants. | : | |

### PLAINTIFF'S RENEWED MOTION FOR STATUS CONFERENCE

Plaintiff Janel Grant ("Plaintiff" or "Ms. Grant") respectfully renews her request for a status conference with the Court. Since Plaintiff submitted her initial motion on January 2, 2025 (ECF No. 88), significant developments have occurred both within and without this Court. Plaintiff writes to inform the Court of the new status quo and request its guidance on how best to move this litigation forward.

### I.    FACTUAL BACKGROUND

#### A.    Plaintiff Sued WWE, Vince McMahon, and John Laurinaitis for Sexual Assault & Sex Trafficking.

Plaintiff Janel Grant is a former employee of World Wrestling Entertainment, Inc. ("WWE") who was subjected to physical and emotional abuse, sexual assault and sexual trafficking perpetrated by former WWE Chairman Vince McMahon, and former WWE senior executive John Laurinaitis. (Compl., ECF No. 1.) While Ms. Grant was dealing with profound grief following the loss of her parents, Defendant McMahon coerced Ms. Grant into employment by promising to "give her a life" at WWE. (Compl. ¶¶ 46-58.) He then groomed Ms. Grant for treatment as a commodity for sexual abuse, offering her to other men, including her boss Defendant

Laurinaitis (Compl. ¶¶ 150-186) and prospective WWE talent (Compl. ¶¶ 187-201). Defendant McMahon forced Plaintiff to engage in extreme sexual encounters and create explicit content that he then distributed—both inside and outside the WWE— all while threatening her reputation and livelihood. (Compl. ¶¶ 126-129, 133-137, 146-147, 177-180.) When Ms. Grant became viewed as a potential liability to WWE, Defendant McMahon coerced her into signing a non-disclosure agreement (the "NDA") to prevent her from speaking out. (Compl. ¶¶ 202-221.) After the NDA was signed, Defendant McMahon again sexually assaulted Ms. Grant. (Compl. ¶¶ 225-226.)

In January 2024, Plaintiff initiated this action to assert claims against Defendants under the Speak Out Act, the Trafficking Victims Protection Act, and for negligence, civil battery, and intentional or negligent infliction of emotional distress. (Compl. ¶¶ 271-337).

### B.    This Action was Stayed in June 2024 at the Request of Federal Law Enforcement.

This matter was stayed on June 11, 2024, to accommodate the Government's criminal investigation into Defendants. *See* Order of Stay and Denial Without Prejudice of Pending Motions [the "Stay Order"], ECF No. 68.

### C.    The Government Declined to Request Renewal of the Stay in December 2024.

On December 11, 2024, the Government advised Plaintiff, through her counsel, that it did not plan to seek an extension of the stay and could continue its investigation of Defendants without the stay.

### D.    Defendants Filed Renewed Motions to Compel Arbitration after Plaintiff Informed Defendants of Her Forthcoming Amended Complaint.

At the time that the Stay Order was granted, Defendants had pending motions to compel arbitration based upon an arbitration provision in the NDA. (ECF Nos. 30, 35, 61. In connection with the Stay Order the Court declined to rule on Defendants' Motions to Compel Arbitration: "In light of the stay of this action and the possibility of any change of circumstance during the

pendency of the stay, the Court DENIES the defendants' pending motions to compel arbitration (Docs. # 30, #35, and #61) without prejudice to renewal within two weeks of any future order of the Court lifting the stay." *See* Stay Order.

Plaintiff wrote to Defendants on December 16, 2024, to advise Defendants that Plaintiff is preparing to amend her complaint and to propose a joint briefing schedule. (*See* ECF No. 88-1, Ex. A at 2.) Counsel for Defendant McMahon, on behalf of all Defendants, asked for time to confer with their clients. A week later, on December 23, 2024, Counsel for Defendant McMahon responded by email that "Defendants are filing their motions to compel arbitration." (ECF No. 88-1, Ex. A at 1.) Minutes later, Defendant McMahon filed a Motion to Compel Arbitration and accompanying papers. *See* ECF No. 85. Later that evening, Defendant WWE filed its own motion to compel arbitration. *See* ECF No. 86. Defendant Laurinaitis filed a joinder the next day. *See* ECF No. 87. Notably, these motions to compel arbitration were filed prior to an order of the Court lifting the stay, as prescribed by the language of the Stay Order. *See* Stay Order.

Plaintiff moved for a status conference on January 2, 2025, to request that the Court issue a new scheduling order to reset deadlines following the lift of the stay. ECF No. 88. Defendants did not consent to Plaintiff's motion for status conference, instead filing their motions to compel.

**E.    This Case was Transferred to Judge Russell on January 7, 2025.**

On January 7, 2025, this case was reassigned to Judge Sarah F. Russell, a newly-appointed member of the District of Connecticut federal bench, *sua sponte*. (Order of Transfer, ECF No. 89.)

Plaintiff's request for a status conference is still pending.

**F.      McMahon Settles Charges for Securities Law Violations Brought By The SEC, Agrees to Pay $1.7 Million in Civil Penalties & Restitution.**

On January 10, 2025, the Securities and Exchange Commission ("SEC") issued a press

release announcing it has reached a settlement agreement with Defendant McMahon for securities

violations related to this matter:

> The Securities and Exchange Commission today announced settled charges against Vince McMahon, the former Executive Chairman and CEO of World Wrestling Entertainment Inc., for signing two settlement agreements, one in 2019 and one in 2022, on behalf of himself and WWE without disclosing the agreements to WWE's Board of Directors, legal department, accountants, financial reporting personnel, or auditor. Doing so circumvented WWE's system of internal accounting controls and caused material misstatements in WWE's 2018 and 2021 financial statements.
>
> **According to the SEC's order, one settlement agreement obligated McMahon to pay a former employee $3 million in exchange for the former employee's agreement to not disclose her relationship with McMahon and her release of potential claims against WWE and McMahon**, and the second agreement obligated McMahon to pay a former WWE independent contractor $7.5 million in exchange for the independent contractor's agreement to not disclose her allegations against McMahon and her release of potential claims against WWE and McMahon. The order finds that, because McMahon failed to disclose the agreements to WWE, WWE did not evaluate the disclosure implications or the appropriate accounting for these transactions in its financial statements. The SEC's order finds that, because the payments required by the 2019 and 2022 agreements were not recorded, WWE overstated its 2018 net income by approximately 8 percent and its 2021 net income by approximately 1.7 percent. In addition, according to the order, these payments should have been disclosed as related party transactions.
>
> The order further finds that McMahon signed management representation letters that were provided to WWE's auditor that did not disclose the existence of either settlement agreement. After learning of the settlement agreements, WWE issued a restatement of its financial statements in August 2022.
>
> [. . .]
>
> McMahon consented to the entry of the SEC's order finding that he violated the Securities Exchange Act by knowingly circumventing WWE's internal accounting controls and that he directly or indirectly made or caused to be made false or misleading statements to WWE's auditor. The order also finds that McMahon caused WWE's violations of the reporting and books and

records provisions of the Exchange Act. Without admitting or denying the SEC's findings, McMahon agreed to cease-and-desist from violating those provisions, pay a $400,000 civil penalty, and reimburse WWE $1,330,915.90 pursuant to Section 304(a) of the Sarbanes-Oxley Act.

Press Release 2025-1, SEC, *Vince McMahon, Former CEO of WWE, Charged for Failure to Disclose to WWE Two Settlement Agreements He Executed on Behalf of WWE* (Jan. 10, 2025), https://www.sec.gov/newsroom/press-releases/2025-1 (emphasis added); *see also* Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, *SEC v. McMahon*, Admin. Proc. File No. 3-22391 (Jan. 10, 2025) [the "SEC Consent Order"], https://www.sec.gov/files/litigation/admin/2025/34-102143.pdf.

One of the two agreements cited in the SEC Consent Order is the NDA Ms. Grant was coerced to sign, and is the same agreement Defendants invoke to propose this Court compel Ms. Grant to arbitrate her claims against them. (*See* ECF No. 85-87.) Accordingly, the SEC Consent Order is a material development that is highly relevant to this matter.

## II.  PLAINTIFF RESPECFULLY REQUESTSTHAT THE COURT HOLD A STATUS CONFERENCE AT ITS EARLIEST CONVENIENCE

In light of these recent and significant developments, Plaintiff renews her request for a status conference at the Court's earliest convenience.

Since no order was entered formally lifting the stay and the Court did not have time to respond to Plaintiff's status conference request before the matter was transferred, it is unclear if or when responses to Defendants' pending Motions to Compel Arbitration are currently due. In any event, good cause exists to grant Plaintiff an extension of time to respond to Defendants' Motions, in light of the recent SEC Consent Order, which is highly relevant to Defendants' Motions seeking to enforce the NDA Motions seeking to enforce the NDA.

Plaintiff still intends to amend her complaint as of right.  (*See* ECF No. 88 at 2.)  Though Plaintiff was prepared to on January 15, the recent SEC Consent Order and findings regarding Defendants' nondisclosure agreement with Ms. Grant necessitate additional time for her counsel to assess these developments and incorporate these new (and still-developing) facts into her Amended Complaint.  Plaintiff believes that submitting one, comprehensive Amended Complaint after a proper investigation of these developments will promote efficiency and best preserve judicial resources.

It is clear that the Court's guidance is needed to reach consensus on a schedule to move this litigation forward.  Plaintiff respectfully requests the Court schedule a status conference at its earliest convenience, and enter an order clarifying that no further submissions are due until the Court instructs otherwise.

In her January 2 Motion, Plaintiff proposed a potential schedule for the parties' submissions.  (*See* ECF No. 88 at 3.)  She respectfully withdraws this proposal, as it no longer reflects the needs of this case.

III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court hold a status conference at its earliest convenience to reset deadlines following the expiration of the Stay Order and to issue a revised briefing schedule.

**PLAINTIFF JANEL GRANT**


By  */s/ Ann E. Callis*
     HOLLAND LAW FIRM, LLC
     Eric D. Holland (phv207692)
     Gregory R. Jones (phv207693)
     211 North Broadway, Suite 2625
     St. Louis, MO 63102
     Tel: (314) 241-8111/Fax: (314) 241-5554
     eholland@hollandtriallawyers.com
     gjones@hollandtriallawyers.com

     Ann E. Callis (phv207694)
     6181 Bennett Drive, Suite 210
     Edwardsville, Illinois 62025
     Tel: (618) 452-1323/Fax: (618) 452-8024
     acallis@hollandtriallawyers.com

     */s/ Erica O. Nolan*
     David A. Slossberg (ct13116)
     Erica O. Nolan (ct31097)
     HURWITZ, SAGARIN, SLOSSBERG & KNUFF, LLC
     135 Broad Street
     Milford, CT 06460
     Tel: (203) 877-8000/Fax: (203) 878-9800
     DSlossberg@hssklaw.com
     ENolan@hssklaw.com

8

## CERTIFICATE OF SERVICE

This is to certify that on January 13, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing.  Parties may access this filing through the Court's electronic system.

/s/ Erica O. Nolan
Erica O. Nolan