# UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANEL GRANT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:24-cv-00090-SFR |
| v. | ) | |
| | ) | |
| WORLD WRESTLING ENTERTAINMENT, INC., | ) | |
| a/k/a WORLD WRESTLING ENTERTAINMENT, | ) | |
| LLC; VINCENT K. MCMAHON; and JOHN | ) | |
| LAURINAITIS, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT VINCENT K. McMAHON'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

**McCARTER & ENGLISH, LLP**

James A. Budinetz (ct16068)
McCarter & English, LLP
CityPlace I, 185 Asylum Street
Hartford, CT 06103
Telephone: (860) 275-6765
Facsimile: (860) 724-3397
jbudinetz@mccarter.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Jessica T. Rosenberg
  (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
jrosenberg@akingump.com

*Attorneys for Defendant*
*Vincent K. McMahon*

## Table of Contents

INTRODUCTION ........................................................................................................ 2

I.    The Court Should Deny Plaintiff's Motion for Leave to Amend and Should Refuse
to Modify Its Scheduling Order ....................................................................................... 3

    A.   Plaintiff Fails to Justify Her Undue Delay in Moving to Amend the Complaint, or to
    Demonstrate Good Cause for Amending This Court's Scheduling Order .......................... 4

    B.   Plaintiff's Motion Is Made in Bad Faith ................................................................ 6

    C.   Plaintiff's Proposed Amendments Are Futile ....................................................... 10

        1.   SEC Allegations ........................................................................................ 11

        2.   Celebrity Doctor Allegations ..................................................................... 14

        3.   Arbitration Allegations .............................................................................. 15

            a. Plaintiff's Arbitration Allegations Fail as a Matter of Law ....................... 16

            b. The Arbitration Allegations Are Unnecessary to "Respond to Issues Raised" in the
            Motions to Compel Arbitration ...................................................................... 17

        4.   Stale Allegations ....................................................................................... 17

    D.   Defendant McMahon Has Been Prejudiced by All of the Above ............................. 18

CONCLUSION .......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<strong><small>PAGE(S)</small></strong>

<small>**CASES**</small>

*AA Med. P.C. v. Almansoori*,
  No. 20-cv-3852, 2023 WL 7688688 (E.D.N.Y. Oct. 4, 2023) .................................................7

*Barrios-Contreras v. Big Fish Ent. LLC*,
  No. 23-cv-5821, 2024 WL 3435854 (S.D.N.Y. July 17, 2024)..............................................18

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................................13

*Best v. Schneider*,
  No. 12-cv-6142, 2015 WL 5567062 (E.D.N.Y. Sept. 21, 2015) ...........................................13

*Boyette v. Montefiore Med. Ctr.*,
  No. 24-cv-1279, 2025 WL 48108 (2d Cir. Jan. 8, 2025).......................................................11

*Cresswell v. Sullivan & Cromwell*,
  922 F.2d 60 (2d Cir. 1990)......................................................................................................4

*DeFrancesco v. Mirador Real Est.*,
  No. 18-cv-4032, 2022 WL 203147 (S.D.N.Y. Jan. 24, 2022) ...............................................17

*Empire Merchants, LLC v. Reliable Churchill LLC*,
  902 F.3d 132 (2d Cir. 2018)..................................................................................................11

*Front St. Commons, LLC v. Acadia Ins. Co.*,
  No. 17-cv-284 (VLB), 2018 WL 7572375 (D. Conn. Mar. 27, 2018) ..................................16

*Hadid v. City of New York*,
  182 F. Supp. 3d 4 (E.D.N.Y. 2016), *aff'd*, 730 F. App'x 68 (2d Cir. 2018)............................8

*Health-Chem Corp. v. Baker*,
  915 F.2d 805 (2d Cir. 1990)....................................................................................................3

*In re IBM Arb. Agreement Litig.*,
  76 F.4th 74 (2d Cir. 2023) ....................................................................................................10

*Kutluca v. PQ New York Inc.*,
  266 F. Supp. 3d 691 (S.D.N.Y. 2017)...................................................................................18

*Lees v. Graduate Ctr., City Univ. of New York*,
  696 F. App'x 530 (2d Cir. 2017) ...........................................................................................11

*Lucente v. Int'l Bus. Machines Corp.*,
    310 F.3d 243 (2d Cir. 2002)........................................................................3, 16

*McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ...................................4

*Park B. Smith, Inc. v. CHF Indus. Inc.*,
    811 F. Supp. 2d 766 (S.D.N.Y. 2011)........................................................................4

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000)........................................................................2, 4, 6

*Richardson Greenshields Sec. Inc. v. Mui-Hin Lau*,
    113 F.R.D. 608 (S.D.N.Y. 1986) ........................................................................7, 10

*Singh v. Deloitte LLP*,
    123 F.4th 88 (2d Cir. 2024) ........................................................................10

*Travelex Currency Serv., Inc. v. Puente Enters., Inc.*,
    449 F. Supp. 3d 385 (S.D.N.Y. 2020)........................................................................4

*United States v. Buff*,
    No. 23-cv-1070, 2024 WL 4262956 (2d Cir. Sept. 23, 2024) ............................................4, 6

*United States v. Cardroom Int'l, LLC*,
    726 F. App'x 98 (2d Cir. 2018) ........................................................................6, 7, 8

*Usov v. Lazar*,
    No. 13-cv-818, 2014 WL 4354691 (S.D.N.Y. Sept. 2, 2014) ............................................11

*Yeboah v. Bank of Am., N.A.*,
    No. 18-cv-2020 (VAB), 2019 WL 3388045 (D. Conn. July 26, 2019)....................................7

**OTHER AUTHORITIES**

FED. R. CIV. P. 8(a)(2)........................................................................8

Restatement (Second) of Contracts § 380 (Am. Law. Inst. 1981) ............................................16

Defendant Vincent K. McMahon, by and through his undersigned attorneys, respectfully files this opposition to Plaintiff's Motion for Leave to Amend Complaint (the "<u>Motion</u>") (Dkt. ## 94 ("<u>Mtn.</u>"), 94-1 ("<u>Mem.</u>")).

## **<u>INTRODUCTION</u>**

Plaintiff improperly filed her complaint (the "<u>Complaint</u>") in the wrong forum—this public Court—over a year ago. (*See* Dkt. # 1.) Since then, Defendants have twice timely moved to transfer this case to its proper forum—arbitration—and Plaintiff has twice ignored her deadlines to respond to those motions. (*See* Dkt. ## 30, 35, 49, 61, 85-87.) Now, after failing to timely amend the Complaint by the Court's deadline, (*see* Dkt. # 7), and without any attempt to justify such failure, Plaintiff seeks in bad faith to amend the Complaint. This Court retains discretion to deny leave to amend where such leave is sought after a court-ordered deadline has passed, and the movant fails to establish "good cause" for amending that order. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). Here, because a finding of good cause "depends on the diligence of the moving party," *id.*, the Court should deny Plaintiff's request. As described fully herein, Plaintiff has made multiple misrepresentations, acted and continues to act in bad faith, has proposed futile amendments, and has not demonstrated good cause for her delay.

Plaintiff disingenuously claims that "key factual developments" prompted her proposed amendments and constitute good cause to amend. (Mtn. at 1.) Yet, most of Plaintiff's proposed amendments comprise years-old allegations purportedly derived from Plaintiff's devices, records, or recollection (whether real or imagined). These "new" allegations were always known (or conjured) by Plaintiff but were intentionally omitted from the original complaint. The same is true of Plaintiff's otherwise unjustified decision to deanonymize the names of various high-profile individuals. Plaintiff fails to identify—nor could she—even a single reason for this delay. The

revelation of these stale allegations and individual names is nothing more than an attempt to exploit this Court's docket to create another press cycle. Indeed, Plaintiff has been open about this objective, as conveyed by her counsel during a press conference hosted while this case was stayed: to bring "more firepower" to her case from a PR perspective.[1] Bad faith is the only reasonable inference to account for her undue delay in including these stale allegations and names in her pleading. To the extent that Plaintiff endeavors to mask the stale allegations with a handful that are actually "new" (in that the events post-date the Complaint), her attempt fails. Adding these new allegations would be futile because they add no value to the substantive claims, pertain to released claims or those subject to arbitration, or are otherwise barred as a matter of law.

Under these circumstances, no definition of "justice" requires allowing Plaintiff to amend, and Plaintiff fails to demonstrate "good cause" for altering this Court's long-standing deadlines. Because Plaintiff has failed to exercise the requisite diligence to justify her extensive delay, moves this Court in bad faith, and proposes adding allegations that would be futile, the Court should deny Plaintiff's Motion.

## ARGUMENT

I.  **The Court Should Deny Plaintiff's Motion for Leave to Amend and Should Refuse to Modify Its Scheduling Order**

"Although [Federal Rule of Civil Procedure] 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied." *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("Where it appears

---

[1] Alfred Konuwa, *Janel Grant's Attorneys Hold Press Call Ahead of 'Mr. McMahon' Netflix Docuseries*, Forbes (Sep. 19, 2024), https://www.forbes.com/sites/alfredkonuwa/2024/09/19/janel-grants-attorneys-hold-press-call-ahead-of-mr-mcmahon-netflix-docuseries/; *see also* Jerome Wilen, *Notes from Janel Grant press conference addressing 'Mr. McMahon' Netflix docuseries*, WWE News (Sep. 19, 2024), https://www.wrestleview.com/top-story/328091-notes-from-janel-grant-press-conference-ahead-of-mr-mcmahon-netflix-docuseries/.

that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny

leave to amend."). Indeed, motions for leave to amend "are ultimately within the discretion of the

district court judge, who may deny leave to amend for 'good reason, including futility, bad faith,

undue delay, or undue prejudice to the opposing party.'" *Travelex Currency Serv., Inc. v. Puente

Enters., Inc.*, 449 F. Supp. 3d 385, 394-95 (S.D.N.Y. 2020) (quoting *McCarthy v. Dun &

Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Here, Plaintiff has failed to exercise the

requisite diligence to justify her delay or to warrant a departure from this Court's scheduling order,

the Motion is made in bad faith, and her proposed amendments would be futile—all of which are

standalone bases to deny leave to amend. The inevitable delay any such amendment would cause

prejudices Defendant McMahon by further postponing the resolution of his motion that seeks to

have this dispute adjudicated in the agreed upon forum.

### A. Plaintiff Fails to Justify Her Undue Delay in Moving to Amend the Complaint, or to Demonstrate Good Cause for Amending This Court's Scheduling Order

The Second Circuit has held that it is well within the court's discretion to deny leave to

amend where such leave is sought after a deadline set in a court order has passed, and the movant

fails to establish "good cause" for amending that order. *Parker*, 204 F.3d at 340. Good cause

"depends on the diligence of the moving party." *Id.* Furthermore, as the party moving to amend,

Plaintiff has the burden to provide the Court with a "satisfactory explanation for the delay."

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990); *see also United States v. Buff*,

No. 23-cv-1070, 2024 WL 4262956, at *3 (2d Cir. Sept. 23, 2024) (finding explanation for delay

unsatisfactory where movant had "longstanding knowledge" of the facts necessary to raise her

affirmative defense). While mere delay may be an insufficient basis to deny leave to amend, "the

longer the period of an unexplained delay, the less will be required of the nonmoving party in

terms of a showing of prejudice." *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766,

779 (S.D.N.Y. 2011). Here, Plaintiff fails to demonstrate a satisfactory reason for her delay in moving to amend, nor the requisite diligence necessary to establish good cause for amending the longstanding scheduling order that she has ignored.

Plaintiff's Motion offers no explanation for her delay in filing a Proposed Amended Complaint more than a year into this case. Instead, throughout her Motion, Plaintiff misrepresents to the Court the history of this case, as well as her own words and actions. The Court's Order on Pretrial Deadlines stated that all amendments of the pleadings "shall be filed within . . . (i) 35 days after the appearance of the last defendant." (Dkt. # 7.) That deadline was June 11, 2024, and Plaintiff did not amend by that date. (*See* Dkt. #46 (noting appearance of last Defendant on May 7, 2024).) Instead, Plaintiff now attempts to amend more than 230 days beyond her allotted 35 days. Furthermore, Plaintiff's Motion inaccurately represents that her case "was stayed shortly after its inception" (it was stayed four-and-a-half months after its inception), and that it "has been on hold for almost a year" (it was on hold for six months).

Plaintiff fails to provide a reason why she neglected to move to amend her Complaint when the stay was lifted in early December 2024. Despite her representations to the contrary, Plaintiff knew the stay was lifted on December 11, 2024, and that she could have filed at that time. Indeed, Plaintiff's counsel previously made two statements that the stay in this case had ended in December, acknowledging that the case would proceed:

- On December 11, 2024, Plaintiff's counsel issued a press release heralding the end of the stay: "For the last six months, Ms. Grant has patiently waited to hold [Defendants] accountable" and "[h]er wait is over, and we now look forward to sharing Ms. Grant's story."[2]

---

[2] Colin Tessier, *Janel Grant's Legal Team Issues Statement On Stay In Vince McMahon Lawsuit Expiring*, Wrestle Zone – Yahoo! News (Dec. 11, 2024), https://www.yahoo.com/news/janel-grant-legal-team-issues-025030568.html.

- Five days later on December 16, 2024 (in an email that Plaintiff's counsel later filed on this Court's docket), Plaintiff's counsel emailed Defendants' counsel acknowledging that Defendants were now on the clock to refile their motions to compel arbitration by Christmas Day (which they did), given that the stay had ended. (*See* Dkt. # 88-1 (Dec. 16, 2024 email from Plaintiff's counsel) ("Under the Court's current orders, Defendants may refile their motions to compel arbitration on Christmas Day.").)

Now, in a transparent attempt to conceal her unwarranted delay, Plaintiff disingenuously claims that "[t]he Court formally lifted [the] stay on January 16, 2025." (Mem. at 7.) That representation distorts the Court's January 16, 2025 order denying Plaintiff's motions for a status conference, and stating that the stay "is no longer in effect." (Dkt. # 93.) Plaintiff's misrepresentations are not mistakes; they are an intentional effort to persuade this Court against finding that Plaintiff could have moved to file an amended complaint (i) in the first four-plus months of this litigation before the government stayed the case, or (ii) as early as December 11, 2024, when the stay ended. It is undisputed that she failed to move to amend before the Court's deadline, within the first four-plus months that the case was pending, or even during the 50-plus days that she has now waited since the stay ended. Given that Plaintiff had "longstanding knowledge" of the relevant allegations (as described more fully in Section I.B, *infra*), and provides no other reason for her failure to act with diligence and file sooner, Plaintiff has not met her burden to justify the delay, *Buff*, 2024 WL 4262956, at *3, nor the good cause necessary to warrant a departure from this Court's scheduling order, *Parker*, 204 F.3d at 340.

### B.     Plaintiff's Motion Is Made in Bad Faith

Where a party attempts to amend a pleading to add allegations that "were clearly available to [that party] when it filed its initial claim," the court may find bad faith. *United States v.*

*Cardroom Int'l, LLC*, 726 F. App'x 98, 100 (2d Cir. 2018) (affirming denial of leave to amend

where party sought to add previously-known allegations "over a year after it filed its initial claim");

*see also Richardson Greenshields Sec. Inc. v. Mui-Hin Lau*, 113 F.R.D. 608, 611 (S.D.N.Y. 1986)

(denying leave to amend an answer because defendant's arguments for leave were "disingenuous

at best" given that defendant "had knowledge of the facts upon which the proposed amendment

was based, but failed to include them in the original pleading"); *AA Med. P.C. v. Almansoori*, No.

20-cv-3852, 2023 WL 7688688, at *6-7 (E.D.N.Y. Oct. 4, 2023), *report and recommendation

adopted*, 2024 WL 168332 (Jan. 16, 2024) (finding bad faith where Plaintiff was aware of the facts

that constituted the proposed claim and was "unable to point to new facts to support the instant

motion").

Plaintiff's filing is teeming with proposed additional allegations that "were clearly

available to [her] when [she] filed [her] initial claim," *Cardroom Int'l, LLC*, 726 F. App'x at 100,

and is a bad faith attempt to use this Court's docket to gain an advantage in the court of public

opinion. *See Yeboah v. Bank of Am., N.A.*, No. 18-cv-2020 (VAB), 2019 WL 3388045, at *16

n.10 (D. Conn. July 26, 2019) ("[A] finding that a party is seeking leave to amend solely to gain a

tactical advantage . . . supports a finding that such an amendment is made in bad faith.").

Plaintiff proposes to add or substantively amend a total of approximately 165 paragraphs

in her Complaint.[3]  Of those, **153 paragraphs** consist of stale information regarding events that

had already taken place and were known to (or conjured by) Plaintiff at the time of her original

filing,[4] including 56 paragraphs that merely add the name of an individual or deanonymize the

---

[3] For purposes of this metric, only "substantive" changes have been counted; excluded from the count are minor grammatical corrections (e.g., punctuation, capitalization).  Paragraphs adding the name of an individual or deanonymizing the name of a high-profile individual and/or organization are considered substantive.

[4] *See* Dkt. # 95 (Redline of Proposed Amended Complaint) ("Redline") ¶¶ 15, 16, 23, 24, 25, 26, 27, 30, 31, 42, 44, 45, 53, 60, 61, 63, 64, 67, 68, 84, 86, 87, 88, 89, 92, 93, 102, 104, 105, 106, 107, 108, 110, 112, 114, 120, 123, 124,

previously known names of high-profile individuals and/or organizations.[5]  Plaintiff seemingly buries these allegations under her final sub-argument in the Motion, which consists of three throwaway sentences—**supported by no legal authority**—stating that Plaintiff would like to plead her claims "with greater particularity."  (*See* Mem. § II.A.4.)  Furthermore, in that same argument, she disingenuously conceals this trove of stale allegations behind a single, carefully selected "example" allegation: paragraph 288 of her Proposed Amended Complaint, which just so happens to be one of the small minority of allegations that is actually "new" since her original filing.

Arguably, Plaintiff's addition of superfluous detail and documentary evidence, extending her complaint to an unwieldy 92 pages, is directly at odds with the notice pleading requirement of federal courts, which requires only a "short and plain statement of the claim."  FED. R. CIV. P. 8(a)(2).  In any event, an amended complaint at this juncture, well past the Court's deadline, without a legitimate explanation for its delay, is not a proper vehicle to backdoor mountains of stale, unnecessary allegations into a pleading over a year after the original filing.  *See Cardroom Int'l, LLC*, 726 F. App'x at 100 (affirming the district court's conclusion that defendant's motion to amend was made in bad faith because the facts underlying the new theory, raised over a year after its initial claim, "were clearly available to it when it filed its initial claim").  This is especially true where, as here, Plaintiff **entirely fails to justify** why these allegations were not included in the Complaint, or her delay in attempting to add them now.  *Hadid v. City of New York*, 182 F. Supp. 3d 4, 10 (E.D.N.Y. 2016), *aff'd*, 730 F. App'x 68 (2d Cir. 2018) (denying modification of

---

125, 126, 127, 132, 133, 135, 136, 139, 143, 148, 150, 152, 160, 161, 162, 166, 167, 170, 173, 175, 177, 178, 182, 183, 184, 185, 187, 189, 190, 192, 194, 196, 198, 199, 200, 201, 206, 207, 213, 216, 218, 219, 220, 221, 222, 223, 224, 225, 226, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 239, 240, 242, 244, 247, 248, 249, 252, 253, 254, 257, 258, 259, 260, 261, 262, 264, 265, 266, 268, 269, 270, 271, 273, 274, 275, 276, 277, 278, 280, 281, 282, 286, 290, 291, 292, 293, 294, 295, 296, 297, 298, 300, 304(b), 310, 314, 315, 321, 333, 334, 335, 344, 247, 363, 364, 373.
[5] *See* Redline ¶¶ 27, 45, 63, 64, 67, 86, 87, 88, 92, 93, 104, 105, 106, 107, 108, 110, 123, 124, 125, 126, 127, 135, 143, 152, 182, 198, 220, 221, 222, 223, 225, 226, 228, 230, 231, 233, 234, 240, 242, 244, 247, 262, 268, 269, 280, 290, 291, 292, 293, 294, 298, 347, 363, 364, 373.

scheduling order and leave to amend complaint where "Plaintiff's . . . claims would have been supported through his own experience, and yet Plaintiff provide[d] no explanation for his failure to plead them in the original Complaint").

In stark contrast to her Motion filed in this Court, Plaintiff's years-old allegations do not go unmentioned in the lengthy press release that she issued simultaneous with the filing of her proposed amendment.[6]  In fact, they are the sole focus of that press release.  Plaintiff's tabloid-style statement trumpets "never-before-seen text and voice messages from McMahon" that "pull[] back the curtain on the dangerous workplace culture McMahon created at WWE."[7]  Tellingly, the press release **makes no mention of** the three primary categories of allegations that Plaintiff claims establish good cause to amend: (1) the "SEC Allegations" addressing the January 10, 2025 Order of the Securities and Exchange Commission (the "SEC Order"); (2) the "Celebrity Doctor Allegations" pertaining to allegations currently the subject of Connecticut State Court litigation; and (3) the "Arbitration Allegations" purported to respond to issues raised in the motions to compel arbitration and to avoid the parties' contractually mandated forum.  (*See* Mem. §§ II.A.1-II.A.3.) Plaintiff's failure to highlight these allegations publicly, coupled with the small minority of the proposed amendments that fall into each category, compels the conclusion that their inclusion in the Motion was purely pretextual.

The words and actions of Plaintiff's counsel further evidence this pretext.  The Proposed Amended Complaint is the fulfillment of Plaintiff's stated objective to bring "more firepower" to

---

[6] Jeremy Lambert, *Janel Grant's Attorneys File Motion to Amend Complaint In Case Against Vince McMahon, John Laurinaitis, and WWE; Includes New Evidence*, Fightful (Jan. 31, 2025), https://www.fightful.com/wrestling/janel-grant-s-attorneys-file-motion-amend-complaint-case-against-vince-mcmahon-john-laurinaitis-and.
[7] *Id.*

her case from a PR perspective.[8]  Furthermore, Plaintiff first announced her intent to amend the Complaint in an email to Defendants' counsel in December 2024—*before* the SEC Order was made public.  (*See* Dkt. # 88-1.)  Thus, Plaintiff's desire to amend could not possibly have been motivated by the SEC Order, as it did not yet exist.  Additionally, Plaintiff's decision to deanonymize the names of numerous high-profile individuals (such as WWE Superstar, various WWE Corporate Officers, and Celebrity Doctor), while leaving anonymous those unlikely to garner media attention (such as Physical Therapist and Resident Manager), further reveals that her true motivation for amending was a publicity stunt, as opposed to the alleged reason "to address key factual developments."  (*See* Mtn. at 1.)

The reasons for amendment that Plaintiff has offered to this Court are "disingenuous at best," *Richardson Greenshields*, 113 F.R.D. at 611, and downright dishonest at worst.  Her proposed 92-page tome is an unworthy attempt to publicize allegations that she "had knowledge of . . . but failed to include . . . in the original pleadings."  *Id.*  Bad faith alone is sufficient reason for the Court to deny leave to amend, yet here, the amendments would also be futile.

### C.    Plaintiff's Proposed Amendments Are Futile

Courts also regularly deny motions for leave to amend on futility grounds.  *See, e.g.*, *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024) (affirming district court's decision denying leave to amend the original complaint because amendment would be futile given conclusory proposed additions); *In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 87 (2d Cir. 2023) (holding that the district court properly denied leave to amend where proposed allegations failed to meet pleading standard);

---

[8] Alfred Konuwa, *Janel Grant's Attorneys Hold Press Call Ahead of 'Mr. McMahon' Netflix Docuseries*, Forbes (Sep. 19, 2024), https://www.forbes.com/sites/alfredkonuwa/2024/09/19/janel-grants-attorneys-hold-press-call-ahead-of-mr-mcmahon-netflix-docuseries/; *see also* Jerome Wilen, *Notes from Janel Grant press conference addressing 'Mr. McMahon' Netflix docuseries*, WWE News (Sep. 19, 2024), https://www.wrestleview.com/top-story/328091-notes-from-janel-grant-press-conference-ahead-of-mr-mcmahon-netflix-docuseries/.

*Boyette v. Montefiore Med. Ctr.*, No. 24-cv-1279, 2025 WL 48108, at *2 (2d Cir. Jan. 8, 2025) (finding amendment futile where allegations failed to move the claim "from possibility to plausibility"); *Lees v. Graduate Ctr., City Univ. of New York*, 696 F. App'x 530, 531 (2d Cir. 2017) (affirming denial of leave to amend where proposed amendment failed to cure pleading deficiency).

"Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Empire Merchants, LLC v. Reliable Churchill LLC*, 902 F.3d 132, 139 (2d Cir. 2018). Therefore, "[f]or the purposes of evaluating futility, the 12(b)(6) standard is applied: all well pleaded allegations are accepted as true, and all inferences are drawn in favor of the pleader." *Usov v. Lazar*, No. 13-cv-818, 2014 WL 4354691, at *8 (S.D.N.Y. Sept. 2, 2014) (citations omitted). Applying this standard, amending the Complaint as proposed would be futile because none of the amended allegations purport to remedy any pleading deficiencies, substantiate new claims, or add value to the previously pled claims.[9]

        1.    <u>SEC Allegations</u>

Allowing Plaintiff to add the proposed SEC Allegations would be futile. The allegations have no bearing on the claims alleged here; they are irrelevant, repetitive, conclusory, and inaccurate. Indeed, Plaintiff's SEC Allegations contradict the SEC Order itself.

As an initial matter, despite framing the SEC Allegations as her primary basis for amending the Complaint, those allegations span a mere six paragraphs in the Proposed Amended Complaint:

---

[9] Given that Plaintiff's amendments do not purport to address pleading deficiencies or substantiate new claims, we address how each category of proposed allegations fails to add value to the previously pled claims. In no way does Defendant McMahon concede that the allegations in the Complaint are well pled; rather, he argues that the proposed amendments do not ameliorate any deficiencies. Defendant McMahon expressly reserves his right to challenge the Complaint at the appropriate time and in the appropriate forum.

34, 53, 265, and 317-19. Plaintiff cites these six paragraphs in her Motion as an "*E.g.*" cite, but make no mistake, there are no other paragraphs comprising the SEC Allegations. In fact, even claiming they appear in six paragraphs is an overstatement. Paragraph 265, which Plaintiff cites as an example of how the SEC Order "has been incorporated into the [proposed] Amended Complaint," has nothing to do with the SEC Order; it merely quotes a years-old, public WWE Form 10-Q filing from August 14, 2022. (*See* Redline ¶ 265.) Another paragraph simply references previously public information that was reproduced in the SEC Order and then cited by Plaintiff. (*See* Redline ¶ 53 (referring to a $7.5 million NDA that was publicly reported on at least as early as July 8, 2022).)[10] Certainly, Plaintiff did not need to wait for the information to be reproduced before adding it to the Complaint.

Certain of the other six paragraphs simply repeat irrelevant portions of the SEC Order or the accompanying press release without even attempting to connect the allegations to Plaintiff's claims. (*See, e.g.*, Redline ¶ 317-18.) Some of those paragraphs are also near-duplicates of one another, further undercutting any purported value. (*See* Redline ¶¶ 34, 317.)[11]

That leaves a single paragraph from the Proposed Amended Complaint in which Plaintiff endeavors to connect the content of the SEC Order to her substantive claims. In straining to make

---

[10] Joe Palazzolo, et al., *WWE's Vince McMahon Agreed to Pay $12 Million in Hush Money to Four Women*, The Wall Street Journal (July 8, 2022), https://www.wsj.com/articles/wwes-vince-mcmahon-agreed-to-pay-12-million-in-hush-money-to-four-women-11657289742.

[11] Paragraph 34 states: "In January 2025, the U.S. Securities and Exchange Commission ('SEC') charged McMahon for violating federal securities laws by failing to disclose the NDA that is in dispute in this case. Despite his public assertion that he did not engage in any intentional wrongdoing, McMahon consented to the entry of the SEC's order finding that he violated the Securities Exchange Act by knowingly circumventing WWE's internal accounting controls." (Redline ¶ 34.) Paragraph 317 echoes paragraph 34, providing: "In January 2025, the SEC charged McMahon for violating federal securities laws by failing to disclose two settlement agreements totaling $10.5 million, one of which is the NDA in dispute in this case. 'McMahon consented to the entry of the SEC's order finding that he violated the Securities Exchange Act by knowingly circumventing WWE's internal accounting controls and that he directly or indirectly made or caused to be made false or misleading statements to WWE's auditor.'" (*Id.* ¶ 317.)

that connection, Plaintiff completely mischaracterizes the SEC Order such that the proposed

allegation contradicts the Order itself.  Plaintiff alleges the following:

> The SEC's charges provide further evidence of McMahon's failure to adhere to the
> law and show he coerced Ms. Grant into signing an illegal NDA.  McMahon cannot
> subvert securities law to conceal his illegal conduct and contract and then attempt
> to enforce that very same unlawful contract in this Court.

(Redline ¶ 319.)  Plaintiff ***fails to allege any facts***—nor could she—that support her conclusions

that the SEC Order shows (1) that Defendant McMahon "coerced" Plaintiff, or (2) that the

Confidential Settlement Agreement General Release and Covenant Not to Sue (the "Settlement

Agreement") (Dkt. # 85-3 ("Agmt.")) itself was "illegal."  (*See* Redline ¶ 319.)  That is because

the SEC Order says no such thing.[12]  *Nowhere* in the SEC Order does the SEC find that Defendant

McMahon coerced Plaintiff into executing the Settlement Agreement, or that the Settlement

Agreement is unenforceable.  To the contrary, the enforceability of the Settlement Agreement is

presumed, as evidenced by the Order's reference to WWE's restatement of its financial records to

account for this binding agreement.  (*See* SEC Order ¶¶ 5, 37.)  Accordingly, the Court need not

credit Plaintiff's allegation because it is conclusory and contradicts the SEC Order itself.  *See Best*

*v. Schneider*, No. 12-cv-6142, 2015 WL 5567062, at *24 (E.D.N.Y. Sept. 21, 2015) ("While the

court must accept as true all well pleaded, nonconclusory allegations of fact in Plaintiff's Amended

Complaint, the court does not credit conclusory allegations that are contradicted by the documents

he attaches to the Amended Complaint."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)

(holding that courts are not required to credit "legal conclusions," "bare assertions," or "conclusory

allegations").

Amending the Complaint to add the SEC Allegations would be futile.  The SEC Order is

---

[12] *See In the Matter of Vincent Kennedy McMahon*, Exchange Act Release No. 102143 (Jan. 10, 2025) https://www.sec.gov/files/litigation/admin/2025/34-102143.pdf (SEC Order).

irrelevant to Plaintiff's claims.  The Order does not speak to coercion, does not call the contract unenforceable (to the contrary, it presumes it was a valid contract), nor does it bear on Plaintiff's other substantive claims of trafficking, battery, or infliction of emotional distress.  Furthermore, despite Plaintiff's repeated and utterly careless reference to "admissions" throughout her Motion (*see* Mem. at 5), Defendant McMahon did not admit any facts in connection with the SEC Order, meaning that that the allegations in that resolution would not impact this case even if they were somehow related (and, again, they are not).

2.    Celebrity Doctor Allegations

Adding the "new" threadbare allegations related to Celebrity Doctor and Alternative Clinic—Plaintiff's second purported basis for amending her Complaint (*see* Mem. § II.A.2)— would be futile because they fail to support Plaintiff's substantive claims.

Apart from deanonymizing their names, Plaintiff's proposed amendment relating to Celebrity Doctor and Alternative Clinic consists of just two new paragraphs:

128.    On July 1, 2024, after [Celebrity Doctor] stonewalled Ms. Grant's repeated requests for *her own* medical records, Ms. Grant brought a Connecticut state court action seeking pre-suit discovery against [Celebrity Doctor and Alternative Clinic] to gain access to those records and related documentation.  *See Janel Grant v. [Celebrity Doctor], et al.*, Connecticut Superior Court, Docket No. FST-CV24-6068091-S, at D.E. 100.31 (the "[Celebrity Doctor] Action").

129.    Should discovery in the [Celebrity Doctor] Action produce further information implicating [Celebrity Doctor or Alternative Clinic], as expected based on conversations with their counsel, Ms. Grant reserves the right to include them as defendants to the present action.

These allegations add nothing to Plaintiff's substantive claims and would not improve Plaintiff's chances of surviving a 12(b)(6) analysis conducted on the original allegations.  Paragraph 128 simply states that Plaintiff initiated a separate state court discovery action (while this case was stayed) against Celebrity Doctor and Alternative Clinic; Paragraph 129 reserves the right to add them as defendants in this case, should any discovery support doing so.  Incorporating these

14

inconsequential statements—one literally constituting a reservation of rights against a non-party—stretches the definition of what constitutes an "allegation," and serves no purpose other than to inject Celebrity Doctor and Alternative Clinic further into the public realm.

Indeed, Plaintiff fails to cite even a single source of legal authority for why such an amendment should be permitted. (*See* Mem. § II.A.2.) The allegations in the Complaint already enable Plaintiff to seek discovery from Celebrity Doctor and Alternative Clinic at the proper time, and to the extent Plaintiff seeks to join additional parties, presumably she can move to do so pursuant to the Federal Rules of Civil Procedure or the relevant arbitral rules—regardless of any reservation of rights in an amended pleading.

Finally, in her Motion, Plaintiff vastly overstates, confusingly and somewhat deceptively, the nature of the allegations that she proposes to add. For example, Plaintiff writes that in the course of the state court action, she "has confirmed that [Celebrity Doctor and Alternative Clinic] do possess records evidencing that [Celebrity Doctor] was in communication with Defendant McMahon about Ms. Grant's treatment and that Defendant McMahon paid for those treatments." (Mem. at 6.) To support these assertions, Plaintiff cites to the two proposed additional allegations reproduced above—paragraphs 128 and 129. But neither allegation says anything of the sort. This attempted sleight of hand between Plaintiff's Motion and the proposed amendments themselves is all the more reason for the Court to reject her unsupported argument.

### 3.    Arbitration Allegations

Amending the Complaint to add the Arbitration Allegations—Plaintiff's third category of allegations that purportedly establish good cause to amend (*see* Mem. § II.A.3)—would be futile. The proposed allegations comprise statements that, as a matter of law, cannot support Plaintiff's attempt to invalidate the Settlement Agreement or its arbitration clause. Further, Plaintiff's argument that the amendments are "to respond to issues raised" in the motions to compel is

improper. Plaintiff will have every opportunity to introduce "facts" in her opposition to Defendants' motions to compel arbitration and need not do so via amendment.

a.    **Plaintiff's Arbitration Allegations Fail as a Matter of Law**

Plaintiff claims that the Arbitration Allegations enable her to plead with greater particularity the "coercive circumstances" invalidating the Settlement Agreement and its arbitration clause. Plaintiff is wrong.

As a matter of law, the proposed amendments that are designed to suggest that Plaintiff was coerced to sign the Settlement Agreement must fail because Plaintiff is precluded from arguing duress or undue influence. Where, as here, a party ratifies the contract by accepting its benefits, she may not, "as a matter of law, assert a claim of undue influence in an attempt to void the contract." *Front St. Commons, LLC v. Acadia Ins. Co.,* No. 17-cv-284 (VLB), 2018 WL 7572375, at *4 (D. Conn. Mar. 27, 2018). "When the behavior of a party indicates an intention to affirm the contract—***such as accepting payment under the agreement***—the power to 'avoid a contract for incapacity, duress, undue influence or abuse of a fiduciary relation is lost . . . .'" *Id.* (emphasis added) (quoting Restatement (Second) of Contracts § 380 (Am. Law. Inst. 1981)). And where, as here, plaintiff's theory is barred by substantive law, amending the complaint is futile. *See Lucente,* 310 F.3d at 260 (reversing district court because amendment should have been denied where theory of recovery was barred by substantive contract law).

Here, Plaintiff accepted and retained $1 million under the Settlement Agreement. (*See* Complaint ¶ 222; Redline ¶ 262.) She has not attempted to return that $1 million payment to Defendant McMahon. In doing so, she ratified the contract and "lost" "the power to avoid" the Settlement Agreement for "duress [and/or] undue influence." *Front St. Commons*, 2018 WL 7572375, at *4. Permitting her to amend the Complaint with allegations that cannot substantiate her claims, as a matter of law, would be futile.

16

**b.    The Arbitration Allegations Are Unnecessary to "Respond to Issues Raised" in the Motions to Compel Arbitration**

Denying Plaintiff's Motion will not prejudice Plaintiff because the Arbitration Allegations are unnecessary to respond to the issues raised in the motions to compel arbitration.  Per this Court's directive, "[b]ecause a court must apply summary-judgment-like procedures to the evaluation of a motion to compel . . . the parties shall file their memoranda accompanied by statements of material fact in accordance with D. Conn. L. Civ. R. 56."  (Dkt.# 49 (Order).) Accordingly, Plaintiff is free to submit any material facts—verified under oath—along with her opposition to the motions to compel arbitration.  Indeed, the only case Plaintiff cites as supporting her need to file an amended complaint to address the motion to compel arbitration clearly states that the allegations could have accompanied the opposition brief.  *See DeFrancesco v. Mirador Real Est.*, No. 18-cv-4032, 2022 WL 203147, at *3 (S.D.N.Y. Jan. 24, 2022) (noting that rather than amending, Plaintiff could have "simply presented the relevant evidence when responding to [defendant]'s motion to compel arbitration").  For this additional reason, amendment of the Complaint is unnecessary, and denial of the Motion will not prejudice Plaintiff.

4.    Stale Allegations

Not only are the many stale allegations indicative of Plaintiff's bad faith as discussed *supra* § I.B, but adding them would also be futile.  The allegations that Plaintiff claims will add "greater particularity" are directed at claims that Plaintiff released or agreed to arbitrate, thereby making their addition pointless.[13]  (*See, e.g.*, Redline ¶¶ 23-24, 84, 112.)

The parties elected to release Defendant McMahon:

from all manner of action and actions, causes of action, sums of money, covenants, contracts, controversies, agreements, promises, damages, claims and demands

---

[13] It would also be futile to add the stale allegations because they are "redundant, immaterial, impertinent, or scandalous," and would thus be subject to strike per Rule 12(f) of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 12(f).

whatsoever, in law or in equity, that [Plaintiff] ever had, may have had, now has or that her heirs, executors or administrators can, shall or may have as a result of, or in connection with her employment relationship with WWE, the termination of that employment relationship, and/or any and all matters involved in her relationship with McMahon and/or other WWE personnel, and whether known or unknown, asserted or unasserted, suspected or unsuspected which she may have as a result of any act which has occurred at any time up to and including the date of her execution of this Agreement.

(Agmt § II.A ("Release, Waiver and Covenant not to Sue").)  Clearly, this broad release encompasses the claims Plaintiff has asserted and to which Plaintiff now proposes to add "greater particularity."  (*See* Mem. § II.A.4.)

Likewise, adding allegations to claims subject to arbitration is futile.  *See Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 704-05 (S.D.N.Y. 2017) (denying plaintiff's motion to amend as futile because the claims asserted in the proposed amended complaint fell within the scope of a valid binding arbitration agreement); *Barrios-Contreras v. Big Fish Ent. LLC*, No. 23-cv-5821, 2024 WL 3435854, at *7 (S.D.N.Y. July 17, 2024) (finding that amendment would be futile as the proposed additional claims "undeniably fall under the Agreement's arbitration clause, which covers '[a]ll claims, controversies or disputes arising out of, in connection with or relating to [the] Agreement . . .'").  Here, the proposed stale allegations would be futile because they "undeniably fall under the [Settlement] Agreement's arbitration clause."  *Id.*  Section X of the Settlement Agreement covers "any dispute arising under or out of this Agreement, its construction, interpretation, application, performance or breach."  (Agmt § X.)  It further mandates that "the sole and exclusive legal method to resolve *any and all disputes and/or controversies* is to commence binding arbitration under the Federal Arbitration Act."  (*Id.* (emphasis added).)

### D. Defendant McMahon Has Been Prejudiced by All of the Above

Since the beginning of this action over one year ago, consistent with the terms of the Settlement Agreement, Defendant McMahon has been working to transfer this case to its

contractually mandated forum—arbitration under the Federal Arbitration Act. Rather than comply with the clear terms of the Settlement Agreement, Plaintiff has repeatedly exploited the courts and the media to publicize a false narrative and information contractually required to remain confidential. Permitting additional time to pass unduly prejudices Defendant McMahon and his ability to vindicate himself.

## **CONCLUSION**

For the foregoing reasons, Defendant McMahon respectfully requests that the Court deny Plaintiff's Motion for Leave to Amend Complaint.

Date: February 21, 2025                            Respectfully submitted,


                                        **AKIN GUMP STRAUSS HAUER &
                                        FELD LLP**

                            By:      /s/ Jessica T. Rosenberg

                                        Jessica T. Rosenberg
                                          (admitted *pro hac vice*)
                                        One Bryant Park
                                        New York, NY  10036
                                        Telephone: (212) 872-1000
                                        Facsimile: (212) 872-1002
                                        jrosenberg@akingump.com


                                        **McCARTER & ENGLISH, LLP**
                                        James A. Budinetz (ct16068)
                                        CityPlace I, 185 Asylum Street
                                        Hartford, CT  06103
                                        Telephone: (860) 275-6765
                                        Facsimile: (860) 724-3397
                                        jbudinetz@mccarter.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 21, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jessica T. Rosenberg*