UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANEL GRANT, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:24-cv-00090-SFR |
| v. ) | |
| ) | |
| WORLD WRESTLING ENTERTAINMENT, INC., ) | |
| a/k/a WORLD WRESTLING ENTERTAINMENT, ) | |
| LLC; and VINCENT K. MCMAHON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**DEFENDANT VINCENT K. McMAHON'S DISTRICT OF CONNECTICUT
LOCAL RULE 56(a)(1) STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF HIS MOTION TO COMPEL ARBITRATION**

Pursuant to Rule 56(a)(1) of the Local Rules of the United States District Court for the District of Connecticut and the Court's May 7, 2025 Order, Dkt. No. 116, Defendant Vincent K. McMahon ("Defendant McMahon") respectfully submits this Statement of Undisputed Material Facts in Support of His Motion to Compel Arbitration, filed herewith. Defendant McMahon believes the material facts stated below are undisputed and conclusively resolve the forum dispute before the Court. Should the Court find it necessary to conduct a hearing on any issue, Defendant McMahon respectfully reserves his right to introduce additional evidence that bears on witness credibility, sophistication, state of mind, and similar issues.

1. Plaintiff Janel Grant ("Plaintiff") and Defendant McMahon met in or about March 2019. Defendant Vincent K. McMahon's Decl. in Support of His Mot. to Compel Arbitration

1

("McMahon Decl."), filed herewith, ¶ 2; Plaintiff Janel Grant's Amended Complaint ("Am. Compl."), Dkt. No. 117, ¶ 3.[1]

2.     Plaintiff told Defendant McMahon she needed a job, and he facilitated meetings between Plaintiff and WWE's Human Resources department to discuss a position in the legal department as a legal administrator-coordinator. McMahon Decl. ¶ 3; Am. Compl. ¶¶ 56, 63, 76, 85-87, 91.

3.     Defendant McMahon and Plaintiff, who is 44 years old, commenced a relationship, which lasted just under three years and ended in or about January 2022. McMahon Decl. ¶ 2; Am. Compl. ¶¶ 3, 237.

4.     In January 2022, Plaintiff and Defendant McMahon negotiated and entered into a contract entitled "Confidential Settlement Agreement, General Release and Covenant Not to Sue" (the "Settlement Agreement" or "Agmt."), Am. Compl. Ex. A. McMahon Decl. ¶ 4; Am. Compl ¶ 328.

5.     Defendant McMahon signed the Settlement Agreement both on his own behalf and, in his capacity as Chairman, on behalf of Defendant World Wrestling Entertainment, Inc. ("WWE"), which was also party to the Settlement Agreement. Agmt. at 6; Am. Compl. ¶ 303; McMahon Decl. ¶ 8.

6.     The parties entered into the Settlement Agreement, in part, to "terminate Grant's employment with WWE," and "to avoid any damage caused by public disclosure of private matters known to Grant and McMahon." Agmt. at 1; McMahon Decl. ¶ 4. Under the Settlement

---

[1] To the extent that this Statement of Undisputed Material Facts cites to the Amended Complaint, it does so only for the limited purpose of supporting the undisputed facts as stated in this document. A citation to a given paragraph of the Amended Complaint does not constitute an endorsement or admission by Defendant McMahon of the allegations and characterizations otherwise contained in each cited paragraph.

Agreement, Plaintiff agreed to receive monetary compensation in exchange for and in consideration of various mutual promises and covenants, including a release of any claims Grant had against Defendant McMahon or WWE. Agmt. §§ II, V; McMahon Decl. ¶ 4.

7. Before the parties involved their respective attorneys in the negotiation of the Settlement Agreement, Plaintiff herself negotiated the monetary compensation that Defendant McMahon would pay her under the Settlement Agreement from $1,000,000 (the amount initially offered by Defendant McMahon) to $3,000,000. McMahon Decl. ¶ 5; Am. Compl. ¶ 245. Plaintiff insisted that Defendant McMahon's "initial offer of $1,000,000 was not enough to compensate for the lost earning potential and the fact that she would be unable to continue the promised career trajectory of Vice President," and her inability to serve as a Director for a full year. Am. Compl. ¶ 245. She persuaded Defendant McMahon to increase the monetary consideration to $3,000,000—triple the amount of his opening offer. *Id.*; McMahon Decl. ¶ 5; Agmt. § V.

8. The parties were represented by counsel in connection with the drafting, editing, and negotiation of the Settlement Agreement: Jonathan M. Shapiro of Aeton Law Partners LLP for Plaintiff, and Jerry S. McDevitt of K&L Gates for Defendant McMahon. McMahon Decl. ¶ 6; Agmt. at 5; Am. Compl. ¶¶ 247, 249.

9. On or about January 20, 2022, Defendant McMahon's attorney sent a draft of the Settlement Agreement to Plaintiff's attorney. McMahon Decl. ¶ 6; *see also* Am. Compl. ¶ 249.

10. On or about January 27, 2022, Plaintiff's attorney sent a revised version of the draft Settlement Agreement to Defendant McMahon's attorney. In this revised version, Plaintiff's attorney proposed language that ultimately resulted in an arbitration provision that entitles the prevailing party to recover attorney's fees and costs. McMahon Decl. ¶ 7.

11. The Settlement Agreement contains a broad and unambiguous arbitration clause, which requires the parties to first attempt to resolve informally "any dispute arising under or out of this Agreement, its construction, interpretation, application, performance or breach." Agmt. § X; Am. Compl. ¶ 258. If that attempt is unsuccessful, the arbitration clause mandates that "the sole and exclusive legal method to resolve any and all disputes and/or controversies is to commence binding arbitration under the Federal Arbitration Act[.]" Agmt. § X; Am. Compl. ¶ 258. Section X of the Settlement Agreement, the arbitration clause, states in its entirety:

> X.  ARBITRATION
>
> In the event of any dispute arising under or out of this Agreement, its construction, interpretation, application, performance or breach, the parties agree to first attempt to resolve such disputes informally and prior to taking any formal legal action to resolve such disputes. In the event any such dispute cannot be resolved informally, all parties hereto agree that the sole and exclusive legal method to resolve any and all disputes and/or controversies is to commence binding arbitration under the Federal Arbitration Act pursuant to the procedures of the American Arbitration Association and to do so by sealed proceedings which preserve the confidential and private nature of this Agreement. The parties agree to discuss the venue for any such arbitration proceeding if and when such a dispute arises which cannot be informally resolved; but in the event the parties cannot agree on a venue then the exclusive venue for any arbitration proceeding shall be in Stamford, Connecticut. The prevailing party, as determined by the arbitration tribunal, shall be entitled to recover from the non-prevailing party all of its attorney's fees and costs.

Agmt. § X; Am. Compl. ¶ 258.

12. The Settlement Agreement contains provisions pursuant to which Plaintiff "agree[d], represent[ed], and warrant[ed]" to keep the Settlement Agreement, its terms, and information about Defendant McMahon and their relationship confidential, and to not disparage McMahon and/or WWE. Agmt. § I.

4

13. By signing the Settlement Agreement all parties mutually agreed to release any claims they might have against one another. Agmt. § II. Plaintiff specifically agreed, among other things, "to release, remise and forever discharge McMahon, WWE, and the present, former and future directors, officers, employees, agents and representatives of WWE . . . from all manner of action and actions, causes of action, sums of money . . . damages, claims and demands whatsoever, in law or in equity, that she ever had, may have had, [or] now has . . . as a result of, or in connection with her employment relationship with WWE, the termination of that employment relationship, and/or any and all matters involved in her relationship with McMahon and/or other WWE personnel . . . ." *Id.* § II(A). Section II of the Settlement Agreement states further:

   a. "BY SIGNING THIS AGREEMENT, GRANT ACKNOWLEDGES THAT SHE WILL HAVE WAIVED ANY RIGHT SHE MAY HAVE HAD TO PURSUE OR BRING A LAWSUIT OR MAKE ANY LEGAL CLAIMS AGAINST MCMAHON AND/OR WWE, AND/OR ANY OF ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS AND REPRESENTATIVES." *Id*. § II(B).

   b. "Grant agrees that she will not cause, and has not caused, to be filed any legal actions, administrative proceedings, arbitrations or charges of any nature whatsoever relating to McMahon or WWE concerning matters within the scope of this Agreement." *Id*. § II(C).

   c. "Grant covenants and agrees that she will forever forbear from pursing any legal proceedings (except if necessary to enforce this Agreement), and that she will not in any other way make any additional demand to claims against McMahon and/or WWE." *Id*. § II(D).

   d. "Grant agrees that she shall not institute or be a party to any lawsuits, either individually or as a class representative or member against McMahon and/or WWE as to any matters up to the date of execution of this Agreement." *Id*. § II(E).

   e. "Grant knowingly and intentionally waives any rights to any additional recovery that might be sought on her behalf by any other person, entity, or local, state or federal government or agency thereof." *Id*.

14. In the Settlement Agreement, Plaintiff also acknowledged that "among the rights she is knowingly and voluntarily waiving by executing this Agreement is the right to bring or pursue any claims or causes of action against McMahon and/or WWE." Agmt. § VII(B).

15. McMahon and Defendant WWE similarly agreed to "release and forever discharge Grant . . . from any and all disputes and causes of action, claims, demands, suits, damages, attorneys' fees, expenses, debts, contracts, agreements, and any and all other claims of any other nature whatsoever against Grant whether known or unknown or whether asserted or unasserted from the beginning of time to the date of execution of this Agreement, which McMahon and/or WWE might have or could claim against Grant." Agmt. § II(F).

16. The Settlement Agreement also contains a severability provision: "In the event that any provision of this Agreement is held to be void or unenforceable by any arbitration panel or court reviewing an arbitration decision, the remaining provisions shall nevertheless be binding provided, however, if any of the confidentiality obligations of this Agreement are ever contended to be unenforceable by Grant, or are found to be unenforceable by any tribunal, Grant agrees that she shall return all monies paid pursuant to this Agreement to McMahon." Agmt. § IX.

17. The Settlement Agreement provides that Plaintiff was to be paid $1,000,000 within ten (10) days of the execution of the Agreement and the remaining $2,000,000 in four equal installments of $500,000, and that "[i]n the event of any disclosure by Grant of the matters required to be kept confidential under this Agreement, McMahon shall have no obligation to make any payments set forth" therein. Agmt. §§ V(A)-(B); Am. Compl. ¶¶ 315, 341. Section V of the Settlement Agreement, "Monetary Considerations to Grant," states in subsections V(A)-(B):

> V. MONETARY CONSIDERATIONS TO GRANT
>
> A. Upon execution of this Agreement by the parties, McMahon will pay the sum of One Million Dollars ($1,000,000.00) to Grant within ten (10) days of execution of this Agreement.
>
> B. Provided all confidentiality obligations of Grant under this Agreement are complied with in ensuing years, McMahon will pay the following sums to Grant within ten (10) days of the dates listed below:

>February 1, 2023 - $500,000.00
>
>February 1, 2024 - $500,000.00
>
>February 1, 2025 - $500,000.00
>
>February 1, 2026 - $500,000.00
>
>In the event of any disclosure by Grant of the matters required to be kept confidential under this Agreement, McMahon shall have no obligation to make any payments set forth above which would otherwise become due on the dates indicated, and all monies previously paid to Grant pursuant to this Agreement shall be returned to McMahon in accordance with the terms of this Agreement.

Agmt. §§ V(A)-(B).

18. In addition to the monetary payments, the Settlement Agreement provides that as "additional consideration" to Plaintiff, WWE would "provide a positive evaluation and recommendation" to any possible employer of Grant, either via Laurinaitis or another WWE employee in the event that "Laurinaitis is no longer employed by WWE at the time." Agmt. § VI.

19. The Settlement Agreement states that by signing her name, Plaintiff "represents that she is able to read the language and to understand the meaning and effect of this Agreement," that "she has read and understands this Agreement and the effect of it," and that "her attorney . . . has explained it to her." Agmt. § VII(A).

20. The parties signed and dated the Settlement Agreement on January 28, 2022. McMahon Decl. ¶ 8; Agmt. at 6; Am. Compl. ¶ 328.

21. Within ten (10) days of the Settlement Agreement's execution, Defendant McMahon paid Plaintiff the first payment specified in Section V(A) of the Settlement Agreement in the amount of $1,000,000. McMahon Decl. ¶ 9; Am. Compl. ¶ 262.

22. In or around March 2022, Defendant McMahon learned that information governed by the Settlement Agreement had been shared with a third party. McMahon Decl. ¶ 10; Am. Compl. ¶ 271 (acknowledging notice from Defendant McMahon's counsel of leaked information).

7

23. Given Defendant McMahon's position that Plaintiff had breached the Settlement Agreement by sharing protected information with a third party, he exercised his right under the Settlement Agreement to withhold further payment to Plaintiff. McMahon Decl. ¶ 10; Am. Compl. ¶ 315 (acknowledging no payments beyond initial $1 million payment).

24. Plaintiff commenced the instant action against Defendant McMahon on January 25, 2024 by filing a public lawsuit, rather than commencing arbitration. Dkt. No. 1.

25. Plaintiff did not "first attempt to resolve [her] disputes informally and prior to taking any formal legal action," as the Settlement Agreement requires. McMahon Decl. ¶ 11.

Date: June 13, 2025

**McCARTER & ENGLISH, LLP**

James A. Budinetz (ct16068)
Snigdha Mamillapalli (ct31142)
McCarter & English, LLP
CityPlace I, 185 Asylum Street
Hartford, CT  06103
Telephone: (860) 275-6765
Facsimile:  (860) 724-3397
jbudinetz@mccarter.com
smamillapalli@mccarter.com

Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By: */s/ Jessica T. Rosenberg*
    Jessica T. Rosenberg
      (admitted *pro hac vice*)
    Ilana Roberts
      (admitted *pro hac vice*)
    Akin Gump Strauss Hauer & Feld LLP
    One Bryant Park
    New York, NY  10036
    Telephone: (212) 872-1000
    Facsimile  (212) 872-1002
    jrosenberg@akingump.com
    iroberts@akingump.com

    *Attorneys for Defendant
    Vincent K. McMahon*

## CERTIFICATE OF SERVICE

    I certify that on June 13, 2025 a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

                                                      */s/ Jessica T. Rosenberg*