## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANEL GRANT,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC. n/k/a WORLD WRESTLING ENTERTAINMENT, LLC; VINCENT K. MCMAHON; and JOHN LAURINAITIS,<br><br>　　　　　　　Defendants. | Civil Action No.: 3:24-cv-00090 (SFR) |

## DEFENDANT WORLD WRESTLING ENTERTAINMENT, LLC'S LOCAL RULE 56(a)(1) STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

Pursuant to Local Rule 56(a)(1) and the Court's May 7, 2025 order, ECF No. 116, Defendant World Wrestling Entertainment, LLC ("WWE") respectfully submits this Statement of Undisputed Material Facts in support of its Motion to Compel Arbitration.

In light of the fact that the parties have not undertaken discovery regarding the background events alleged in Plaintiff Janel Grant's First Amended Complaint (the "Amended Complaint"), WWE assumes the truth of those allegations for purposes of its Motion to Compel Arbitration. WWE reserves the right to revise and supplement the factual assertions in the various areas outlined below as the matter proceeds and the factual record is developed.

## I.    GRANT'S EMPLOYMENT WITH WWE

1.    Grant alleges that she met Vincent K. McMahon in March 2019 and, soon after, McMahon promised her "a yet-to-be-determined role at WWE." *See* First Amended Complaint, No. 3:24-cv-00090-SFR (D. Conn.), dated May 7, 2025 ("Am. Compl."), ECF No. 117, ¶¶ 3, 6.

2.　　　Grant alleges that she and McMahon began a sexual relationship in May 2019.  Am. Compl., ECF No. 117, ¶¶ 92–95.

3.　　　Grant alleges that her employment history with WWE was as follows:

- On June 17, 2019, Grant began working in WWE's legal department in "an entry-level position as an 'administrator-coordinator'" with a starting salary of $75,000.  Am. Compl., ECF No. 117, ¶¶ 10, 91.

- On February 10, 2020, Grant was "temporarily relocated to the XFL workforce."  *Id.* ¶ 134.

- "On or around January 25, 2021," Grant was reassigned to support a high-ranking hire in WWE's legal department.  *Id.* ¶ 178.

- In early March 2021, Grant was transferred to the Talent Relations department, where she worked as a director of operations and reported to the head of the department, John Laurinaitis.  *Id.* ¶¶ 11–12, 187, 195.

## II.　　THE AGREEMENT

4.　　　Grant alleges that, in early January 2022, McMahon told her that his wife had found out about their relationship and threatened to divorce him.  Am. Compl., ECF No. 117, ¶ 238.  McMahon allegedly told Grant "that if she left WWE and signed an NDA," his wife would not leave him, and "Grant would avoid reputational harm."  *Id.* ¶ 239.

5.　　　Grant alleges that McMahon initially offered her $1 million in "exchange[] for the NDA."  Am. Compl., ECF No. 117, ¶ 245.  Grant alleges that she told McMahon that $1 million "was not enough," and McMahon ultimately agreed to pay her $3 million in installments.  *Id.* ¶¶ 245–251, 255.

6.　　　On or about January 19, 2022, Grant retained counsel in connection with her

separation from WWE and her negotiations of the proposed NDA.  Am. Compl., ECF No. 117, ¶ 247.

7.    The negotiation of the NDA lasted eight days.  Am. Compl., ECF No. 117, ¶ 249. Grant's counsel participated actively in the negotiations, requesting revisions, "wordsmithing," and rejecting certain proposed terms.  *Id*. ¶¶ 249–55.

8.    On January 28, 2022, McMahon and Grant executed the six-page Agreement, titled the "Confidential Settlement Agreement, General Release and Covenant Not to Sue" (the "Agreement").  Am. Compl., ECF No. 117, ¶ 257; "Confidential Settlement Agreement, General Release and Covenant Not to Sue," signed by J. Grant, Jan. 28, 2022 (the "Agreement"), ECF No. 117, at 101, Ex. A.

9.    Grant and McMahon both signed the Agreement, with McMahon signing both on his own behalf and, in his capacity as Chairman, on behalf of WWE.  Agreement, ECF No. 117, at 101, Ex. A.

**A.    Grant's Obligations Under the Agreement**

10.    Grant agreed to resign from her employment with WWE upon execution of the Agreement.  Agreement, ECF No. 117, at 98, Ex. A § IV.

11.    In a section titled "Grant's Consideration, Representation and Warranties to McMahon and WWE," Grant agreed: (i) to keep confidential her relationship with McMahon and the existence and terms of the Agreement; and (ii) not to disparage McMahon or WWE. Agreement, ECF No. 117, at 96–97, Ex. A § I.

**B.    McMahon's Payment Obligations**

12.    The Agreement provides that McMahon would pay Grant, in installments over a four-year period, a total of $3 million.  Agreement, ECF No. 117, at 98–99, Ex. A § V.  For the

first installment, McMahon agreed to pay Grant $1 million within 10 days of execution of the Agreement. *Id.* at 98, Ex. A § V.A. McMahon committed to make further payments of $500,000 each year, on February 1, for the next four years, "[p]rovided all confidentiality obligations of Grant under this Agreement are complied with in ensuing years." *Id.* at 98–99, Ex. A § V.B.

13.    However, "[i]n the event of any disclosure by Grant of the matters required to be kept confidential under this Agreement," the Agreement provides that "all monies previously paid to Grant pursuant to this Agreement shall be returned to McMahon[.]" Agreement, ECF No. 117, at 98–99, Ex. A § V.B.; *see also id*. at 99, Ex. A § V.E.

14.    In addition to monetary payments by McMahon, the Agreement provides, as "Additional Consideration to Grant," that WWE will "provide a positive evaluation and recommendation to any . . . possible employer of Grant," either via Laurinaitis or another WWE employee. Agreement, ECF No. 117, at 99, Ex. A § VI.

**C.    Mutual Releases**

15.    The parties to the Agreement, including WWE, provided mutual releases of any and all potential claims related to Grant's and McMahon's relationship and Grant's employment at WWE. Agreement, ECF No. 117, at 97–98, Ex. A § II.

16.    Grant's release language reads:

> Except for any rights under this Agreement, and as otherwise stated herein, Grant hereby agrees to release, remise and forever discharge, and by these presents does, for herself, her heirs, executors, and administrators, release, remise and forever discharge McMahon, WWE, and the present, former and future directors, officers, employees, agents and representatives of WWE personally and as directors, officers, employees, agents and representatives of WWE from all manner of action and actions, causes of action, sums of money, covenants, contracts, controversies, agreements, promises, damages, claims and demands whatsoever, in law or in equity, that she ever had, may have had, now has or that her heirs, executors or administrators can, shall or may have as a result of, or **in connection**

**with her employment relationship with WWE, the termination of that employment relationship, and/or any and all matters involved in her relationship with McMahon and/or other WWE personnel,** and whether known or unknown, asserted or unasserted, suspected or unsuspected which she may have as a result of any act which has occurred at any time up to and including the date of her execution of this Agreement.

Agreement, ECF No. 117, at 97, Ex. A § II.A. (emphasis added).

17.    The Agreement provides that Grant "will not cause, and has not caused, to be filed any legal actions, administrative proceedings, arbitrations or charges of any nature whatsoever relating to McMahon or WWE concerning matters within the scope of this Agreement." Agreement, ECF No. 117, at 98, Ex. A § II.C.

18.    The Agreement also provides that "Grant covenants and agrees that she will forever forbear from pursuing any legal proceedings (except if necessary to enforce this Agreement), and that she will not in any other way make any additional demand or claims against McMahon and/or WWE." Agreement, ECF No. 117, at 98, Ex. A § II.D.

19.    The Agreement further provides that:

BY SIGNING THIS AGREEMENT, GRANT ACKNOWLEDGES THAT SHE WILL HAVE WAIVED ANY RIGHT SHE MAY HAVE HAD TO PURSUE OR BRING A LAWSUIT OR MAKE ANY LEGAL CLAIMS AGAINST MCMAHON AND/OR WWE, AND/OR ANY OF ITS DIRECTORS, OFFICERS, EMPLOYEES, AGENTS AND REPRESENTATIVES.

Agreement, ECF No. 117, at 97, Ex. A § II.B.

20.    McMahon and WWE provided the following release:

McMahon and WWE, individually and jointly, for and in consideration of the representations, warranties and covenants of Grant contained herein, hereby release and forever discharge Grant, her heirs, executors, administrators, successors and assigns from any and all disputes and causes of action, claims, demands, suits, damages, attorneys' fees, expenses, debts, contracts, agreements, and any and all other claims of any other nature whatsoever against Grant whether known or unknown or whether asserted or unasserted

from the beginning of time to the date of execution of this Agreement, which McMahon and/or WWE might have or could claim against Grant.

Agreement, ECF No. 117, at 98, Ex. A § II.F.

**D.    Agreement to Arbitrate**

21.    The Agreement includes the following arbitration provision:

In the event of any dispute arising under or out of this Agreement, its construction, interpretation, application, performance or breach, the parties agree to first attempt to resolve such disputes informally and prior to taking any formal legal action to resolve such disputes. In the event any such dispute cannot be resolved informally, all parties hereto agree that the sole and exclusive legal method to resolve any and all disputes and/or controversies is to commence binding arbitration under the Federal Arbitration Act pursuant to the procedures of the American Arbitration Association and to do so by sealed proceedings which preserve the confidential and private nature of this Agreement.  The parties agree to discuss the venue for any such arbitration proceeding if and when such a dispute arises which cannot be formally resolved; but in the event the parties cannot agree on a venue then the exclusive venue for any arbitration proceeding shall be in Stamford, Connecticut.  The prevailing party, as determined by the arbitration tribunal, shall be entitled to recover from the non-prevailing party all of its attorney's fees and costs.

Agreement, ECF No. 117, at 100–01, Ex. A § X.

**E.    Severability**

22.    The Agreement contains the following severability provision:

In the event that any provision of this Agreement is held to be void or unenforceable by any arbitration panel or court reviewing an arbitration decision, the remaining provisions shall nevertheless be binding provided, however, if any of the confidentiality obligations of this Agreement are ever contended to be unenforceable by Grant, or are found to be unenforceable by any tribunal, Grant agrees that she shall return all monies paid pursuant to this Agreement to McMahon.

Agreement, ECF No. 117, at 100, Ex. A § IX.

F.    **Additional Representations**

23.    The Agreement states that "Grant represents that she is able to read the language and to understand the meaning and effect of this Agreement" and that "she has read and understands this Agreement and the effect of it and that her attorney, Mr. Jonathan Shapiro, has explained it to her."  Agreement, ECF No. 117, at 100, Ex. A § VII.A.

III.    **POST-AGREEMENT EVENTS**

24.    "On February 4, 2022, Grant was wired $1,000,000 as the first installment" of the Agreement.  Am. Compl., ECF No. 117, ¶ 262; *see also* Agreement, ECF No. 117, at 98, Ex. A § V.A.

25.    "On February 28, 2022, Grant was wired $10,000 to cover her attorneys' fees incurred in connection with" the Agreement.  Am. Compl., ECF No. 117, ¶ 262.

26.    "McMahon continued to pay for Ms. Grant's medical care until April 15, 2022."  Am. Compl., ECF No. 117, ¶ 272.

27.    On February 9 and 10, 2022, Grant provided notice to Laurinaitis and WWE's Human Resources department that she was leaving WWE.  Am. Compl., ECF No. 117, ¶ 263.

28.    On March 30, 2022, McMahon's counsel notified Grant's counsel of "an anonymous email about the relationship between Ms. Grant and McMahon and Laurinaitis."  Am. Compl., ECF No. 117, ¶ 271.

29.    In June and July 2022, various media stories were published "regarding the matter of McMahon's multiple NDAs with various women."  Am. Compl., ECF No. 117, ¶ 273.

30.    Under the Agreement, McMahon's second scheduled payment of $500,000 would have been due on February 1, 2023.  Agreement, ECF No. 117, at 98–99, Ex. A § V.B.

31.    Grant alleges that McMahon did not make the scheduled payment on February 1,

2023, or any subsequent payment provided for under the Agreement's payment schedule. Am. Compl., ECF No. 117, ¶ 315. According to Grant, she had "signed the NDA in exchange for payments—which McMahon later stopped making." Am. Compl., ECF No. 117, ¶ 26.

32.     Grant filed the original Complaint on January 25, 2024. Compl., ECF No. 1, at 67.

**IV.     PROCEDURAL POSTURE**

33.     On May 8, 2024, the Court entered a scheduling order with respect to any motions to compel arbitration. ECF No. 49. The Court directed that such motions be filed by May 14, 2024; Grant's opposition be filed by June 4, 2024; and replies be filed by June 18, 2024. *Id.* The Court also ordered that "[a]ny applicable deadline(s), pursuant to Federal Rule of Civil Procedure pleadings, including any motions pursuant to Federal Rule of Civil Procedure 12(b), shall be suspended pending the Court's adjudication of Defendants' motions to compel arbitration." *Id.*

34.     WWE filed its Motion to Compel Arbitration on May 14, 2024. ECF No. 61. (McMahon and Laurinaitis each previously filed a Motion to Compel Arbitration on April 23, 2024 and May 2, 2024, respectively. ECF Nos. 30, 35.) Grant did not file an opposition to the then-pending Motions to Compel Arbitration by the June 4, 2024 deadline to do so. *See* ECF No. 49.

35.     On June 11, 2024, the Court entered an order staying this action to December 11, 2024. ECF No. 68 ("On the basis of the Court's understanding that the parties mutually consent to a stay of these proceedings for a period of approximately six months, the Court STAYS this action to **December 11, 2024**."). The Court also denied all pending motions to compel arbitration "without prejudice to renewal within two weeks of any future order of the Court lifting the stay." *Id.*

36.     The Court did not extend its June 11, 2024 stay order, and thus, on December 11,

2024, the stay expired.  *See* ECF No. 68.

37.     On December 23, 2024, WWE filed its renewed Motion to Compel Arbitration.
ECF No. 86.  (McMahon and Laurinaitis also filed renewed Motions to Compel Arbitration on
December 23, 2024 and December 24, 2024, respectively.  ECF Nos. 85, 87.)  Grant did not file
an opposition to the then-pending Motions to Compel Arbitration by the deadline to do so.  *See*
L.R. 7(a)(2) ("Unless otherwise ordered by the Court, all opposition memoranda shall be filed
within twenty-one (21) days of the filing of the motion[.]").

38.     On January 2, 2025, Grant filed a Motion for Status Conference in which, for the
first time, she indicated to the Court that she planned to amend the Complaint.  *See* ECF No. 88.
Grant filed a Renewed Motion for Status Conference on January 13, 2025, in which she requested
an extension of the deadline to oppose Defendants' pending Motions to Compel Arbitration.  *See*
ECF No. 90, at 5.

39.     On January 16, 2025, the Court entered an order denying Grant's motions for a
status conference and permitting her to file, by January 31, 2025, a motion for leave to file an
amended complaint addressing why she should be permitted to amend "despite the expiration of
the deadline for filing amended pleadings contained in ECF No. 7."  ECF No. 93.  The Court also
denied all pending motions to compel arbitration "without prejudice to renewal following the
Court's decision on Plaintiff's motion for leave to amend the complaint."  *Id.*  On January 31,
Grant filed a Motion for Leave to Amend the Complaint along with a proposed First Amended
Complaint.  ECF Nos. 94, 95, 96.

40.     On May 7, 2025, the Court entered an order granting Grant's Motion for Leave to
Amend the Complaint, ECF No. 115, and an order staying discovery and directing Defendants to
refile, once again, their motions to compel arbitration on or before June 13, 2025, ECF No. 116.

41.     Grant filed the First Amended Complaint on May 7, 2025.  Am. Compl., ECF No. 117, at 93.  The Amended Complaint adds no new parties or causes of action.

Dated: June 13, 2025                         Respectfully submitted,

                                             By:  */s/ Daniel J. Toal*

                                             **MORGAN LEWIS & BOCKIUS LLP**

                                             Christopher M. Wasil (ct28578)
                                             One State Street
                                             Hartford, CT 06103-3178
                                             Phone: (860) 240-2700
                                             Fax: (860) 240-2701
                                             Email: christopher.wasil@morganlewis.com

                                             David A. McManus (*pro hac vice* pending)
                                             One Federal Street
                                             Boston, MA 02110-1726
                                             Phone: (617) 341-7700
                                             Fax: (617) 341-7701
                                             Email: david.mcmanus@morganlewis.com

                                             **PAUL, WEISS, RIFKIND, WHARTON &
                                             GARRISON LLP**

                                             Daniel J. Toal (phv10907)
                                             Liza M. Velazquez (phv02132)
                                             1285 Avenue of the Americas
                                             New York, NY 10019-6064
                                             Phone: (212) 373-3000
                                             Fax: (212) 757-3990
                                             Email: dtoal@paulweiss.com
                                                       lvelazquez@paulweiss.com

                                             Mitchell D. Webber (phv207889)
                                             2001 K Street, NW
                                             Washington, DC 20006-1047
                                             Phone: (202) 223-7442
                                             Fax: (202) 379-4162
                                             Email: mwebber@paulweiss.com

                                             *Attorneys for Defendant World Wrestling
                                             Entertainment, LLC*

## <u>CERTIFICATE OF SERVICE</u>

   I certify that on June 13, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

       */s/ Daniel J. Toal*
       Daniel J. Toal