# UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANEL GRANT, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:24-cv-00090-SFR |
| v. ) | |
| ) | |
| WORLD WRESTLING ENTERTAINMENT, INC., ) | |
| a/k/a WORLD WRESTLING ENTERTAINMENT, ) | |
| LLC; and VINCENT K. MCMAHON, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANT VINCENT K. McMAHON'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO SERVE MOTION-RELATED DISCOVERY

**McCARTER & ENGLISH, LLP**

James A. Budinetz (ct16068)
Snigdha Mamillapalli (ct31142)
McCarter & English, LLP
CityPlace I, 185 Asylum Street
Hartford, CT 06103
Telephone: (860) 275-6765
Facsimile: (860) 724-3397
jbudinetz@mccarter.com
smamillapalli@mccarter.com

**AKIN GUMP STRAUSS HAUER & FELD LLP**

Jessica T. Rosenberg
   (admitted *pro hac vice*)
Ilana Roberts
   (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
jrosenberg@akingump.com
iroberts@akingump.com

*Attorneys for Defendant*
*Vincent K. McMahon*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

PROCEDURAL HISTORY..................................................................................................... 2

ARGUMENT ............................................................................................................................ 3

I.      Plaintiff Does Not and Cannot Meet Her Burden for Any Motion-Related Discovery ............................................................................... 3

II.     The Facts Plaintiff Purports to Need Are Within Her Possession, Custody, and Control .................................................................................................................... 7

III.    Plaintiff's Sweeping Requests Are Overly Broad, Untethered from the Issues, and Would Impose an Undue Burden on McMahon ....................................................9

IV.    The SEC Order and Second Circuit Decision Are Irrelevant ......................................... 11

V.     The Court Should Deny Plaintiff's Latest Attempt to Extend Her Opposition Deadline .................................................................................................................... 12

VI.    If the Court Grants Any Motion-Related Discovery, Strict Limitations Should Be Imposed and Reciprocal Discovery Should Be Permitted ................................................. 13

        A.     Unlike the Discovery Requests, Any Discovery Must Be Narrowly Tailored to the Pending Motions ....................................................................... 13

        B.     In Contrast to the Discovery Requests, Any Discovery Cannot Seek Privileged Material ................................................................................................. 14

        C.     Any Discovery Granted to Plaintiff Warrants Reciprocal Discovery to Defendants ................................................................................................. 14

CONCLUSION........................................................................................................................ 15

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alvarez v. Experian Info. Solutions, Inc.*,
   No. 19-cv-3343, 2021 WL 2349370, and ECF No. 53 (E.D.N.Y. June 7, 2021) ...................... 5

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ................................................................................................................ 5, 6

*Crocker v. Chapdelaine*,
   No. 18-cv-613, 2019 WL 2269944 (D. Conn. May 28, 2019) .................................................. 8

*de Moura Castro by Hilario v. Loanpal, LLC*,
   715 F. Supp. 3d 373 (D. Conn. 2024) ........................................................................................ 4

*Doctor's Associates, Inc. v. Distajo*,
   66 F.3d 438 (2d Cir. 1995) ......................................................................................................... 6

*Flores v. NFL*,
   No. 22-cv-871, 2022 WL 3098388 (S.D.N.Y. Aug. 4, 2022) ........................................ 3, 4, 8, 9

*Golightly v. Uber Technologies, Inc.*,
   No. 21-cv-3005, 2021 WL 3539146 (S.D.N.Y. Aug. 11, 2021) ................................................ 5

*In Re: Grand Jury Subpoenas Dated September 13, 2023*,
   128 F.4th 127 (2d Cir. 2025) .................................................................................................... 12

*Grimmett v. DMM Sols., Inc.*,
   No. 24-cv-5903, 2024 WL 5090009 (S.D.N.Y. Dec. 11, 2024) ........................................... 5, 13

*Hudson v. Babilonia*,
   No. 14-cv-1646, 2015 WL 1780879 (D. Conn. Apr. 20, 2015) ................................................ 4

*Legacy Capital 26, LLC v. Chaldean Enterprise, LLC*,
   No. 22-cv-5758, 2023 WL 5530307 (S.D.N.Y. Aug. 28, 2023) ................................................ 4

*McCord v. Goode*,
   308 S.W.3d 409 (Tex. Ct. App. 2010) ....................................................................................... 8

*Moton v. Maplebear*,
   No. 15-cv-8879, 2016 WL 616343 (S.D.N.Y. Feb. 9, 2016) ........................................... 4, 8, 9

*Olsen v. Charter Comms., Inc.*,
   2019 WL 3779190 (S.D.N.Y. Aug. 9, 2019) ............................................................................. 9

*In re Parcel Tanker Shipping Servs. Antitrust Litig.*,
  No. 03-md-1568, 2005 WL 3360584 (D. Conn. Nov. 9, 2005) .................................................3

*Roseman v. Bloomberg L.P.*,
  No. 14-cv-2657, 2016 WL 3866375 (S.D.N.Y. June 17, 2016) ..............................................14

*United States v. Levin*,
  No. 15-cr-101, 2015 WL 5838579 (S.D.N.Y. Oct. 5, 2025) ....................................................14

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ................................................................................................................14

*Vaigasi v. Solow Mgmt. Corp.*,
  No. 11-cv-5088, 2016 WL 616386 (S.D.N.Y. Feb. 16, 2016) ................................................10

**STATUTES**

18 U.S.C. § 1591(e)(2) ...................................................................................................................8

Defendant Vincent K. McMahon ("McMahon"), by and through his undersigned attorneys, respectfully files this Opposition to Plaintiff's Motion for Leave to Serve Motion-Related Discovery, ECF Nos. 126 (the "Motion"), 126-1 ("Pl. Mem.").

## INTRODUCTION

Plaintiff improperly seeks broad substantive discovery to which she is not entitled and which she does not need to oppose McMahon's Motion to Compel Arbitration ("Motion to Compel"). To prevail on this discovery motion, Plaintiff must provide "reliable evidence that is more than a naked assertion" that she did not intend to be bound by the arbitration clause *specifically*. She offers no such evidence, arguing only (and in a conclusory manner) that she was coerced into agreeing to the entire agreement. Yet, the Settlement Agreement's clear delegation of authority to the arbitrator coupled with decades of Supreme Court precedent require that allegations of coercion target the arbitration clause specifically, as distinguished from the agreement as a whole. Indeed, as the Motion to Compel explains, questions of both the arbitrability and the merits of Plaintiff's claims are for the arbitrator, making the request for substantive discovery in this forum even more inappropriate.

Moreover, Plaintiff fails to explain why evidence of coercion, i.e., evidence that she was threatened or made to believe that harm would befall her if she did not agree to the arbitration provision, would be in the Defendants' possession rather than her own. Nevertheless, Plaintiff brazenly moves to serve McMahon with twenty sweeping discovery requests spanning a six-and-a-half-year period, each of them completely unmoored from the narrow issue Plaintiff purports to be exploring. Indeed, ***the requests never once even mention the arbitration clause***. The Court should refuse to indulge Plaintiff's improper fishing expedition and deny the Motion in full.

1

**PROCEDURAL HISTORY**

Plaintiff filed this action on January 25, 2024, in contravention of the parties' Confidential Settlement Agreement, General Release and Covenant Not to Sue. *See* ECF No. 117 ("FAC") Ex. A (the "Settlement Agreement"). On April 23, 2024, McMahon, and soon thereafter Defendants World Wrestling Entertainment, Inc. ("WWE") and John Laurinaitis, filed motions to compel arbitration. ECF Nos. 30, 35, 61. On June 4, 2024, Plaintiff failed to timely oppose Defendants' motions. *See* ECF No. 49 (Order Approving Stipulation re: Scheduling). On June 11, 2024, the Court stayed the case for six months, denying the pending motions without prejudice to refile within two weeks of lifting the stay. ECF No. 68.

On December 11, 2024, the stay ended. *See* ECF Nos. 68, 88-1 at 3. Defendants promptly renewed their motions to compel arbitration by the Court-ordered deadline. ECF Nos. 85-87. Plaintiff again failed to timely oppose, this time filing a motion seeking an extension and a scheduling order providing time to amend her complaint. ECF No. 90. The Court allowed Plaintiff to move for leave to amend her complaint, and once again denied Defendants' pending motions without prejudice to renew. ECF No. 93. While Plaintiff's motion was pending, Plaintiff sought—prematurely—to initiate merits discovery, ECF No. 106, which Defendants promptly moved to stay, ECF Nos. 109-11.

On May 7, 2025, the Court granted leave for Plaintiff to amend her complaint, ECF No. 115, and entered an order granting Defendants' motions to stay discovery in light of Defendants' anticipated motions to compel arbitration, ECF No. 116 (the "May 7 Order"). The May 7 Order set a briefing schedule for these motions and any motion-related discovery. *Id.* Plaintiff amended her complaint on May 7, 2025. ECF No. 117.

On June 13, 2025, McMahon and WWE timely filed their motions to compel arbitration for a third time. ECF Nos. 122, 124. On June 18, 2025, Plaintiff sent twenty document requests

2

for production spanning a six—and-a-half-year time period to McMahon and eighteen requests to WWE. *See* ECF No 126-3 (the "Discovery Requests"). The parties met and conferred on June 20, 2025. At that meeting, Defendants objected to the Discovery Requests, noting, among other things, that Plaintiff had not met her burden for motion-related discovery and that discovery was not necessary to oppose the motions to compel. Plaintiff did not offer any alternatives to the sweeping Discovery Requests. Instead, Plaintiff asked Defendants to consent to an extension of the Court-ordered deadline for her opposition to the motions to compel, which is set for July 11, 2025. ECF No. 116. Defendants declined. On June 23, 2025, Plaintiff filed the present motion for leave to serve the Discovery Requests on Defendants and to extend her opposition deadline. ECF No. 126.

## ARGUMENT

### I. Plaintiff Does Not and Cannot Meet Her Burden for Any Motion-Related Discovery

"[G]iven the 'strong federal policy favoring arbitration . . . ,' courts do not grant discovery requests related to a motion to compel arbitration as a matter of course." *Flores v. NFL*, No. 22-cv-871, 2022 WL 3098388, at *1 (S.D.N.Y. Aug. 4, 2022) (quoting *Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008)). Indeed, courts do "not compel the production of discovery materials as freely as [they] may when deciding a motion for summary judgment," *id.*, and engage only in a "limited review to ensure . . . that a valid agreement to arbitrate exists," *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, No. 03-md-1568, 2005 WL 3360584, at *4 (D. Conn. Nov. 9, 2005) (citations omitted).[1] Courts grant this limited discovery "***only*** when the party opposing

---

[1] Although district courts sometimes address the question of whether the claims at issue fall within the scope of the arbitration clause, *see, e.g., In re Parcel Tanker*, 2005 WL 3360584, at *4 (stating the same), they decline to do so where, as here, parties have delegated arbitrability to the arbitrator, *see, e.g.,* ECF Nos. 122-1 (Motion to Compel), Arg. § II(A); 124-1 (Defendant WWE's Memorandum of Law in Support of Its Motion to Compel Arbitration) ("WWE Mtn. to Compel"), Arg § II.

3

arbitration 'comes forth with *reliable evidence* that is *more than a naked assertion* . . . that it did not intend to be bound' *by the arbitration agreement*." *Moton v. Maplebear*, No. 15-cv-8879, 2016 WL 616343, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 774 (3d Cir. 2013)) (emphasis added); *Flores*, 2022 WL 3098388, at *2 (same).

Here, Plaintiff presents no "evidence" of coercion at all—no affidavit, no exhibits, nothing other than repeating the "naked assertions" from her amended complaint. This regurgitation is insufficient even according to the legally inapplicable (but more liberal) summary judgment discovery standard that Plaintiff invokes. *See* Pl. Mem. at 3 (quoting FED. R. CIV. P. 56(d)) (stating that a court may order discovery on a summary judgment motion "[i]f a nonmovant shows *by affidavit or declaration* that, for specified reasons, it cannot present facts essential to justify its opposition" (emphasis added)); *see also Hudson v. Babilonia*, No. 14-cv-1646, 2015 WL 1780879, at *2 (D. Conn. Apr. 20, 2015) (granting arbitration-related discovery where "*[plaintiff's] sworn affidavit* suffice[d] to raise genuine disputes of material fact" as to whether plaintiff had ever actually signed the agreement or "was the victim of identity theft" (emphasis added)).

Plaintiff's cited cases further underscore that she has failed to meet her burden, and that motion-related discovery is not warranted. Contrary to Plaintiff's suggestion, the "circumstances" of each cited case differ significantly from those argued in the Motion. In two of the cases, the movant (unlike Plaintiff here) presented substantial evidence demonstrating the need for discovery. *See Legacy Cap. 26, LLC v. Chaldean Enter., LLC*, No. 22-cv-5758, 2023 WL 5530307, at *1 (S.D.N.Y. Aug. 28, 2023) (granting limited discovery where movant offered an attorney declaration with 16 exhibits); *de Moura Castro by Hilario v. Loanpal, LLC*, 715 F. Supp. 3d 373, 381-88, 396 (D. Conn. 2024) (granting limited discovery after a hearing at which movants

4

presented evidence, including testimony, that their signatures were forged).  The courts in the other two cases granted discovery on narrow issues where, in contrast to the Motion here, "the requested information [would] not intrude into the substantive matters that would be subject to arbitration." *Golightly v. Uber Techs., Inc.*, No. 21-cv-3005, 2021 WL 3539146, at *4 (S.D.N.Y. Aug. 11, 2021); *accord Alvarez v. Experian Info. Sols., Inc.*, No. 19-cv-3343, 2021 WL 2349370, at *1; *see* ECF No. 53 (E.D.N.Y. June 7, 2021) (referencing previous arbitration-related discovery on a narrow issue following completion of substantial merits and class certification-related discovery).

Here, the Discovery Requests blatantly seek merits discovery to support Plaintiff's claim that the Settlement Agreement as a whole is invalid, rather than motion-related discovery limited to coercion or duress directed at the arbitration clause in particular.[2]  *See, e.g.,* McMahon Request No. 1 (seeking documents identifying individuals "who participated in drafting and/or reviewing the *NDA*" (emphasis added)).  Indeed, even if the Motion somehow included reliable evidence supporting Plaintiff's allegation that she was coerced into signing the Settlement Agreement, the Motion would still fail because allegations of coercion or duress that only attack "the validity of the contract as a whole" are irrelevant to opposing or adjudicating the Motion to Compel.  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006); *see also Grimmett v. DMM Sols., Inc.*, No. 24-cv-5903, 2024 WL 5090009, at *3 (S.D.N.Y. Dec. 11, 2024) ("Regardless of how specifically she has alleged them, Plaintiff's claims of fraudulent inducement and unconscionability are irrelevant at this stage because they relate to the contract as a whole, rather than to the arbitration agreement in particular.").  As discussed at length in the Motion to Compel, the Court may consider only challenges to the arbitration clause itself, and "[a] challenge to the

---

[2] Defendant McMahon reserves all rights to object to any eventual discovery that Plaintiff seeks on the merits.

5

validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye*, 546 U.S. at 449.

Plaintiff's own cases openly acknowledge this long-established principle of law. For example, in *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438 (2d Cir. 1995), the Second Circuit held that the district court, rather than the arbitrator, could address an argument of fraudulent inducement only because, unlike here, the party resisting arbitration alleged that "they were fraudulently induced to assent to the arbitration clause—***not to the rest of the contract***." *Id.* at 457 (emphasis added). Plaintiff conveniently omits internal citations from *Distajo* citing to precedent recognizing this same principle. *See id.* at 452 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967), where the Supreme Court "held that a claim of fraud in the inducement of an underlying contract must be left to the arbitrators, but that a claim of fraud in the inducement of the arbitration clause should be decided by the court").

Plaintiff fails to submit any reliable evidence that McMahon coerced her to enter into the arbitration clause in particular. Without this evidence, which is required by Supreme Court precedent and the very cases Plaintiff cites, she cannot satisfy her burden to establish that her "requested discovery is essential to resolving disputed issues of fact ***central to her Oppositions*** to Defendants' Arbitration Motions," Pl. Mem at 5 (emphasis added)—i.e., that she was coerced "specifically [to enter in]to the arbitration clause," *Buckeye*, 546 U.S. at 449. Instead, she simply tacks on references to the arbitration clause to her attacks on the Settlement Agreement as a whole. *See, e.g.*, Pl. Mem at 4 ("Plaintiff signed the NDA, ***including the underlying arbitration clause***, in an extreme state of duress and coercion at the hands of Vince McMahon." (emphasis added)); *id.* at 5 ("Discovery is appropriate here because Defendants' Arbitration Motions raise disputed issues of fact regarding the creation and enforceability of the NDA, ***including the arbitration***

6

*provision*."). In some instances, Plaintiff neglects to mention the arbitration clause altogether, laying bare that her attacks target the entire agreement. *See, e.g.*, *id.* at 6 ("Plaintiff was Coerced to Sign the NDA Under Duress.").

Plaintiff has failed to meet her burden for motion-related discovery. She has failed to present any evidence, let alone reliable evidence, suggesting that she did not intend to be bound by the arbitration provision. Critically, the Motion suffers the same deficiencies as the FAC given the dearth of a single non-conclusory allegation purporting to establish that Plaintiff was coerced into the arbitration clause. The Motion fails to identify how the requested discovery is "central" to the Plaintiff's opposition, thus obviating the need for any motion-related discovery. This should end the Court's inquiry.

## II.     The Facts Plaintiff Purports to Need Are Within Her Possession, Custody, and Control

Motion-related discovery is also unwarranted because Plaintiff is the party who would be in possession of evidence of coercion or duress (i.e., evidence concerning communications and conduct impacting her mental state). Plaintiff's claimed basis for challenging the Settlement Agreement is that she signed it "in an extreme state of duress and coercion." Pl. Mem. at 4, 6. The party best positioned to possess evidence probative of Plaintiff's mental state is Plaintiff, not Defendants. Plaintiff has supplied no text messages, diary entries, emails, or other communications suggesting she felt pressured, forced, threatened, or intimidated into the arbitration clause. There is no dispute that Plaintiff was represented by counsel in the negotiation and execution of the Settlement Agreement. Indeed, it is ***Plaintiff's*** communications with her counsel and others that may be probative of threats she alleges she received or feelings of duress that she claims to have had—not McMahon's communications with his counsel (or anyone else).

Duress refers to a situation where one person makes unlawful threats or otherwise engages

7

in coercive behavior "that causes another person to commit acts that they would otherwise not commit."[3] The federal trafficking statute's definition of coercion involves similar threats made "against any person," or a pattern intended to "cause a person to believe" that failure to act would result in harm against them. 18 U.S.C. § 1591(e)(2). Coercion and duress are not ploys masterminded in the shadows, without the subject's awareness; they are words and actions directed outwardly upon the subject and constitute "unlawful conduct of such a character as to destroy the other party's exercise of free will and judgment." *McCord v. Goode*, 308 S.W.3d 409, 413 (Tex. Ct. App. 2010); *see also Crocker v. Chapdelaine*, No. 18-cv-613, 2019 WL 2269944, at *3 (D. Conn. May 28, 2019) ("Duress has been described as 'any wrongful threat of one person by words or other conduct that induces another to enter into a transaction **under the influence of such fear as precludes him from exercising free will and judgment**, if the threat was intended or should reasonably have been expected to operate as an inducement.'" (quoting *In re Mason*, 300 B.R. 160, 165 (Bankr. D. Conn. 2003)).

Here, "no discovery can add to the store of [Plaintiff's] knowledge" on these topics. *Moton*, 2016 WL 616343, at *5. "All information pertinent to the 'suggestions' made by Plaintiff" that she entered the agreement under duress and coercion "would be within [her own] possession, custody, and control and no one else's." *Id.* "Because Plaintiff[] should know whether" she was coerced into the arbitration clause, "the Court can only assume that [she is] attempting to embark on an impermissible fishing expedition." *Flores*, 2022 WL 3098388, at *2 (denying arbitration-related discovery on grounds that information should have been within plaintiffs' knowledge); *see also Moton*, 2016 WL 616343, at *5 (same); *Olsen v. Charter Comms., Inc.*, Nos. 18-cv-3388; 18-cv-4972, 2019 WL 3779190, at *6 n.7 (S.D.N.Y. Aug. 9, 2019) ("The plaintiffs should be able to

---

[3] *See* Duress, Legal Information Institute, https://www.law.cornell.edu/wex/duress (last visited June 30, 2025).

8

allege sufficient facts to show that their agreement to each arbitration clause was fraudulently induced if in fact it was fraudulently induced, but they have failed to do so. The plaintiffs cannot avoid arbitration with the unsubstantiated hope that discovery may turn up something."). Unsurprisingly, Plaintiff cites not a single case in which a court granted motion-related discovery to a party seeking evidence of its own alleged duress or coercion.

Here, Plaintiff has provided no legal or logical basis to justify fishing through documents belonging to others to explore whether she herself "intend[ed] to be bound by the arbitration agreement." *Moton*, 2016 WL 616343, at *4; *Flores*, 2022 WL 3098388, at *2.

### III. Plaintiff's Sweeping Requests Are Overly Broad, Untethered from the Issues, and Would Impose an Undue Burden on McMahon

The Court need not consider Plaintiff's "motion-related" Discovery Requests because Plaintiff fails to meet the legal requirements for such discovery. Even if she had met that burden, the Discovery Requests are overbroad and confirm Plaintiff's intent to do an end-run around the Court's Order to Stay Discovery.

Plaintiff astoundingly asserts that her twenty requests for production comprise "targeted discovery" that is "narrowly tailored" to the motions to compel arbitration. *See* Pl. Mem. at 4-5; ECF No. 126-3 at 8-10, 19-21.[4] Yet, the requests cover a six-and-a-half-year time period, and the vast majority seek "all" documents and/or communications in the requested category, undercutting the notion that the Discovery Requests are targeted or narrowly tailored. ECF No. 126-3 at 15, 19-21. Remarkably, not a single Discovery Request is directed at the arbitration clause—the sole potentially viable area for discovery. In fact, the word "arbitration" does not appear even once in the eleven-page document that Plaintiff seeks to serve on McMahon. Accordingly, Plaintiff's requests go light-years beyond the limited motion-related discovery contemplated by the May 7

---

[4] Citations to pages in this section are to the official ECF page numbers stamped at the top of the filing.

9

Order, which emphasized that any discovery must be "motion-related." ECF No. 116. Indeed, they even go beyond what is often allowed in full-blown merits discovery. *See, e.g.*, *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088, 2016 WL 616386, at *15 (S.D.N.Y. Feb. 16, 2016) ("Virtually all of the requests set forth in Plaintiff's Second Document Request seek 'any and all documents which support, contradict, or in any way relate to' a particular subject, some of which are broadly defined. 'Blanket requests of this kind are plainly overbroad and impermissible.'" (cleaned up) (listing similar cases)).

The Court rightfully stayed premature merits discovery in the May 7 Order. The Discovery Requests—without exception—go to the merits (if anything), and many seek documents and communications related to the Settlement Agreement as a whole. Indeed, the allegation that Plaintiff unlawfully entered into the Settlement Agreement (as opposed to the arbitration clause) is the ***entire substance*** of Count II of the FAC. *See* FAC ¶¶ 336-45. The proposed scope of the "motion-related discovery" is preposterous.

Finally, beyond being unreasonable, the Discovery Requests would impose an undue burden on McMahon. This case, which does not belong in this forum, has now been pending here for nearly a year-and-a-half. Plaintiff's wide-ranging Discovery Requests would necessitate a document collection, review, and production, all of which would further delay the case being adjudicated in the proper forum. Further, Plaintiff's unsupported assertion that "[a]ll, or substantially all, of the documents Plaintiff requested have already been collected, reviewed, and produced by Defendants to the Government," *see* Pl. Mem. at 9, is untrue. And, in any event, it defies common sense to assert that a simple "re-production of files" could be "made immediately" to Plaintiff as part of an unrelated civil litigation, without any review to assess whether each document is relevant to the exceedingly narrow issue being litigated here.

## IV. The SEC Order and Second Circuit Decision Are Irrelevant

The Court should not be distracted by Plaintiff's reference to the January 10, 2025 order of the Securities and Exchange Commission ("SEC Order") and February 7, 2025 Second Circuit decision, both of which are irrelevant to this action, let alone the pending Motion to Compel.

Plaintiff grossly mischaracterizes the SEC Order and corresponding press release despite Defendants previously correcting Plaintiff's misconceptions. *See* ECF No. 98 at 9-10.[5] Plaintiff attempts to use the SEC Order to argue that the Settlement Agreement is "illegal," and that it was "drafted and signed in furtherance of crimes, including several violations of federal securities laws." Pl. Mem. at 4, 7. This characterization is demonstrably false. First, nothing in the SEC Order suggests that the Settlement Agreement was "illegal." *Id.* at 7. On the contrary, the legality and enforceability of the Settlement Agreement is *presumed* by the SEC Order. Indeed, the Order recounts that WWE restated its financial records to account for its obligations under the binding agreement. *See* SEC Order ¶ 37. Second, the SEC Order does not even reference the arbitration clause—the only clause at issue in the pending motions—let alone suggest that the clause was "drafted and signed in furtherance of crimes." Pl. Mem. at 4. Third, the SEC Order is a no-admit-no-deny settlement of *civil* violations, *not* criminal charges. *See* SEC Order at ¶ 1. The allegations in that Order, even were any relevant, are not admissions of McMahon and are not cognizable here. Finally, the alleged civil violations relate to a purported failure to disclose two agreements to WWE for accounting purposes. *Id.* at ¶ 2. The enforceability of the Settlement Agreement with Plaintiff was not at issue, nor were the conditions under which Plaintiff entered the Agreement.

---

[5] *See also* Vincent Kennedy McMahon, Exchange Act Release No. 102143, 2025 WL 70147 (Jan. 10, 2025) (cease and desist order); Press Release, *Vince McMahon, Former CEO of WWE, Charge for Failure to Disclose to WWE Two Settlement Agreements He Executed on Behalf of WWE*, SEC (Jan. 10, 2025), https://www.sec.gov/newsroom/press-releases/2025-1.

11

Plaintiff also references an anonymized Second Circuit decision that addresses a crime-fraud privilege ruling arising from sealed grand jury proceedings in the Southern District of New York. *In Re: Grand Jury Subpoenas Dated Sept., 13, 2023*, 128 F.4th 127, 130 n.1 (2d Cir. 2025) (stating that "[t]his appeal concerns proceedings currently before a grand jury," that "no indictments have been issued," "the record and briefs are under seal," and "[i]n order to preserve the anonymity of the parties, we use pseudonyms"). Without commenting on those sealed proceedings or their applicability to McMahon, suffice it to say that McMahon has not produced any documents in response to any crime-fraud order. In any event, the alleged "crime or fraud" at issue in the Second Circuit's decision—which Plaintiff neglects to mention—concerned a circumvention of internal corporate accounting controls. *Id.* at 142. The decision addresses a discrete set of attorney-client communications that were allegedly "structured and intended to conceal the resulting agreements from the Company" for accounting purposes. *Id.* at 145. As with the SEC Order, the decision does not purport to address the enforceability of any of the underlying agreements, claims of duress or coercion, or any issue related to any arbitration clause. In other words, it is entirely irrelevant.

## V. The Court Should Deny Plaintiff's Latest Attempt to Extend Her Opposition Deadline

In its May 7 Order, the Court established a briefing schedule for Defendants' motions to compel arbitration and any motion-related discovery sought by Plaintiff. ECF No. 116. That order requires that Plaintiff file her opposition to Defendants' pending motions to compel arbitration by July 11, 2025. *Id.* In addition to the four-plus weeks Plaintiff will have had to prepare an opposition pursuant to that order, she has also now had the benefit of reviewing three iterations of Defendants' motions to compel arbitration over the span of 14 months. She has twice ignored deadlines to oppose those motions, in addition to spurning other deadlines set by this Court. *See*

12

ECF Nos. 93, 94-1 (noting Plaintiff's failure to timely amend her complaint pursuant to the Court's Order on Pretrial Deadlines). Therefore, to "conserve judicial resources," Pl. Mem. at 9, the Court should deny Plaintiff's baseless request for motion-related discovery, as well as her request to further extend the Court-imposed opposition deadline of July 11, 2025, which has been on the calendar for more than seven weeks.

## VI.   If the Court Grants Any Motion-Related Discovery, Strict Limitations Should Be Imposed and Reciprocal Discovery Should Be Permitted

As discussed herein, the Court should deny the Motion in full. In the event that the Court does grant any limited discovery, it must be severely circumscribed along several dimensions to comply with the May 7 Order. Additionally, McMahon respectfully requests that reciprocal discovery be ordered should the Court elect to grant certain limited discovery to Plaintiff.

### A.   Unlike the Discovery Requests, Any Discovery Must Be Narrowly Tailored to the Pending Motions

Defendants' pending motions seek to compel arbitration. As discussed herein and in Defendants' motions to compel, any arguments that Plaintiff presents in opposition to those motions must be targeted to the arbitration clause. At present, ***not one is***. To the extent the Court permits any motion-related discovery, it must be tailored to the arbitration clause. *See Grimmett*, 2024 WL 5090009, at *3 ("To the extent Plaintiff seeks discovery in connection with a claim of fraudulent inducement, such efforts must be reasonably calculated to uncover information likely to show that the arbitration clause specifically, as opposed to the contract generally, was the result of fraud."). Likewise, the time period should be limited to January 20, 2022 – January 28, 2022, the eight days over which negotiations took place. *See* FAC ¶¶ 249-57.

### B. In Contrast to the Discovery Requests, Any Discovery Cannot Seek Privileged Material

Attorney-client privilege has been recognized as "the oldest of the privileges for confidential communications known to the common law," and is intended "to encourage full and frank communication between attorneys and their clients and thereby promote broad public interests in the observance of law and administrative justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). At least one Discovery Request seeks material clearly subject to McMahon's attorney-client privilege and the attorney work-product doctrine. *See* ECF No. 126-3 at 19 (seeking "[a]ll drafts of the NDA"). Beyond the reasons otherwise stated herein, this request, and any other requests seeking privileged information, are improper for this additional reason.[6]

### C. Any Discovery Granted to Plaintiff Warrants Reciprocal Discovery to Defendants

Should the Court grant limited discovery to Plaintiff—which it should not—McMahon respectfully requests that the Court order reciprocal discovery on equivalent topics, including, but not limited to, any relevant communications between Plaintiff, third parties, and/or McMahon in relation to the arbitration clause and Plaintiff's state of mind during the drafting and executing period.

---

[6] Plaintiff's request No. 17 to McMahon refers to materials found to be subject to the crime-fraud privilege exception as part of sealed grand jury proceedings in the Southern District of New York, and the anonymized Second Circuit decision discussed above. *See* ECF No. 126-3 at 20; *supra*, Arg. § IV. Defendant McMahon has not produced any documents in response to any crime-fraud order. In any event, Plaintiff has not even endeavored to make a showing as to why an order from a sealed, unindicted investigation into alleged accounting violations—to the extent any such order were applicable to McMahon—would be binding in this case, nor why the crime-fraud exception would apply here. Both would be Plaintiff's burden to prove. *See United States v. Levin*, No. 15-cr-101, 2015 WL 5838579, at *3 (S.D.N.Y. Oct. 5, 2025) ("[T]he party seeking to vitiate the privilege must show probable cause that a crime or fraud has been committed and that the communications were in furtherance thereof." (citing *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1039 (2d Cir. 1984)); *Roseman v. Bloomberg L.P.*, No. 14-cv-2657, 2016 WL 3866375, at *4 (S.D.N.Y. June 17, 2016) ("Under the doctrine of offensive collateral estoppel . . . a plaintiff may foreclose a defendant from relitigating an issue the defendant has previously litigated. . . . The party arguing for the application of collateral estoppel has the burden of establishing all four elements." (citations omitted)).

## **CONCLUSION**

For the foregoing reasons, Defendant McMahon respectfully requests that the Court deny Plaintiff's Motion for Leave to Serve Motion-Related Discovery in full, including Plaintiff's request to further extend the deadline for her opposition to Defendants' pending motions to compel arbitration.

Date: June 30, 2025                                         Respectfully submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:   */s/ Jessica T. Rosenberg*

Jessica T. Rosenberg
  (admitted *pro hac vice*)
Ilana Roberts
  (admitted pro hac vice)
One Bryant Park
New York, NY  10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
jrosenberg@akingump.com
iroberts@akingump.com


**McCARTER & ENGLISH, LLP**
James A. Budinetz (ct16068)
Snigdha Mamillapalli (ct31142)
CityPlace I, 185 Asylum Street
Hartford, CT  06103
Telephone: (860) 275-6765
Facsimile: (860) 724-3397
jbudinetz@mccarter.com
smamillapalli@mccarter.com

15

**CERTIFICATE OF SERVICE**

I certify that on June 30, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all Parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

                                                                           */s/ Jessica T. Rosenberg*