**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JANEL GRANT,<br><br>     Plaintiff,<br><br>  v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC.<br>n/k/a WORLD WRESTLING ENTERTAINMENT,<br>LLC; VINCENT K. MCMAHON, and JOHN<br>LAURINAITIS,<br><br>     Defendants. | Civil Action No.: 3:24-cv-00090 (SFR)<br><br>May 13, 2026 |

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, LLC'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
<u>**OF ITS MOTION TO COMPEL ARBITRATION**</u>

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page(s)**

I.    ARBITRABILITY SHOULD BE DECIDED BY THE ARBITRATOR ......................... 1

II.   GRANT'S CHALLENGES TO THE AGREEMENT AS A WHOLE MUST BE
DECIDED BY THE ARBITRATOR .............................................................................. 2

III.  THE SPEAK OUT ACT AND EFAA DO NOT PRECLUDE ARBITRATION
HERE ............................................................................................................................ 7

IV.  GRANT'S CLAIMS ARE IN SCOPE OF THE ARBITRATION PROVISION ........... 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrows* v. *Brinker Rest. Corp.*,
   36 F.4th 45 (2d Cir. 2022) ........................................................................................5

*Billie* v. *Coverall North America, Inc.*,
   444 F. Supp. 3d 332 (D. Conn. 2020).........................................................................5

*Buckeye Check Cashing, Inc.* v. *Cardegna*,
   546 U.S. 440 (2006).................................................................................................2, 5

*Castillo* v. *Altice USA, Inc.*,
   698 F. Supp. 3d 652 (S.D.N.Y. 2023)........................................................................8

*D'Antuono* v. *Serv. Rd. Corp.*,
   789 F. Supp. 2d 308 (D. Conn. 2011).......................................................................4, 8

*DDK Hotels, LLC* v. *Williams-Sonoma, Inc.*,
   6 F.4th 308 (2d Cir. 2021) ........................................................................................1

*de Moura Castro by Hilario* v. *Loanpal, LLC*,
   715 F. Supp. 3d 373 (D. Conn. 2024)........................................................................6

*Denson* v. *Donald J. Trump, Inc.*,
   530 F. Supp. 3d 412 (S.D.N.Y. 2021)........................................................................6

*Dhue* v. *O'Reilly*,
   2018 WL 11222900 (S.D.N.Y. Oct. 10, 2018)...........................................................1

*DiSpazio* v. *Pacapelli*,
   231 Conn. App. 589 (Conn. App. Ct. 2025)...............................................................6

*Dumitru* v. *Princess Cruise Lines, Ltd.*,
   732 F. Supp. 2d 328 (S.D.N.Y. 2010)........................................................................8

*Famuyide* v. *Chipotle Mexican Grill, Inc.*,
   2023 WL 5651915 (D. Minn. Aug. 31, 2023) ............................................................8

*In re Grand Jury Subpoenas Dated September 13, 2023*,
   128 F.4th 127 (2d Cir. 2025) ....................................................................................3

*Henry Schein, Inc.* v. *Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)....................................................................................................1

*Hodgin* v. *Intensive Care Consortium, Inc.*,
666 F. Supp. 3d 1326 (S.D. Fla. 2023) ........................................................................9

*Hoffmann* v. *Mary Giuliani Catering & Events, Inc.*,
2025 WL 1616859 (S.D.N.Y. June 6, 2025) ..............................................................10

*Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 145* v. *Purity Food Co.*,
17 Conn. Supp. 12, 14 (Conn. Super. Ct. 1950) ..........................................................6

*Ipcon Collection LLC* v. *Costco Wholesale Corp.*,
698 F.3d 58 (2d Cir. 2012)...........................................................................................2

*Johnson* v. *Everyrealm, Inc.*,
657 F. Supp. 3d 535 (S.D.N.Y. 2023)...........................................................................9

*Merida Cap. Partners III LP* v. *Fernane*,
2025 WL 2531041 (S.D.N.Y. Sept. 3, 2025).................................................................4

*Montanus* v. *Columbia Mgmt. Inv. Advisers, LLC*,
2025 WL 2503326 (S.D.N.Y. Sept. 2, 2025).................................................................9

*NASDAQ OMX Grp., Inc.* v. *UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014).......................................................................................1

*Olivieri* v. *Stifel, Nicolaus & Co., Inc.*,
112 F.4th 74 (2d Cir. 2024) ..........................................................................................9

*Perricone* v. *Perricone*,
292 Conn. 187 (2009) ...................................................................................................6

*Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967)......................................................................................................5

*Rent-A-Center, W., Inc.* v. *Jackson*,
561 U.S. 63 (2010).....................................................................................................2, 5

*Silverman* v. *DiscGenics, Inc.*,
2023 WL 2480054 (D. Utah Mar. 13, 2023) ...............................................................9

*Sphere Drake Ins. Ltd.* v. *Clarendon Nat'l Ins. Co.*,
263 F.3d 26 (2d Cir. 2001)............................................................................................6

*Steward Partners Glob. Advisory, LLC* v. *Tucker*,
2024 WL 4202697 (S.D.N.Y. Sept. 16, 2024)..............................................................8

*Velasco* v. *Comm'r of Correction*,
214 Conn. App. 831 (Conn. App. Ct. 2022)..................................................................6

*Walters* v. *Starbucks Corp.*,
    623 F. Supp. 3d 333 (S.D.N.Y. 2022)......................................................................................9

**Statutes**

9 U.S.C. § 402(a) ....................................................................................................................8, 9

42 U.S.C. § 19402(1) ................................................................................................................7

42 U.S.C. § 19403(a) .............................................................................................................7, 8

In her Opposition, ECF No. 138 ("Opp."), Grant does not dispute that she signed the Agreement, in which she agreed that "the sole and exclusive legal method to resolve any and all disputes and/or controversies is to commence binding arbitration." *See* ECF No. 124-2 ("SUMF"), ¶¶ 8–9, 21.  She does not dispute that, according to the Agreement, she read and understood its terms and her attorney explained them to her, or that she signed the Agreement in exchange for payment.  SUMF ¶¶ 23, 31.  For purposes of WWE's Motion, ECF No. 124-1 ("Mot."), Grant does not dispute any relevant fact regarding the formation or substance of the Agreement.  Instead, Grant presents a scattershot list of reasons why the Agreement as a whole and its arbitration provision should not be enforced.  None is availing and the Court should compel arbitration.

## I.    ARBITRABILITY SHOULD BE DECIDED BY THE ARBITRATOR

As discussed in WWE's opening brief, Mot. at 11–13, the Agreement contains "clear and unmistakable evidence" of the Parties' intent to "delegate threshold arbitrability questions to the arbitrator."  *See Henry Schein, Inc.* v. *Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *Dhue* v. *O'Reilly*, 2018 WL 11222900, at *3 (S.D.N.Y. Oct. 10, 2018) (citation omitted).  The Agreement: (i) includes "a broad arbitration clause expressly commit[ting] *all* disputes to arbitration," *see NASDAQ OMX Grp., Inc.* v. *UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) ("*[A]ll* disputes necessarily includes disputes as to arbitrability."); SUMF ¶ 21 ("[A]ny and all disputes and/or controversies" shall be arbitrated "pursuant to the procedures of the [AAA]."), and (ii) "incorporate[s] procedural rules that empower an arbitrator to decide issues of arbitrability," *see DDK Hotels, LLC* v. *Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021) (citing AAA rules as an example).  Grant does not meaningfully dispute this.  Indeed, she does not address the delegation of arbitrability to the arbitrator at all, other than to ask that, if the Court "refers the question of arbitrability to an arbitrator, it should refrain from finding that the NDA or its arbitration clause are valid on their face."  Opp. at 39.  She does not provide any authority in

1

support of this request or contest that she entered into a facially valid contract containing an explicit agreement to arbitrate. *See Ipcon Collection LLC* v. *Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (explaining that "[f]ully executed contracts" demonstrate the "required objective meeting of the minds" and enforcing arbitration provision despite argument that the contract containing it was fraudulently induced); Mot. at 10. The Court should refer this matter to arbitration to decide whether Grant's claims fall within the scope of the agreement to arbitrate.

## II. GRANT'S CHALLENGES TO THE AGREEMENT AS A WHOLE MUST BE DECIDED BY THE ARBITRATOR

As WWE further explained, Mot. at 15–17, courts, rather than arbitrators, decide challenges to the validity and enforceability of an agreement containing an arbitration provision *only* if such challenge is "directed specifically to the agreement to arbitrate." *Rent-A-Center, W., Inc.* v. *Jackson*, 561 U.S. 63, 71 (2010). Where the "challenge [is] to the validity of the contract as a whole," it is for the arbitrator to adjudicate instead. *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 449 (2006). Grant makes several validity and enforceability challenges but, despite her best efforts to shoehorn in the arbitration clause, each challenge is to the Agreement as a whole, not the arbitration provision in particular. Accordingly, those challenges are for the arbitrator to decide.

**Void for Public Policy.** Grant does not even attempt to connect her assertion that the Agreement is void as a matter of public policy to the arbitration provision. Whether the Agreement was created in furtherance of criminal activity and therefore void for public policy is therefore a matter for the arbitrator to decide. Even so, Grant's contention regarding the Agreement is unsupported by, and directly contrary to, the two matters to which she cites.

First, Grant points to an SEC fine of McMahon for certain accounting- and disclosure-

2

related offenses.[1]  But the SEC Order did not find the Agreement unlawful or invalid.  Rather, it presupposes that the Agreement *is* valid and enforceable and thus should have been disclosed to WWE's legal and accounting departments to be recorded in WWE's financials.  Grant asserts that WWE "admitted" wrongdoing in the SEC Order and "pinned the [accounting- and disclosure-related] issue on McMahon," Opp. at 19, but that is not so.  WWE was not a party to the Order.

Second, Grant points to a Second Circuit decision that certain communications between McMahon and his counsel were subject to the crime-fraud exception because there was probable cause to believe that they "were structured and intended to conceal the" Agreement from WWE.[2]  Contrary to Grant's assertion, the alleged criminal scheme—circumvention of WWE's internal controls, again, due to failure to disclose the Agreement within WWE and to its auditors—has nothing to do with the negotiation, formation, or enforceability of the Agreement, let alone the validity of its arbitration provision in particular.  And again, the Crime-Fraud Decision assumes that the Agreement *is* valid and enforceable—and thus was required to be provided to WWE's legal and accounting departments for evaluation as to proper treatment in WWE's financials.

Neither the SEC Order nor the Crime-Fraud Decision mentions the Agreement's arbitration provision.  Nor does either suggest that the Agreement *was entered into* in furtherance of, or to conceal, a crime or fraud.  Thus, there is no public policy rationale to void the Agreement.[3]

---

[1] Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, *SEC* v. *McMahon*, Admin. Proc. File No. 3-22391, at 7–8 (Jan. 10, 2025) (the "SEC Order").

[2] *See In re Grand Jury Subpoenas Dated September 13, 2023*, 128 F.4th 127, 145 (2d Cir. 2025) (the "Crime-Fraud Decision").

[3] Grant alleges that the Agreement "prohibits [her] from cooperating with law enforcement investigations." Opp. at 20; *id.* at 18, 37, 38.  Not so.  The Agreement clearly provides that "[s]hould Grant receive notice [that disclosure of covered information is sought] by way of subpoena, discovery request, court order, agency action or otherwise, she shall give McMahon and WWE prompt . . . notice [and] cooperate with McMahon and WWE to . . . maintain its confidentiality to the extent legally permissible."  ECF No. 117, Ex. A, § VIII.

3

**Lack of Capacity.**  With respect to Grant's contentions that she was coerced to enter into, and lacked capacity to consent to, the Agreement, she does not make any allegations specific to the arbitration clause, separate and apart from the Agreement as a whole.  *See* Opp. at 30 (alleging that "Grant lacked the capacity requisite for mutual assent and contract formation").  Recognizing this critical gap, Grant argues that because McMahon asked her to sign the Agreement "quickly," "that duress" was "necessarily" "***specific*** to the arbitration provision."  *Id.* at 34.  Grant's argument does not follow, and there is no support for it.  Rather, for a court to invalidate an arbitration agreement, the allegations of coercion and compulsion must be related *specifically to the arbitration provision itself.  Merida Cap. Partners III LP* v. *Fernane*, 2025 WL 2531041, at \*4 (S.D.N.Y. Sept. 3, 2025) (holding that plaintiff failed to allege deception as to the arbitration agreement in particular, as opposed to the agreement as a whole).  Grant's do not.

Grant submits declarations from herself, ECF No. 138-3, and a clinical psychologist, Dr. Chitra Raghavan, ECF No. 138-4, who examined Grant years after the relevant events, *id.* ¶ 18. The declarations contend that Grant lacked the requisite agency to be bound by the Agreement. WWE has reservations about Dr. Raghavan's methodology and conclusions, but those concerns are not relevant to the present Motion.  Dr. Raghavan's declaration does not mention the arbitration provision even once.  Grant's declaration mentions the arbitration provision precisely once, to say that Grant has "no memories of the arbitration clause" and does not recall "discussing it with either Vince or my attorney," "reviewing it," or whether anyone made "revisions to it."  ECF No. 138-3, ¶ 130.  Because these declarations do not bear on the validity or enforceability of the arbitration provision in particular, they cannot prevent transfer of this matter to arbitration.

The cases Grant cites in support of her coercion and incapacity theory do not support her position.  *See, e.g.*, *D'Antuono* v. *Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 319 & n.4 (D. Conn. 2011)

4

("[U]nless the challenge is to the [enforceability of the] arbitration clause itself, the issue of the contract's validity is [usually] considered by the arbitrator" and "referral of 'any and all' controversies . . . evidence[s] the parties' clear 'inten[t] to arbitrate the issues of arbitrability.'" (citations omitted)).  Grant ignores wholesale the *Prima Paint* line of cases, which renders her distinction between "void" and "voidable" irrelevant where, as here, the parties agreed to arbitrate the issue of arbitrability.  *See Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967) ("[A] claim of fraud in the inducement of the contract generally—as opposed to the arbitration clause itself—is for the arbitrators and not for the courts.").[4]

The District of Connecticut's application of that line of cases in *Billie* v. *Coverall North America, Inc.*, 444 F. Supp. 3d 332, 345–46 (D. Conn. 2020), is instructive.  There, the court held that an unconscionability challenge to the agreement as a whole was for the arbitrator because the plaintiffs did not target the delegation clause specifically.  *Id.* at 345–46.  Because Grant has not directed her invalidity arguments to the arbitration provision, the broad arbitration clause here likewise commits all disputes—including arbitrability—to the arbitrator.  Grant's attempt to recast her contract-wide coercion argument as one specific to the arbitration clause—premised on McMahon's alleged demand that she accept the Agreement quickly and without changes—fails because she nowhere alleges that the arbitration provision was adhesive, obscure, or buried within the agreement.  *See id.* at 347.  Nor does she dispute signing the Agreement, and her assertion that she does not recall the arbitration provision, Opp. at 34, is insufficient.  *See Barrows* v. *Brinker Rest. Corp.*, 36 F.4th 45, 51 (2d Cir. 2022) (plaintiff stating that "she cannot *recall* signing an

---

[4] *See also Buckeye*, 546 U.S. at 445–46 ("[A]n arbitration provision is severable from the remainder of the contract," and "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Rent-A-Center*, 561 U.S. at 71 ("[Even] where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate," the challenge must be "directed specifically to the agreement to arbitrate.").

agreement (as opposed to *denying* she has done so) . . . fails to create a triable issue of fact").[5]

**Unconscionability.**  Grant's argument that the terms of the Agreement are overbroad and vague, eliminating any possible meeting of the minds, concerns the confidentiality and release provisions of the Agreement, not the arbitration clause.  *See* Opp. at 35, 36, 37–38.

In any event, Grant's overbreadth arguments are unavailing.  Despite her assertions that the Agreement is so vague that she "could not have fully known what constitutes 'confidential'" and that the scope of covered information is "nowhere . . . defined," Opp. at 36–37, Sections I.A. and I.B. of the Agreement clearly set forth the information that Grant may "not disclose, discuss or reveal," ECF No. 117, Ex. A, § I(A), (B).  Nor is it overbroad, unconscionable, or otherwise unusual for confidentiality and release provisions to prohibit disclosure of the existence of an agreement, as Grant asserts.  Opp. at 36.  These are standard confidentiality and release terms for a settlement and non-disclosure resolution of the sort that are routinely enforced under Connecticut law.  *See, e.g.*, *Perricone* v. *Perricone*, 292 Conn. 187, 211 (2009); *Velasco* v. *Comm'r of Correction*, 214 Conn. App. 831, 844 (Conn. App. Ct. 2022); *DiSpazio* v. *Pacapelli*, 231 Conn. App. 589, 594–600 (Conn. App. Ct. 2025).[6, 7]

---

[5] The cases Grant relies on are distinguishable.  *Sphere Drake Ins. Ltd.* v. *Clarendon Nat'l Ins. Co.* predates *Buckeye*, did not involve an agreement to arbitrate arbitrability, and the void/voidable framework does not apply to an agreement Grant concedes she executed.  263 F.3d 26, 31–32 (2d Cir. 2001).  *In re Mason* is a bankruptcy case that did not involve an arbitration clause at all.  300 B.R. 160 (D. Conn. 2003).  *de Moura Castro by Hilario* v. *Loanpal, LLC* turned on allegedly forged signatures and whether the contracts had even been executed—not arbitrability.  715 F. Supp. 3d 373, 379–93 (D. Conn. 2024).  Finally, *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 145* v. *Purity Food Co.* observes that "[i]f a party to an arbitration agreement could block arbitration proceedings by simply announcing a claim of the invalidity of the contract . . . then arbitration contracts become almost wholly ineffective and meaningless"—an apt response to Grant's position.  17 Conn. Supp. 12, 14 (Conn. Super. Ct. 1950).

[6] *Denson* v. *Donald J. Trump, Inc.*, on which Grant relies, interprets a form employment agreement under New York law, rather than, as here, an individualized settlement agreement negotiated by counsel and supported by consideration.  530 F. Supp. 3d 412, 417 (S.D.N.Y. 2021).

[7] Grant's remaining complaints are mischaracterizations of the Agreement.  *See* Opp. at 36–38.  The Agreement clearly addresses what to do if Grant receives a subpoena for covered information.  *See* ECF No. 117, Ex. A, § VIII.  Nothing prevents Grant from discussing covered information with other Parties

## III.    THE SPEAK OUT ACT AND EFAA DO NOT PRECLUDE ARBITRATION HERE

The Speak Out Act renders unenforceable "nondisclosure" and "nondisparagement" clause[s]" "agreed to before [a sexual assault or sexual harassment] dispute ar[ose]."  42 U.S.C. § 19403(a).  The arbitration provision here: (i) is not a nondisclosure or nondisparagement clause, and (ii) was entered into after the alleged sexual assault or sexual harassment dispute arose.

The Speak Out Act has no bearing on the enforceability of the arbitration provision, which, notwithstanding Grant's contentions, is *not* a nondisclosure clause.  The Speak Out Act defines a "nondisclosure clause" as a provision requiring the parties "not to disclose or discuss conduct, the existence of a settlement involving conduct, or information covered by the terms and conditions of the contract or agreement."  42 U.S.C. § 19402(1).  The arbitration provision does not prohibit disclosure or discussion of the Agreement, or any covered conduct or information—it simply requires disputes to be resolved by AAA arbitration.  *See* ECF No. 117, Ex. A, § V(D) (noting that the "obligations of confidentiality" are "contained in Section I").  The requirement that arbitration be commenced by "sealed proceedings" does not, as Grant asserts, transform the arbitration clause into a nondisclosure clause, nor is the arbitration clause "the mechanism by which [the nondisclosure clause] is enforced."  *See* Opp. at 22.  Rather, it is enforced through the parties' agreement that, if Grant breaches her nondisclosure obligations, McMahon will not owe any remaining payments to Grant and she must return all prior payments.  SUMF ¶ 13; ECF No. 117, Ex. A, § V(B), (E).[8]

---

during informal resolution.  *Id.* § I(A) (prohibiting disclosure "to third parties, on social media, in any public forum, or to any member of the media"); SUMF ¶ 21 (requiring the Parties "to first attempt to resolve such disputes informally").  The Agreement would not have prevented Grant from initiating this action in arbitration.  SUMF ¶ 21 (providing that the Parties must first try to resolve "any dispute arising under or out of this Agreement" informally and then may "commence binding arbitration").  Finally, as discussed above, the Agreement does not prohibit cooperation with law enforcement.  *See supra* note 3.

[8] Grant's argument that the nondisclosure clause is not severable because it goes to the essence and entire purpose of the Agreement, which would be "meaningless" without it, is unavailing.  Opp. at 23–24.  The

Nor was the Agreement and its arbitration provision "agreed to before the dispute ar[ose]." § 19403(a). As discussed below, in connection with the same "pre-dispute" framework under the EFAA, the Agreement is predicated on Grant possessing disputed claims to forego and not disclose. For this reason as well, the Speak Out Act is inapplicable to the arbitration provision.[9]

The EFAA likewise does not bar the Court from directing this case to arbitration. The EFAA provides that "no predispute arbitration agreement . . . shall be valid or enforceable" in a case related to sexual assault or harassment. 9 U.S.C. § 402(a). A "predispute arbitration agreement" is "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." § 401(1). "[T]he use of dispute in this context clearly refers to the discriminatory conduct underlying the Complaint, requiring the arbitration agreement to be entered into prior to the dispute—the discriminatory conduct" at issue—to be invalid. *Castillo* v. *Altice USA, Inc.*, 698 F. Supp. 3d 652, 656–57 (S.D.N.Y. 2023) (citation omitted) ("[A] dispute arises when the conduct which constitutes the alleged sexual assault or sexual harassment occurs. . . . Courts have repeatedly rejected the notion that 'disputes' arise—and that the EFAA applies—only when complaints or charges are filed." (citations omitted))[10]; *see also* Mot. at 20–21 (citing

---

Agreement contains several core purposes in addition to confidentiality, including the mutual release of claims, monetary payments to Grant, and Grant's resignation from WWE. If the nondisclosure clause is unenforceable, it should be severed pursuant to the severability clause. SUMF ¶ 22; *see, e.g.*, *Dumitru* v. *Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d 328, 346 (S.D.N.Y. 2010); *D'Antuono*, 789 F. Supp. 2d at 319.

[9] In contrast, in the *Steward* case Grant cites, the court could not determine if the Speak Out Act applied because it could not determine whether the at-issue nondisparagement agreement was entered into prior to the relevant sexual harassment dispute. *Steward Partners Glob. Advisory, LLC* v. *Tucker*, 2024 WL 4202697, at *5 n.1 (S.D.N.Y. Sept. 16, 2024).

[10] Grant ignores *Castillo* and cites out-of-circuit cases to argue that a dispute does not arise until a "party asserts a form of a complaint, right, claim, or demand." Opp. at 26. That is not the law in the Second Circuit and the Court should reject this reading of the EFAA. However, although each case is fact-specific, Grant seemingly would not prevail even under the interpretations of the EFAA set forth in the cases on which she relies. *See Famuyide* v. *Chipotle Mexican Grill, Inc.*, 2023 WL 5651915, at *3 (D. Minn. Aug. 31, 2023) (finding that a dispute "requires some sort of disagreement or 'adversarial posture,'" "a dispute is a broad term that encompasses [many] forums," and there are "many ways in which a party may formally notify another of potential allegations, claims, or demands" (citation omitted)), *aff'd*, 111 F.4th 895 (8th

legislative history demonstrating that the EFAA was meant to target arbitration clauses in employment agreements entered into before the alleged sexual assault or harassment occurred).

McMahon and Grant clearly conducted themselves in the negotiations as if a dispute had already arisen. According to Grant herself, she negotiated the Agreement with counsel in advance of the deadline for McMahon "to report pending or threatened legal actions to the WWE Board of Directors" and its Audit Committee. ECF No. 138-2 ("Counter-SMF"), § II, ¶¶ 7–9. The release provision itself demonstrates conclusively that the Agreement concerned potential disputes that had *already* arisen. *See* SUMF ¶ 16 (releasing all "causes of action . . . [Grant] ever had, may have had, [or] now has . . . as a result of, or in connection with . . . her relationship with McMahon and/or other WWE personnel . . . as a result of any act which has occurred at any time up to" the Agreement). By releasing past and currently accrued claims—and no future claims—in exchange for payment and non-disclosure, the Agreement plainly was not a "predispute . . . agreement." § 402(a). Any dispute at issue here had arisen by the time of the Agreement, and the arbitration provision is thus fully valid under the EFAA.[11]

---

Cir. 2024); *Silverman* v. *DiscGenics, Inc.*, 2023 WL 2480054, at *2 (D. Utah Mar. 13, 2023) (expressly declining, in a case involving an arbitration clause in plaintiffs' initial employment agreements, to "choose between the[] competing interpretations of the [EFAA]" because, under either interpretation, a dispute arose prior to the EFAA's enactment); *Hodgin* v. *Intensive Care Consortium, Inc.*, 666 F. Supp. 3d 1326, 1330 (S.D. Fla. 2023) (holding, in a case involving an arbitration clause in plaintiff's employment agreement, that "'dispute' is a broad term that encompasses other forums" and that "to say that a dispute arises only once a lawsuit is filed is far too limiting").

[11] Moreover, the EFAA "applies only to claims that accrued on or after March 3, 2022." *Johnson* v. *Everyrealm, Inc.*, 657 F. Supp. 3d 535, 550 (S.D.N.Y. 2023); *Walters* v. *Starbucks Corp.*, 623 F. Supp. 3d 333, 337–38 (S.D.N.Y. 2022) (granting motion to compel arbitration because plaintiff's "claims accrued at the time she experienced discrimination, harassment, or retaliation"). Grant asserts that "the ***final*** act in a series of misconduct accrues an EFAA claim." *See* Opp. at 26 (citing *Olivieri* v. *Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74 (2d Cir. 2024)). But *Olivieri* involved allegations of longstanding workplace sexual harassment both preceding and post-dating the EFAA's enactment. *Olivieri*, 112 F.4th at 78. Here, Grant does not allege a hostile work environment or similar cause of action. *See Montanus* v. *Columbia Mgmt. Inv. Advisers, LLC*, 2025 WL 2503326, at *5 (S.D.N.Y. Sept. 2, 2025) (the continuing violation doctrine "is heavily disfavored in the Second Circuit" (citation omitted)). The only allegations post-dating March 3, 2022 involve two text message exchanges with a third party, wrestler Brock Lesnar. *See* Counter-SMF § II, ¶ 21; *Montanus*, 2025 WL 2503326, at *6 (the continuing violation doctrine "does not permit a litigant

## IV.    GRANT'S CLAIMS ARE IN SCOPE OF THE ARBITRATION PROVISION

If the Court addresses arbitrability, it should determine that Grant's claims fall squarely within the scope of the agreement to arbitrate.  Grant does not seriously dispute that her claims fall within the scope of the arbitration provision, but instead seeks to avoid arbitration by pointing to the small portion of her allegations post-dating the Agreement.  The core nucleus and vast majority of the alleged conduct occurred before the Agreement was executed.  The handful of post-Agreement allegations—spanning five paragraphs of the 396-paragraph Amended Complaint (¶¶ 266–70), *see* Counter-SMF § II, ¶ 19—do not give rise to any independent claim against WWE.  But even if the Court were to assume that the post-Agreement allegations should be treated as part of a single course of conduct, those alleged events stem from Grant's relationship with McMahon and employment at WWE, and are inextricably intertwined with the pre-Agreement conduct and factual predicates covered by the Agreement.

To the extent the Court declines to refer particular claims or allegations to arbitration, their litigation should be stayed pending resolution of the arbitration because they are so intertwined with the pre-Agreement allegations that it would be impractical and inefficient—including due to the potential for inconsistent rulings—to litigate them separately.  *See* Mot. 17–18.

## CONCLUSION

For the foregoing reasons and those set forth in WWE's Motion, the Court should compel this action to arbitration.

---

to pursue claims based on conduct predating the EFAA by citing later dissimilar acts"); *Hoffmann* v. *Mary Giuliani Catering & Events, Inc.*, 2025 WL 1616859, at *2–3 (S.D.N.Y. June 6, 2025) (same).

Dated: May 13, 2026

Respectfully submitted,

By: */s/ Daniel J. Toal*

**MORGAN LEWIS & BOCKIUS LLP**

Christopher M. Wasil (ct28578)
One State Street
Hartford, CT 06103-3178
Phone: (860) 240-2700
Fax: (860) 240-2701
Email: christopher.wasil@morganlewis.com

David A. McManus
One Federal Street
Boston, MA 02110-1726
Phone: (617) 341-7700
Fax: (617) 341-7701
Email: david.mcmanus@morganlewis.com

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**

Daniel J. Toal (phv10907)
Liza M. Velazquez (phv02132)
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
Email: dtoal@paulweiss.com
        lvelazquez@paulweiss.com

Mitchell D. Webber (phv207889)
2001 K Street, NW
Washington, DC 20006-1047
Phone: (202) 223-7442
Fax: (202) 379-4162
Email: mwebber@paulweiss.com

*Attorneys for Defendant World Wrestling
Entertainment, LLC*

11

## CERTIFICATE OF SERVICE

I certify that, on May 13, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*/s/ Daniel J. Toal*

Daniel J. Toal