**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

JANEL GRANT,

                    Plaintiff,

          v.

WORLD WRESTLING ENTERTAINMENT, INC.
n/k/a WORLD WRESTLING ENTERTAINMENT,
LLC; VINCENT K. MCMAHON; and JOHN
LAURINAITIS,

                    Defendants.

Civil Action No.: 3:24-cv-00090 (SFR)

May 13, 2026

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, LLC'S RESPONSE TO
PLAINTIFF'S LOCAL 56(a)(2) STATEMENT OF MATERIAL FACTS IN
OPPOSITION TO DEFENDANT WWE'S MOTION TO COMPEL ARBITRATION**

Defendant World Wrestling Entertainment, LLC ("WWE") respectfully submits this
Response to Plaintiff's Local [Rule] 56(a)(2) Statement of Material Facts in Opposition to
Defendant WWE's Motion to Compel Arbitration ("Plaintiff's Counter-Statement"), ECF No.
138-2.  Neither Local Rule 56 nor its federal counterpart clearly require a party to respond to a
statement of additional facts submitted in opposition to a motion for summary judgment—or, in
this case, a motion to compel arbitration—and WWE does not concede that it must.  Nevertheless,
out of an abundance of caution, WWE hereby provides the following response to the Additional
Material Facts set forth in Plaintiff's Counter-Statement, ECF No. 138-2, at 12–21.

The numbered paragraphs below contain Plaintiff's statements of purported Additional
Material Facts set forth in Plaintiff's Counter-Statement.  WWE's response follows immediately
after each paragraph from Plaintiff's Counter-Statement.

WWE objects to any use of the responses herein other than in the context of, and for the purposes of, Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Compel Arbitration ("Plaintiff's Opposition"), ECF No. 138, to which WWE responds. In particular, any response not disputing particular statements or allegations is solely for purposes of Plaintiff's Opposition, and WWE may dispute those facts in other contexts or for other purposes. *See* L.R. 56(a)(2)(i) ("All admissions and denials shall be binding solely for purposes of the motion unless otherwise specified.").

\*    \*    \*

**Plaintiff's Paragraph 1:**  *In early January 2022, McMahon abruptly distanced himself from Ms. Grant, saying that he could not speak to or be in the same room as her. Am. Compl. ¶ 237. Then on January 9, 2022, McMahon agreed to speak with Ms. Grant at his condo and told Ms. Grant that his wife, Linda McMahon, had learned about his relationship with Ms. Grant, that he was losing his condo, and that she would divorce him. Am. Compl. ¶ 238; Grant Decl. ¶ 92. He stressed that a public divorce would make Ms. Grant a headline. Am. Compl. ¶ 238; Grant Decl. ¶ 93.*

**WWE's Response to Paragraph 1:**  Because the parties have not undertaken discovery regarding the events alleged in Plaintiff's First Amended Complaint (the "Amended Complaint"), ECF No. 117, or in the Declaration of Janel Grant in Support of Plaintiff's Opposition to Defendants' Motions to Compel Arbitration (the "Grant Declaration"), ECF No. 138-3, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 1. The claims in Plaintiff's Paragraph 1 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

2

***Plaintiff's Paragraph 2:*** *McMahon instructed Ms. Grant that she should not go back to the office and immediately lessen her involvement on open work items. Am. Compl. ¶ 240. Ms. Grant expressed concerns about both her name being mentioned in the media and the loss of control over her image, especially as McMahon had shared content of her for close to two years, and the ramifications for her career. Am. Compl. ¶ 240; Grant Decl. ¶ 93. McMahon suggested that he would attempt to help keep Ms. Grant's reputation intact, and that he or Nick Khan would personally help Ms. Grant to find another job. Am. Compl. ¶ 240; Grant Decl. ¶ 96. McMahon instructed Ms. Grant not to share this news with anyone, and suggested she offer health-related excuses if asked about leaving WWE. Am. Compl. ¶ 241; Grant Decl. ¶ 96.*

**WWE's Response to Paragraph 2:** Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 2. The claims in Plaintiff's Paragraph 2 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

***Plaintiff's Paragraph 3:*** *Regarding the NDA, Ms. Grant asked McMahon, "Is this when Jerry sends the papers?" Am. Compl. ¶ 242. McMahon nodded and assured Ms. Grant that they would be "in the driver's seat" to iron out terms together but she would need an attorney to make things official and approved of Ms. Grant asking Dr. Colker for an attorney referral. Am. Compl. ¶ 242. Following this discussion, McMahon led Ms. Grant to his bedroom for another sexual encounter. Am. Compl. ¶ 243.*

**WWE's Response to Paragraph 3:** Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 3. The claims in Plaintiff's Paragraph 3

are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 4:  On January 14, 2022, McMahon sent Ms. Grant a to-do list for purposes of effectuating the NDA, such as resigning from WWE and retaining counsel.  Am. Compl. ¶ 244; Grant Decl. ¶ 105.  McMahon suggested the list had been drafted by Brad Blum. Id.*

**WWE's Response to Paragraph 4:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 4.  The claims in Plaintiff's Paragraph 4 are immaterial to WWE's Motion to Compel Arbitration except to the extent that they relate to Grant's representation by counsel in connection with the negotiation and execution of the non-disclosure agreement Grant signed with Vincent K. McMahon (who signed on behalf of himself and WWE) (the "Agreement"), ECF No. 117, Ex. A.

*Plaintiff's Paragraph 5:  McMahon directed a single attorney, his personal attorney Jerry McDevitt, to negotiate the NDA on behalf of WWE and McMahon—both parties to the agreement. Am. Compl. ¶ 303.  Before Ms. Grant retained counsel, McMahon called Ms. Grant with an update and informed her that McMahon's attorney and counsel for WWE insisted on installment payments due to "cash flow purposes."  Am. Compl. ¶ 246; Grant Decl. ¶ 104.  When Ms. Grant responded that this reasoning did not make sense for a billionaire, McMahon insisted that it was not his idea. Am. Compl. ¶ 246.*

**WWE's Response to Paragraph 5:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 5.  The claims in

4

Plaintiff's Paragraph 5 are immaterial to WWE's Motion to Compel Arbitration except to the extent that they relate to Grant's representation by counsel in connection with the negotiation and execution of the Agreement and Grant's understanding and negotiation of the terms in the Agreement.

**Plaintiff's Paragraph 6:** *Throughout the entire NDA process, Defendant McMahon continued to send Ms. Grant sexually charged text messages and encouraged her to participate in sexual acts and produce explicit content. Am. Compl. ¶¶ 243, 248. On January 24, 2022, McMahon encouraged Ms. Grant to send an explicit photo to Brock Lesnar. Am. Compl. ¶ 248; Grant Decl. ¶ 113. McMahon also demanded that Ms. Grant send him the content she sent to Lesnar. Grant Decl. ¶ 98. At this same time, McMahon finalized a booking for Lesnar to perform in a live event at Madison Square Garden, during which it was expected that Ms. Grant and Lesnar would engage in a sexual encounter. Am. Compl. ¶ 248; Grant Decl. ¶ 113.*

**WWE's Response to Paragraph 6:** Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 6. The claims in Plaintiff's Paragraph 6 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

**Plaintiff's Paragraph 7:** *The NDA was under discussion for 19 days. Am. Compl. ¶¶ 237–257. Ms. Grant did not have legal representation for the initial eleven days of the "negotiation." Am. Compl. ¶ 249. Ms. Grant had legal representation for only eight days before the Agreement was executed. Id. During the eight days that he represented her, Ms. Grant's attorney expressed apprehension about moving forward so quickly with the NDA. Grant Decl. ¶ 129. Ms. Grant requested to McMahon that the NDA should reference people who knew about their relationship,*

5

*including, but not limited to: Nick Khan, Brad Blum, John Laurinaitis, and McMahon's personal assistants.  Am. Compl. ¶ 249.  Ms. Grant and her attorney sought to incorporate the list of individuals who had knowledge of the relationship into a Schedule A in the NDA, which included the five people Ms. Grant would continue to interact with after her employment at WWE ended. Id.  Ms. Grant's requested revisions were flatly rejected by McMahon and WWE, who reverted to their original draft rather than incorporate any of her proposed changes—with the exception that, as of the date of execution, Ms. Grant would not speak of the relationship.  Id.*

**WWE's Response to Paragraph 7:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 7.  The claims in Plaintiff's Paragraph 7 are immaterial to WWE's Motion to Compel Arbitration except to the extent that they relate to Grant's representation by counsel in connection with the negotiation and execution of the Agreement and Grant's understanding and negotiation of the terms in the Agreement.

***Plaintiff's Paragraph 8:***  *On or around January 26, 2022, McMahon articulated an even more pressing need to get the NDA signed immediately, informing Ms. Grant that he was under a tight deadline to report pending or threatened legal actions to the WWE Board of Directors— specifically the Audit Committee—and that McMahon and his attorney could not do so unless Ms. Grant signed the NDA.  Am. Compl. ¶ 250; Grant Decl. ¶ 119.  He informed Ms. Grant that Board members were concerned about the delay.  Id.*

**WWE's Response to Paragraph 8:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 8.  The claims in

Plaintiff's Paragraph 8 are immaterial to WWE's Motion to Compel Arbitration except to the extent that they relate to Grant's understanding and negotiation of the terms in the Agreement.

*Plaintiff's Paragraph 9: Furthermore, McMahon repeatedly pressed Ms. Grant to stop her attorney from any further "wordsmithing" and blamed Ms. Grant's attorney for not understanding the urgency of the situation. Am. Compl. ¶ 251; Grant Decl. ¶ 117. Also, despite his previous approval, McMahon now expressed that both he and his attorney had concerns about Ms. Grant's attorney and warned her that her counsel could not be trusted, which in turn caused Ms. Grant to question her trust in her attorney. Id.*

**WWE's Response to Paragraph 9:** Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 9. The claims in Plaintiff's Paragraph 9 are immaterial to WWE's Motion to Compel Arbitration except to the extent that they relate to Grant's representation by counsel in connection with the negotiation and execution of the Agreement and Grant's understanding and negotiation of the terms in the Agreement.

*Plaintiff's Paragraph 10: On or around January 26, 2022, Ms. Grant became so overwhelmed that she asked to simply resign without the need for a payment, even offering to sign a napkin or Post-It as a sign of goodwill. Am. Compl. ¶ 252; Grant Decl. ¶ 117. McMahon flatly rejected her desire to back out. Id.*

**WWE's Response to Paragraph 10:** Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 10. The claims in

Plaintiff's Paragraph 10 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

**Plaintiff's Paragraph 11:**  *On January 27, 2022, eight days after Ms. Grant had hired an attorney, McMahon left Ms. Grant a lengthy audio message explaining why they needed to go through with the NDA, pushing her to hurry up and sign the NDA, and advising that he would be "double fucked" if she did not.  Am. Compl. ¶ 253; Grant Decl. ¶ 119.  McMahon again rejected Ms. Grant's desire to back out of the agreement, acknowledging the extreme repercussions that he and WWE would face if she did not sign the NDA.  Id.*

**WWE's Response to Paragraph 11:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 11.  The claims in Plaintiff's Paragraph 11 are immaterial to WWE's Motion to Compel Arbitration except to the extent that they relate to Grant's representation by counsel in connection with the negotiation and execution of the Agreement.

**Plaintiff's Paragraph 12:**  *McMahon's attorney who negotiated the NDA—Jerry McDevitt—was also the person whom McMahon routinely and painstakingly referenced when telling Ms. Grant about the high-powered attorney he had on speed dial.  Am. Compl. ¶ 254. Namely, McMahon referred to Mr. McDevitt as someone who was "world class at making problems go away."  Am. Compl. ¶ 254; Grant Decl. ¶ 9.  All of this was known to Ms. Grant and being reinforced by McMahon throughout the NDA process, while Ms. Grant was being represented by an attorney she had never met in person and who McMahon viewed as merely a formality.  Am. Compl. ¶ 254; Grant Decl. ¶ 96.*

8

**WWE's Response to Paragraph 12:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 12.  The claims in Plaintiff's Paragraph 12 are immaterial to WWE's Motion to Compel Arbitration except to the extent that they relate to Grant's representation by counsel in connection with the negotiation and execution of the Agreement.

*Plaintiff's Paragraph 13:  Between January 27, 2022 and January 28, 2022, there were unresolved edits that led to panicked phone calls, including an attorney confidentiality clause and signatory line that Ms. Grant's counsel said he would never sign.  Am. Compl. ¶ 255.  Also, the deadline to sign the NDA was pushed up from January 31 to January 28, 2022.  Am. Compl. ¶ 255; Grant Decl. ¶ 120.*

**WWE's Response to Paragraph 13:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 13.  The claims in Plaintiff's Paragraph 13 are immaterial to WWE's Motion to Compel Arbitration except to the extent that they relate to Grant's representation by counsel in connection with the negotiation and execution of the Agreement and Grant's understanding and negotiation of the terms in the Agreement.

*Plaintiff's Paragraph 14:  McMahon continued pressuring Ms. Grant with calls, during which he pleaded, demanded, threatened, and begged her to sign the NDA and reminded her that by not signing, she would jeopardize him, the Company, and his family, and that she would surely become the subject of national headlines and ruin her reputation if she did not sign the NDA by the start of WWE's live programming schedule on January 28, 2022.  Am. Compl. ¶ 256; Grant*

9

*Decl. ¶ 126.  He reassured her that nothing would change between them, and she would emerge with her reputation intact if she would simply sign the NDA.  Id.*

**WWE's Response to Paragraph 14:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 14.  The claims in Plaintiff's Paragraph 14 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 15:  In a state of mental defeat from McMahon's threats, instilling a fear in her that if she did not sign, he would expose her intimate content publicly, as well as any narrative necessary—whether true or false—that could expose her to serious personal and financial harm, Ms. Grant succumbed to his unrelenting coercion and signed the NDA just before the deadline on January 28, 2022.  Am. Compl. ¶ 257; Grant Decl. ¶ 128.*

**WWE's Response to Paragraph 15:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 15.  The claims in Plaintiff's Paragraph 15 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 16:  Over the course of these several weeks from early January until January 28, 2022, the nature of Ms. Grant's mental state had changed substantially—she feared she would never be free from McMahon and WWE.  Am. Compl. ¶ 257.  In addition to the prolonged state of fear and anxiety that Ms. Grant had been living with since meeting McMahon, McMahon was now also adding this immense level of coercive control over everything involving the NDA process.  Am. Compl. ¶ 257; Expert Decl. ¶¶ 24, 48.  Ms. Grant expressed to Defendant*

*McMahon several times throughout the "negotiation" period that her mental and physical health were worsening as a result of the NDA process, and that she felt that she had no decision in signing the NDA.  Expert Decl. ¶¶ 38–39; Grant Decl. ¶¶ 63, 94, 99, 101–104, 107–109, 111, 113, 118, 120, 123.*

**WWE's Response to Paragraph 16:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint, the Grant Declaration, or the Expert Declaration of Dr. Chitra Raghavan (the "Raghavan Declaration"), ECF No. 138-4, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 16.  The claims in Plaintiff's Paragraph 16 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

***Plaintiff's Paragraph 17:***  *Ms. Grant was coerced and fraudulently induced to accept the arbitration provision.  Am. Compl. ¶ 260; Expert Decl. ¶¶ 24, 47–49.  Ms. Grant was told by her attorney that the terms of the agreement (e.g., the arbitration provision) could be undesirable as written, but given the perpetuated duress that had now been elevated by Ms. Grant's chronic abuser, McMahon, she was not able to make sound decisions regarding terms like the arbitration provision.  Id.*

**WWE's Response to Paragraph 17:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Raghavan Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 17.  The claims in Plaintiff's Paragraph 17 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

***Plaintiff's Paragraph 18:***  *On February 4, 2022, Ms. Grant was wired $1,000,000 as the first installment of the NDA.  On February 28, 2022, Ms. Grant was wired $10,000 to cover her*

*attorneys' fees incurred in connection with the NDA.  Am. Compl. ¶ 262.  Both wires were sent with originator described as "Vincent K. McMahon C/O WWF, Brad M. Blum," and originator address "1241 EAST MAIN STREET, STAMFORD, CONNECTICUT, 06902 UNITED STATES."  Id.*

**WWE's Response to Paragraph 18:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 18.

***Plaintiff's Paragraph 19:***  *After the NDA was signed, McMahon, wearing only a white robe, met Ms. Grant in his condo to review outstanding business items.  Am. Compl. ¶ 266; Grant Decl. ¶ 132.  As Ms. Grant was proceeding to the door to leave, McMahon grabbed her arm and commanded her to do "one last thing" and get "on your knees."  Id.  As Ms. Grant knelt on the hard floor, barely a few feet away from the front door, McMahon opened his robe and ordered her to "Eat him!"  Am. Compl. ¶ 267; Grant Decl. ¶ 132.  McMahon grabbed the back of Ms. Grant's head and slammed her face into his crotch several times until she gagged and pushed him away, telling him to stop and that she couldn't breathe.  Id.  McMahon responded that she wouldn't get away that easily and held her head as he forced himself back in her mouth until she had no air. Id.  Ms. Grant tried to push him away, but Defendant McMahon held her head firmly in place and loudly commanded her to "Look up!" followed by "Take it, bitch."  Id.  They momentarily made eye contact before McMahon's force caused Ms. Grant's body to convulse and retch with tears streaming down her face.  Id.  McMahon then released his hold and closed his robe as she stood up.  Id.  After leaving, Ms. Grant never saw McMahon again.  Am. Compl. ¶ 267.*

**WWE's Response to Paragraph 19:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does

not have information sufficient to evaluate the claims in Plaintiff's Paragraph 19.  The claims in Plaintiff's Paragraph 19 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 20:  On March 2, 2022, while Ms. Grant was away on a trip to Florida, McMahon called Ms. Grant to advise that they would not speak for a while and, if she needed anything, to contact Nick Khan or Brad Blum.  Am. Compl. ¶ 268; Grant Decl. ¶ 136. Over the course of an approximately half-hour call, McMahon lamented both his inability to focus on the upcoming WrestleMania and how his personal life had blown up over the past few weeks. Am. Compl. ¶ 268.  Towards the end of their conversation, McMahon and Ms. Grant agreed to resume contact after WrestleMania.  Am. Compl. ¶ 268; Grant Decl. ¶ 136.  He also instructed Ms. Grant to continue having sexual relations with other men, including Brock Lesnar, in the meantime.  Id.*

**WWE's Response to Paragraph 20:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 20.  The claims in Plaintiff's Paragraph 20 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 21:  On or around March 4, 2022, Lesnar messaged Ms. Grant that he was in New York and, in line with McMahon's orders, Ms. Grant texted Lesnar explicit pictures. Am. Compl. ¶ 269; Grant Decl. ¶ 137.  On March 27, 2022, Lesnar reached out to Ms. Grant again.  Am. Compl. ¶ 270.  Ms. Grant understood that these back-to-back advances were an indication of McMahon's continued control.  Id.*

**WWE's Response to Paragraph 21:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint or in the Grant Declaration, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 21.  The claims in Plaintiff's Paragraph 21 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

**Plaintiff's Paragraph 22:**  *In June and July 2022, stories were published regarding the matter of McMahon's multiple NDAs with various women associated with WWE and others.  Am. Compl. ¶ 273.*

**WWE's Response to Paragraph 22:**  Undisputed.  The claims in Plaintiff's Paragraph 22 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

**Plaintiff's Paragraph 23:**  *On June 13, 2022, Ms. Grant received an email to her personal account from an attorney at Simpson Thacher & Bartlett LLP seeking to talk to her about an investigation surrounding "[her] time at WWE, including matters relating to the January 2022 agreement between [her], Vince McMahon, and WWE."  Am. Compl. ¶ 274.*

**WWE's Response to Paragraph 23:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 23.  The claims in Plaintiff's Paragraph 23 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

**Plaintiff's Paragraph 24:**  *The qualitative scope of the investigation was confirmed and reiterated to Ms. Grant and her counsel on multiple occasions by WWE's General Counsel and Simpson Thacher & Bartlett LLP on behalf of the WWE Board of Directors' Special Committee,*

14

*as investigating, among other things, "Mr. McMahon's relationship with Ms. Grant and the circumstances surrounding the settlement between [Ms. Grant], the WWE, and Mr. McMahon." Am. Compl. ¶ 275.*

**WWE's Response to Paragraph 24:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 24.  The claims in Plaintiff's Paragraph 24 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 25:  Despite being told by her counsel that Ms. Grant was available and willing to participate in the investigation, including through the substantial provision of relevant documents, the Special Committee never interviewed her.  Am. Compl. ¶ 276.  In fact, Ms. Grant was actively preparing for the investigation with her attorney.  Id.  Instead, the Special Committee announced in November 2022 that the investigation had been completed.  Id.*

**WWE's Response to Paragraph 25:**  WWE does not dispute that Grant was not interviewed by the Special Committee and does not dispute that, in November 2022, WWE announced that the Special Committee investigation was complete.   Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint, WWE does not have information sufficient to evaluate the remaining claims in Plaintiff's Paragraph 25.  The claims in Plaintiff's Paragraph 25 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 26:  Ms. Grant did not receive another payment under her NDA in February of 2023.  Am. Compl. ¶ 277.*

15

**WWE's Response to Paragraph 26:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 26.  The claims in Plaintiff's Paragraph 26 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 27:  As a result of the power dynamics and the trauma endured by Ms. Grant for so many years by Defendants, Ms. Grant has continued to be in a depleted mental state even after entering into the NDA.  Am. Compl. ¶ 278.*

**WWE's Response to Paragraph 27:**  Because the parties have not undertaken discovery regarding the events alleged in the Amended Complaint, WWE does not have information sufficient to evaluate the claims in Plaintiff's Paragraph 27.  The claims in Plaintiff's Paragraph 27 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 28:    To accommodate the Department of Justice criminal investigation into Defendants and the forthcoming stay related to said investigation (ECF No. 68), Ms. Grant did not file an opposition to the then-pending Motions to Compel Arbitration by the June 4, 2024 deadline.  See ECF No. 49.*

**WWE's Response to Paragraph 28:**  WWE does not dispute that Grant did not file an opposition to Defendants' then-pending motions to compel arbitration by the June 4, 2024 deadline.  WWE does not have information sufficient to evaluate Plaintiff's claims concerning the reason Grant failed to file a timely opposition, and Plaintiff's claims regarding those aspects of Plaintiff's Paragraph 28 are not supported by the cited evidence.  The claims in Plaintiff's Paragraph 28 are immaterial to WWE's Motion to Compel Arbitration because they do not bear

on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 29:  On December 23, 2024, WWE filed its renewed Motion to Compel Arbitration.  ECF No. 86. (McMahon and Laurinaitis also filed renewed Motions to Compel Arbitration on December 23, 2024 and December 24, 2024, respectively.  ECF Nos. 85, 87.)  Because the Court had not yet filed an order lifting its June 11, 2024 stay, and because Ms. Grant intended to file an amended complaint, Ms. Grant filed a motion for status conference (ECF No. 88) and renewed motion for status conference (ECF No. 90) to gain clarity on the briefing schedule.  In response, the Court clarified that the stay entered on June 11, 2024 was no longer in effect and denied Defendants' motions to compel arbitration without prejudice to renewal following the Court's decision on Ms. Grant's forthcoming motion for leave to amend the complaint.  See ECF No. 93.*

**WWE's Response to Paragraph 29:**  WWE does not dispute that: (i) Defendants filed renewed motions to compel arbitration on December 23 and 24, 2024; (ii) Grant filed a motion for a status conference and a renewed motion for a status conference; and (iii) the Court denied Defendants' motions to compel arbitration without prejudice to renew the motions following the Court's decision on Grant's forthcoming motion for leave to amend the complaint.  WWE disputes that the Court's January 16, 2025 Order, ECF No. 93, "clarified" that the stay entered on June 11, 2024 was no longer in effect, when the duration and end-date of the stay was apparent from the Court's June 11, 2024 Order, ECF No. 68, which stated that "the Court STAYS this action to **December 11, 2024**" (emphasis in original).  WWE does not have information sufficient to evaluate Plaintiff's claims concerning the reason Grant filed a motion for a status conference and a renewed motion for a status conference, and Plaintiff's claims regarding those aspects of Plaintiff's Paragraph 29 are not supported by the cited evidence.  The claims in Plaintiff's

17

Paragraph 29 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 30: Plaintiff wrote to Defendants on December 16, 2024, to advise that Plaintiff was preparing to amend her complaint and proposed a joint briefing schedule. See ECF No. 88-1, Ex. A at 2. Counsel for Defendant McMahon, on behalf of all Defendants, asked for time to confer with their clients on December 16, waited a week, then responded by email on December 23, 2024, that "Defendants are filing their motions to compel arbitration." ECF No. 88-1, Ex. A at 1. Plaintiff then moved for a status conference on January 2, 2025 to request the Court's guidance on a schedule for submitting her Amended Complaint and any responsive motions. See ECF No. 88. On January 7, 2025, this case was reassigned to Judge Sarah F. Russell, a newly-appointed member of the District of Connecticut federal bench. See ECF No. 89. Plaintiff then moved for a renewed motion for status conference on January 13, 2025 (ECF No. 90), to again request guidance on a schedule for submitting her Amended Complaint and any responsive motions.*

**WWE's Response to Paragraph 30:** WWE does not dispute the exchange of emails and filing of motions referenced in Plaintiff's Paragraph 30, or that this matter was assigned to Judge Sarah F. Russell on January 7, 2025. The claims in Plaintiff's Paragraph 30 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

*Plaintiff's Paragraph 31: On May 7, 2025, the Court entered an order granting Ms. Grant's Motion for Leave to Amend the Complaint, ECF No. 115, and an order staying discovery and directing Defendants to refile, once again, their motions to compel arbitration on or before June 13, 2025, ECF No. 116. The Order also specified that upon reviewing Defendants'*

18

*motions to compel arbitration, Plaintiff may file a motion seeking leave to take motion-related discovery on or before June 23, 2025, after conferring with Defendants to determine whether the parties can resolve the discovery dispute without Court intervention.  ECF No. 116.*

       **WWE's Response to Paragraph 31:**  Undisputed.  The claims in Plaintiff's Paragraph 31 are immaterial to WWE's Motion to Compel Arbitration because they do not bear on the enforceability of Grant's agreement to arbitrate.

Dated: May 13, 2026               Respectfully submitted,

By: */s/ Daniel J. Toal*

**MORGAN LEWIS & BOCKIUS LLP**

Christopher M. Wasil (ct28578)
One State Street
Hartford, CT 06103-3178
Phone: (860) 240-2700
Fax: (860) 240-2701
Email: christopher.wasil@morganlewis.com

David A. McManus (*pro hac vice*)
One Federal Street
Boston, MA 02110-1726
Phone: (617) 341-7700
Fax: (617) 341-7701
Email: david.mcmanus@morganlewis.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Daniel J. Toal (phv10907)
Liza M. Velazquez (phv02132)
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
Email: dtoal@paulweiss.com
           lvelazquez@paulweiss.com

19

Mitchell D. Webber (phv207889)
2001 K Street, NW
Washington, DC 20006-1047
Phone: (202) 223-7442
Fax: (202) 379-4162
Email: mwebber@paulweiss.com

*Attorneys for Defendant World Wrestling
Entertainment, LLC*

20

## CERTIFICATE OF SERVICE

I certify that on May 13, 2026, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*/s/ Daniel J. Toal*

Daniel J. Toal

21