**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JANEL GRANT,<br><br>　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC.<br>n/k/a WORLD WRESTLING ENTERTAINMENT,<br>LLC; VINCENT K. MCMAHON; and JOHN<br>LAURINAITIS,<br><br>　　　　　　　　Defendants. | Civil Action No.: 3:24-cv-00090 (SFR)<br><br>May 13, 2026 |

**DEFENDANT WORLD WRESTLING ENTERTAINMENT, LLC'S**
**OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR**
<u>**LEAVE TO SERVE MOTION-RELATED DISCOVERY**</u>

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ........................................................................................................................ 6

I.      GRANT IS NOT ENTITLED TO DISCOVERY RELATED TO
        DEFENDANTS' MOTIONS TO COMPEL ARBITRATION ........................................ 7

        A.      Grant Has Failed to Provide Non-Conclusory Facts or Evidence Relating
                to the Alleged Invalidity of the Arbitration Provision ........................................... 8

        B.      The SEC Order and the Second Circuit Crime-Fraud Decision Are
                Irrelevant to Defendants' Motions to Compel Arbitration and Do Not
                Support Grant's Request for Motion-Related Discovery ..................................... 13

        C.      The Delaware Lawsuit Is Irrelevant to Defendants' Motions to Compel
                Arbitration and Does Not Support Grant's Request for Motion-Related
                Discovery ............................................................................................................ 14

II.     GRANT'S DISCOVERY REQUESTS EXCEED THE PROPER SCOPE OF
        "MOTION-RELATED" DISCOVERY AND WOULD CAUSE AN UNDUE
        BURDEN ON DEFENDANTS AND UNNECESSARY DISCOVERY
        DISPUTES FOR THE COURT ................................................................................... 16

        A.      Grant's "Motion-Related" Requests Are Not Remotely Tailored to the
                Issue in Defendants' Motions to Compel Arbitration, But Instead Attempt
                to Circumvent the Discovery Stay ........................................................................ 17

        B.      The Updated Requests, Which Implicate Significant Relevance and
                Privilege Concerns, Are Unduly Burdensome and Prejudicial and Would
                Lead to Extensive Discovery Disputes .................................................................. 19

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad* v. *Day*,
2021 U.S. Dist. LEXIS 32401 (S.D.N.Y. Feb. 22, 2021)..........................................................16

*Alvarez* v. *Experian Info. Sols., Inc.*,
2021 WL 2349370 (E.D.N.Y. June 7, 2021) .............................................................................17

*Barrows* v. *Brinker Rest. Corp.*,
36 F.4th 45 (2d Cir. 2022) ........................................................................................................12

*Billie* v. *Coverall North Am., Inc.*,
444 F. Supp. 3d 332 (D. Conn. 2020).......................................................................................11

*de Moura Castro by Hilario* v. *Loanpal, LLC*,
715 F. Supp. 3d 373 (D. Conn. 2024).......................................................................................17

*Doctor's Assocs., Inc.* v. *Kirksey*,
2018 WL 6061573 (D. Conn. Nov. 20, 2018) ..........................................................................11

*Filho* v. *OTG Mgmt., LLC*,
2022 WL 4567498 (S.D.N.Y. Sept. 29, 2022)..........................................................................12

*Flores* v. *Nat'l Football League*,
2022 WL 3098388 (S.D.N.Y. Aug. 4, 2022).........................................................7, 11, 15, 18

*Golightly* v. *Uber Techs., Inc.*,
2021 WL 3539146 (S.D.N.Y. Aug. 11, 2021)...........................................................................17

*Gonder* v. *Dollar Tree Stores, Inc.*,
144 F. Supp. 3d 522 (S.D.N.Y. 2015)........................................................................................12

*In re Grand Jury Subpoenas Dated September 13, 2023*,
128 F.4th 127 (2d Cir. 2025). ..............................................................................................13, 14

*Grimmett* v. *DMM Sols., Inc.*,
2024 WL 5090009 (S.D.N.Y. Dec. 11, 2024) .......................................................................8, 9

*Hudson* v. *Babilonia*,
2015 WL 1780879, at *2 (D. Conn. Apr. 20, 2015)..................................................................12

*Legacy Cap. 26, LLC* v. *Chaldean Enter., LLC*,
2023 WL 5530307 (S.D.N.Y. Aug. 28, 2023)......................................................................7, 17

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Merida Cap. Partners III LP* v. *Fernane*,
   2025 WL 2531041 (S.D.N.Y. Sept. 3, 2025)..............................................................11

*Moton* v. *Maplebear Inc.*,
   2016 WL 616343 (S.D.N.Y. Feb. 9, 2016)...............................................................8, 17

*Olsen* v. *Charter Commc'ns, Inc.*,
   2019 WL 3779190 (S.D.N.Y. Aug. 9, 2019)........................................................8, 14, 17

*Pingel* v. *General Elec. Co.*,
   2014 WL 7334588 (D. Conn. Dec. 19, 2014)............................................................10

*Vardanyan* v. *Close-Up Int'l, Inc.*,
   315 F. App'x 315 (2d Cir. 2009) ..............................................................................12

*Weiss* v. *Travex Corp.*,
   2002 WL 1543875 (S.D.N.Y. July 12, 2002) .........................................................8, 11

*In re World Wrestling Ent., Inc. Merger Litig.*,
   No. 2023-1166-JTL (Del. Ch. filed Nov. 17, 2023) ................................................6, 15

Defendant World Wrestling Entertainment, LLC ("WWE") respectfully submits this memorandum of law in opposition to Plaintiff Janel Grant's Renewed Motion for Leave to Serve Motion-Related Discovery (the "Renewed Discovery Motion" or "Renew. Disc. Mot."), ECF Nos. 139, 140.

## PRELIMINARY STATEMENT

Grant is still not entitled to motion-related discovery. Despite receiving a second bite at the apple, she has once again failed to allege sufficient facts calling into question the validity of the arbitration provision in the Confidential Settlement Agreement, General Release and Covenant Not to Sue between Grant, Vincent K. McMahon, and WWE (the "Agreement"), ECF No. 117, at 95, Ex. A. Almost twenty-eight months from the filing of Grant's Complaint, she has yet to make a single factual allegation suggesting that the Agreement's arbitration provision is not a valid and enforceable agreement to resolve any allegations by means of alternative dispute resolution.

As set forth in WWE's opposition, ECF No. 128, to Grant's initial Motion for Leave to Serve Motion-Related Discovery (the "First Discovery Motion" or "First Disc. Mot."), ECF No. 126, there is a clear and demanding standard in this Circuit to obtain jurisdictional discovery in connection with motions to compel arbitration. This Court recognized that Grant did not meet that standard in her First Discovery Motion, while providing Grant the opportunity to renew her motion. *See* ECF No. 130. But Grant's Renewed Discovery Motion is almost a complete retread of her initial motion. Between Grant's First Discovery Motion and this one, there has been no change in circumstances and no change in the law, and Grant has failed to come forward with any new and relevant facts that would warrant a different outcome. As with her initial motion, Grant comes nowhere close to meeting the standard for discovery at this stage.

1

Nor has Grant submitted a legitimate proposal for motion-related discovery.  Despite her prior representation to the Court that she would seek only "targeted discovery into the formation of" the Agreement "to help resolve disputed issues of fact at the heart of Defendants' jurisdictional arguments," ECF No. 113, at 8, the discovery requests that Grant asks the Court to authorize (each, a "Request" and, together, the "Updated Requests"), ECF No. 139-3, are neither targeted nor limited to the formation of the Agreement.  They are full, broad-based merits discovery requests, covering almost a seven-and-a-half-year time period.  They seek documents potentially relevant to *all* substantive aspects and issues in the case, plus many that are plainly *not* relevant to Grant's claims at all—let alone relevant to the validity of the arbitration agreement.

Given a second chance to propose motion-related discovery, Grant has not opted for a more targeted and reasonable approach than the one rejected by the Court three months ago.  Rather, Grant's Renewed Discovery Motion *expands* the scope of her discovery requests.  *Compare* ECF No. 126-3, *with* ECF No. 139-3.  After staking out a maximalist position in her initial set of discovery requests, Grant now submits the exact same requests *plus* requests for documents from a separate and unrelated lawsuit against former WWE directors about an M&A transaction, including transcripts and video recordings of no fewer than nineteen depositions in that matter, and all materials used to prepare WWE's witnesses for those depositions.  *See* ECF No. 139-3, at 9–10.  Grant's Updated Requests are once again a transparent attempt to circumvent the Court's discovery stay and initiate full merits document discovery before the Court is able to decide Defendants' motions to compel arbitration.  *See* ECF No. 116 (granting WWE's motion to stay discovery).

Grant's Renewed Discovery Motion should be denied and, pursuant to WWE's Motion to Compel Arbitration, ECF No. 124, the Court should direct all of Grant's claims to arbitration.

2

**BACKGROUND**

Since January 25, 2024, when Grant filed the original Complaint, ECF No. 1, Defendants have thrice sought to compel arbitration. After WWE promptly filed its second motion to compel on December 23, 2024, *see* ECF No. 86,[1] following the conclusion of a six-month stay of this action, Grant twice moved for a status conference and, for the first time, indicated that she planned to amend her Complaint, *see* ECF Nos. 88, 90. On January 16, 2025, the Court denied Grant's motions but allowed her to move for leave to file an amended complaint addressing why she should be permitted to amend "despite the expiration of the deadline for filing amended pleadings." ECF No. 93. The Court also denied Defendants' renewed arbitration motions "without prejudice to renewal following the Court's decision on Plaintiff's motion for leave to amend the complaint." *Id.*

On March 28, 2025, while her Motion for Leave to Amend the Complaint was pending, *see* ECF No. 94, Grant unilaterally filed Plaintiff's portion of a Rule 26(f) Report, ECF No. 106. In it, she noted that she would seek discovery on eight broadly defined topics and proposed that all document, deposition, and expert discovery in the case be completed by December 1, 2025. *Id.* at 5–6. In response, WWE filed a Motion to Stay Discovery in light of Defendants' then-forthcoming renewal of their motions to compel, which, if granted, would obviate the need for merits discovery in this forum. *See* ECF Nos. 109, 110, 111. In her opposition brief, Grant walked back the demand in her Rule 26(f) Report that merits discovery be immediately commenced, and instead asserted that she would seek only "targeted discovery into the formation of the agreement after Defendants' renewed motions to compel arbitration [were] filed"—in particular, discovery

---

[1] On December 23, 2024 and December 24, 2024, respectively, Defendants Vincent K. McMahon and John Laurinaitis also filed their second motions to compel. ECF Nos. 85, 87. Laurinaitis was voluntarily dismissed from this action with prejudice on May 30, 2025. ECF No. 121.

3

related to her allegation that the Agreement was signed under "duress and coercion."  ECF No. 113, at 7–8.

On May 7, 2025, the Court granted WWE's Motion to Stay Discovery, ECF No. 116, and Grant's Motion for Leave to Amend the Complaint, ECF No. 115.[2]  The Court set a briefing schedule for Defendants' renewed motions to compel arbitration and, if the parties were unable to reach agreement, permitted Grant to "file a motion seeking leave to take motion-related discovery" by June 23, 2025.  ECF No. 116.  WWE filed its renewed Motion to Compel Arbitration on June 13, 2025.  ECF No. 124.[3]

On June 18, 2025, Grant sent a set of proposed discovery requests to Defendants (the "June 2025 Requests"), *see* ECF No. 126-3.  Despite Grant's representation in her opposition to WWE's Motion to Stay Discovery regarding the limited and targeted nature of the discovery she would seek, the June 2025 Requests to WWE called for documents responsive to 18 broad categories, the vast majority of which were entirely unrelated to the formation of the Agreement or WWE's Motion to Compel, let alone to the arbitration provision of the Agreement.  *See id.* at 7–9.[4]  For example, Grant's June 2025 Requests demanded:

- All materials for WWE Board of Directors meetings and all minutes of the Audit Committee of the Board of Directors (Requests 9 and 10);

- All documents between WWE and Endeavor—the principal shareholder of WWE's parent company—regarding "WWE's litigation liabilities" (Request 11);

---

[2] Grant filed her First Amended Complaint (the "Amended Complaint" or "Am. Compl.") that same day. ECF No. 117.

[3] Defendant McMahon also renewed his Motion to Compel Arbitration on June 13, 2025.  ECF No. 122.

[4] Grant's equally broad June 2025 Requests to McMahon included 20 categories and were in large part duplicative of her requests to WWE.  *See id.* at 19–21.

- All documents "produced . . . to government investigators" concerning Grant (Request 12); and

- With respect to an internal investigation regarding certain unrecorded expenses, documents "sufficient to show the scope and methodology of the Board's Internal Investigation," "sufficient to identify all person(s) interviewed in the course of the Board's Internal Investigation," and all documents "concerning the findings and recommendations of the Board's Internal Investigation" (Requests 16, 17, and 18).

*Id.* at 8–10.

Notwithstanding Grant's representation that she would seek "targeted discovery into the formation of the agreement," ECF No. 113, at 8—which, according to her Amended Complaint, occurred over the course of several weeks in January 2022, *see* Am. Compl. ¶¶ 237–57—Grant's June 2025 Requests contained relevant time periods, as of June 2025, of four years and three months (Request 11); six years and one month (Requests 9 and 10); and six years and five months (Requests 1–8 and 12–18).

The parties met and conferred on June 20, 2025 regarding the June 2025 Requests and did not reach agreement. Grant filed her First Discovery Motion on June 23, 2025. ECF No. 126. WWE filed an opposition on June 30, 2025. ECF No. 128.[5] On July 1, 2025, the Court stayed Grant's deadline to respond to WWE's Motion to Compel until "after resolving the motion for discovery." ECF No. 129. On February 6, 2026, the Court denied Grant's First Discovery Motion, finding that Grant had "not met her burden to show good cause for taking discovery before responding to Defendants' Motions to Compel Arbitration." ECF No. 130. The Court directed

---

[5] Defendant McMahon also filed an opposition on June 30, 2025. ECF No. 127.

Grant to file her response to Defendants' Motions to Compel and permitted her to renew her request for discovery in conjunction with that response. *Id.*

On April 1, 2026, Grant filed her Opposition to Defendants' Motions to Compel Arbitration (the "Opposition" or "Opp."), ECF No. 138, as well as her Renewed Discovery Motion, ECF No. 139. Accompanying her Renewed Discovery Motion, Grant included proposed Updated Requests for discovery directed to Defendants. ECF No. 139-3. The Updated Requests to WWE contain the same June 2025 Requests to WWE, along with three new requests related to *In re World Wrestling Ent., Inc. Merger Litig.*, No. 2023-1166-JTL (Del. Ch. filed Nov. 17, 2023) (the "Delaware Lawsuit"), a shareholder lawsuit challenging WWE's merger with a subsidiary of Endeavor Group Holdings, Inc. ("Endeavor"), that is currently pending in the Delaware Court of Chancery. The new requests call for the production of:

- All documents produced in response to discovery requests in the Delaware Lawsuit related to Grant and/or the Agreement (Request 19);

- All documents used to prepare for, produced during, and related to the fact witness depositions in the Delaware Lawsuit (Request 20); and

- All video or audio footage, written transcripts, and exhibits from *nineteen* depositions in the Delaware Lawsuit, as well as "any other depositions in the Delaware [Lawsuit] related to Ms. Grant and/or the NDA" (Request 21).

ECF No. 139-3, at 9–10.

## **ARGUMENT**

To obtain discovery related to a motion to compel arbitration, the party opposing arbitration must provide reliable evidence that she did not intend to be bound by the arbitration provision at issue. Grant has again failed to put forth any such facts in either her Renewed Discovery Motion

or in her Opposition to Defendants' Motions to Compel Arbitration. Moreover, even if she had satisfied this strict standard, Grant's Updated Requests are wholly improper—more so than even the June 2025 Requests. She seeks broad discovery that is unrelated to the Motions to Compel Arbitration and, in many cases, irrelevant even to her underlying claims and plainly privileged.

## I.   GRANT IS NOT ENTITLED TO DISCOVERY RELATED TO DEFENDANTS' MOTIONS TO COMPEL ARBITRATION

As the Court recognized in denying Grant's First Discovery Motion, "[c]ourts do not grant discovery requests related to a motion to compel arbitration as a matter of course." ECF No. 130 (quoting *Flores* v. *Nat'l Football League*, 2022 WL 3098388, at *1 (S.D.N.Y. Aug. 4, 2022)). Instead, "in the Second Circuit, discovery on a motion to compel arbitration is appropriate 'when the party opposing arbitration "comes forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound" by the arbitration agreement, even though on the face of the pleadings it appears that it did.'" *Flores*, 2022 WL 3098388, at *2 (quoting *Moton* v. *Maplebear Inc*., 2016 WL 616343, at *4 (S.D.N.Y. Feb. 9, 2016)); *see Legacy Cap. 26, LLC* v. *Chaldean Enter., LLC*, 2023 WL 5530307, at *1 (S.D.N.Y. Aug. 28, 2023). The party opposing arbitration and seeking discovery bears the burden of offering "facts or evidence to place the validity of the [a]greement to arbitrate in issue." *Flores*, 2022 WL 3098388, at *2 (quoting *Moton*, 2016 WL 616343, at *5); *see* ECF No. 130 (noting that Grant bears the "burden to show good cause for taking discovery" at this stage).

"Although the [c]ourt evaluates a motion to compel arbitration under a 'standard similar to that of a summary judgment action,' the standards for evaluating discovery requests in the context of a motion for summary judgment and a motion to compel arbitration are not similar." *Flores*, 2022 WL 3098388, at *1 (citation omitted). While discovery requests related to a motion for summary judgment are "almost always" granted, "given the strong federal policy favoring

7

arbitration as an alternative means of dispute resolution," a court should not permit discovery related to a motion to compel "as freely as it may when deciding a motion for summary judgment" or "as a matter of course." *Id.* (quotations and citation omitted).

Despite being given another opportunity to do so, Grant has failed to present any allegations, let alone "reliable evidence," that she did not intend to be bound by the arbitration provision or that the agreement to arbitrate was induced by fraud, duress, or coercion. As a result, the Court should deny the Renewed Discovery Motion.

### A.    Grant Has Failed to Provide Non-Conclusory Facts or Evidence Relating to the Alleged Invalidity of the Arbitration Provision

Grant is still not entitled to the discovery she seeks because neither her Amended Complaint, Renewed Discovery Motion, nor her Opposition to Defendants' Motions to Compel offers any facts or evidence—let alone "reliable evidence"—to support her contention that the arbitration provision in the Agreement was "induced by fraud, duress, and coercion." Renew. Disc. Mot. at 7.

Courts deny requests for discovery where the party resisting arbitration fails to "allege sufficient facts to show that their agreement to [the] *arbitration clause* was fraudulently induced." *Olsen* v. *Charter Commc'ns, Inc.*, 2019 WL 3779190, at *6 n.7 (S.D.N.Y. Aug. 9, 2019) (emphasis added) (denying request for limited discovery on claim that agreement was induced by fraud); *see, e.g.*, *Moton*, 2016 WL 616343, at *5 (denying discovery where plaintiff failed to offer facts or evidence showing that arbitration agreement was invalid); *Weiss* v. *Travex Corp.*, 2002 WL 1543875, at *3 (S.D.N.Y. July 12, 2002) (denying request for "limited discovery on the issue of fraudulent inducement" where plaintiff failed to "demonstrate the required 'substantial relationship' between the purported fraudulent conduct and plaintiff's assent to the *arbitration clause* in particular" (emphasis added)); *Grimmett* v. *DMM Sols., Inc.*, 2024 WL 5090009, at *2

(S.D.N.Y. Dec. 11, 2024).  Caselaw in this Circuit is clear that, without sufficient allegations grounded in reliable facts or evidence challenging the arbitration provision in particular—as opposed to the agreement containing the arbitration provision as a whole—no discovery is warranted in connection with a motion to compel arbitration.  Grant has failed to put forth any such reliable evidence.

While the Amended Complaint includes allegations—albeit, conclusory allegations—of fraud and duress, it does not include *any* factual allegations directed to the arbitration provision as distinct from the Agreement as a whole.  Grant's assertion that the Amended Complaint includes allegations that Grant agreed to "the underlying arbitration clause[] under an extreme state of duress and coercion" is refuted by the Amended Complaint itself.  *See* Renew. Disc. Mot. at 7. The allegations in the Amended Complaint concerning the Agreement either: (i) relate to the validity of the Agreement as a whole or to the Agreement's confidentiality provision specifically, *see* Am. Compl., ¶¶ 308–16, 327–45; or (ii) consist of legal conclusions that the arbitration provision is also invalid without any supporting factual allegations relating specifically to the arbitration provision itself, *id.* ¶¶ 260–61, 314, 344.

Grant's assertion in the Renewed Discovery Motion that she faced "immense pressure" to sign the Agreement likewise is not specifically related to the arbitration provision.  Renew. Disc. Mot. at 8.  *See Grimmett*, 2024 WL 5090009, at *3 (while granting targeted discovery on motion to compel, denying plaintiff's request for discovery on her theory that the arbitration provision was fraudulently induced because her allegations "relate to the contract as a whole, rather than to the arbitration agreement in particular").

And while Grant contends in her Opposition that the Agreement was executed in furtherance of crimes; that she lacked capacity to consent to, and was coerced to enter into, the

Agreement; and that the confidentiality provision of the Agreement is overbroad, she does not make any allegations that are directed to the arbitration clause in particular, or that go beyond her challenges to the Agreement as a whole.  *See, e.g.*, Opp. at 18 ("Because the NDA *and* its arbitration clause attempt to conceal illegal conduct . . . ." (emphasis added)); *id.* at 20 ("Because the NDA *and* its arbitration clause were entered into in furtherance of crimes . . . ." (emphasis added)); *id.* at 30 (alleging that "Grant lacked the capacity requisite for mutual assent and contract formation"); *id.* at 35 (asserting that "several provisions within the Agreement that give [the agreement to arbitrate] legal significance . . . are overly broad"); *id.* at 36 (arguing that "[n]umerous material provisions of the NDA are so unreasonably vague such that Ms. Grant could not have fully known what constitutes 'confidential'"); *id.* at 37–38 (asserting "gross overbreadth of the confidentiality provision" and release provision of the Agreement).  Grant effectively concedes that her challenges are to the Agreement as a whole, rather than specific to the arbitration provision, when she summarizes her claim as follows:

> McMahon's coercive tactics **specifically** included a shift to demanding that Ms. Grant accept the NDA quickly and without further change (*i.e.*, without revisions to unfavorable terms like the arbitration clause, which Ms. Grant does not even recall because of the state of duress).  Thus, it follows that McMahon engaged in coercive tactics **specific** to the arbitration provision, and it necessarily follows that duress attributable to those coercive tactics is, too, **specific** to the arbitration provision.

*Id.* at 34 (emphases in original).  In other words, Grant argues that her allegations concerning the enforceability of the Agreement as a whole necessarily concern all provisions within the Agreement, including the arbitration provision.  This is precisely the reasoning that the law prohibits.  *See Pingel* v. *General Elec. Co.*, 2014 WL 7334588, *6 (D. Conn. Dec. 19, 2014) (granting defendant's motion to compel arbitration because "Plaintiff is required to direct her challenge specifically at the delegation provision even where, as here, a specific challenge to the

10

delegation provision is implicit in her claim that the entire agreement to arbitrate is procedurally unconscionable"); *Doctor's Assocs., Inc.* v. *Kirksey*, 2018 WL 6061573, *5 (D. Conn. Nov. 20, 2018) ("Although [plaintiff's] argument that the entire arbitration agreement is invalid implicitly contains a challenge to the delegation clause, it is not sufficiently targeted to the delegation clause to avoid arbitration . . . .").

These allegations do not amount to "reliable evidence" that Grant "did not intend to be bound" by the arbitration provision and are insufficient to entitle Grant to motion-related discovery. *Flores*, 2022 WL 3098388, at *2; *see also Weiss*, 2002 WL 1543875, at *3 (explaining plaintiff's failure to "demonstrate the required 'substantial relationship' between the purported fraudulent conduct and plaintiff's assent to the arbitration clause in particular"); *Merida Cap. Partners III LP* v. *Fernane*, 2025 WL 2531041, at *4 (S.D.N.Y. Sept. 3, 2025) (holding that plaintiff failed to allege deception as to the arbitration agreement in particular, as opposed to the agreement as a whole, and that plaintiff's allegations that defendant had a "history of specifically weaponizing arbitration agreements" were inadequate).

Appended to the Opposition are declarations from Dr. Chitra Raghavan, ECF No. 138-4, and from Grant herself, ECF No. 138-3. Dr. Raghavan's declaration does not mention the arbitration provision at all. And the sole paragraph in Grant's Declaration that references the arbitration provision, paragraph 130, states in full:

> I have no memories of the arbitration clause. I do not remember discussing it with either Vince or my attorney. I do not recall reviewing it. I do not recall either McDevitt or my attorney making revisions to it. I was in an extreme state of distress, sleep deprivation, and fear throughout the entirety of the NDA period, including during the drafting of the arbitration provision. I do not recall agreeing to arbitrate.

ECF No. 138-3, at 31. This is insufficient to "place the validity of the [a]greement to arbitrate in issue." *See Flores*, 2022 WL 3098388, at *2; *Billie* v. *Coverall North Am., Inc.*, 444 F. Supp. 3d

332, 339 (D. Conn. 2020) (party opposing arbitration "may not rest on denial" to invalidate arbitration provision); *Gonder* v. *Dollar Tree Stores, Inc.*, 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) (merely claiming not to recall signing an agreement does not negate the validity of said agreement); *see also Vardanyan* v. *Close-Up Int'l, Inc.*, 315 F. App'x 315, 317–18 (2d Cir. 2009) (same); *Filho* v. *OTG Mgmt., LLC*, 2022 WL 4567498, at *3 (S.D.N.Y. Sept. 29, 2022) (granting motion to compel arbitration where plaintiffs declared that they did not remember signing or did not recognize their signatures on the arbitration agreement).

Not only has Grant failed to adduce any facts calling the validity of the arbitration provision itself into question, but she has, in fact, painted a picture in her Amended Complaint of an arms-length negotiation over the Agreement and its terms, including the arbitration provision.  Grant herself, who has a law degree, worked in a legal role at WWE.  Am. Compl., ¶¶ 86, 91.  She personally negotiated an increased payment of three times McMahon's original offer of $1,000,000 in consideration for her non-disclosure of their relationship.  Am. Compl., ¶ 245.  She independently retained counsel to help her negotiate the Agreement.  Am. Compl., ¶ 247.  And her counsel negotiated and "wordsmith[ed]" the terms of the Agreement, to McMahon's annoyance, and explained those terms to Grant.  Am. Compl., ¶¶ 249, 251, 255, 260.  Grant does not dispute the authenticity of the Agreement itself or her signature.  *See* Am. Compl., ¶ 257; ECF No. 130 ("Here, the Amended Complaint concedes that Plaintiff signed an agreement containing an arbitration clause." (citing *Hudson* v. *Babilonia*, 2015 WL 1780879, at *2 (D. Conn. Apr. 20, 2015) and noting that there, plaintiff was permitted "to take discovery because plaintiff's 'sworn affidavit suffices to raise genuine disputes of material fact as to whether an arbitration agreement between [the parties] was ever formed'")); *cf. Barrows* v. *Brinker Rest. Corp.*, 36 F.4th 45, 50–51 (2d Cir. 2022) (remanding where plaintiff "categorically denied" receiving or signing an

12

arbitration agreement, raising an issue as to "whether an arbitration agreement between [the parties] exists at all").  As explained in WWE's Motion to Compel Arbitration, the sole alleged fact in Grant's 93-page Amended Complaint that *does* relate to the arbitration provision itself is that Grant was specifically apprised of the arbitration provision by her counsel—which *undercuts* her claim that she was somehow tricked or unduly pressured into agreeing to that provision.  *See* Am. Compl., ¶ 260.

Grant has, accordingly, not met the standard for motion-related discovery.

**B.    The SEC Order and the Second Circuit Crime-Fraud Decision Are Irrelevant to Defendants' Motions to Compel Arbitration and Do Not Support Grant's Request for Motion-Related Discovery**

Once again, Grant attempts to rely on the January 10, 2025 SEC cease-and-desist order against McMahon[6] and the Second Circuit's February 7, 2025 crime-fraud decision[7] to support her renewed request for motion-related discovery, but still doesn't explain how either bears on "the legality and enforceability of the arbitration clause."  *See* Renew. Disc. Mot. at 9.  Nor could she.  Neither is relevant to the validity of the arbitration clause—or, for that matter, the validity of the Agreement itself.

The SEC Order does not in any way suggest or find that the Agreement is invalid, unenforceable, or unlawful, let alone speak to the arbitration provision of the Agreement.  Rather, the SEC Order fined McMahon for violating certain accounting and disclosure-related offenses.  SEC Order at 7–8.  Indeed, the SEC Order presupposes that the Agreement *is* enforceable and

---

[6] *See* Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21c of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order, *SEC* v. *McMahon*, Admin. Proc. File No. 3-22391 (Jan. 10, 2025) (the "SEC Order").

[7] *See In re Grand Jury Subpoenas Dated September 13, 2023*, 128 F.4th 127 (2d Cir. 2025) (the "Crime-Fraud Decision").  Although the Crime-Fraud Decision is anonymized, WWE assumes for purposes of this Opposition that it concerns communications between McMahon and his counsel.

13

therefore should have been disclosed to WWE's legal and accounting departments. *See* ECF No. 100, at 5–6.

Likewise, the Crime-Fraud Decision upholds the District Court's ruling that certain communications between McMahon and his counsel were subject to the crime-fraud exception because there was probable cause to believe they were in furtherance of a crime or fraud and were intended to facilitate or conceal criminal activity—namely, the circumvention of WWE's internal controls. *See In re Grand Jury Subpoenas*, 128 F.4th at 145. That alleged criminal activity, and the Second Circuit's ruling, have nothing whatsoever to do with the validity of the Agreement, let alone the arbitration provision in particular.

Grant points to the SEC Order and the Crime-Fraud Decision to try to shroud the Agreement in suspicion, but both documents are publicly available, neither concludes or in any way assumes that the Agreement itself is invalid or unenforceable, and both concern alleged efforts to avoid proper disclosure and accounting of the Agreement. Neither the SEC Order nor the Crime-Fraud Decision even mentions the word "arbitration." Grant's claim that her requested discovery regarding the SEC Order and the Crime-Fraud Decision "will speak to the legality and enforceability of the arbitration clause at dispute," Renew. Disc. Mot. at 9, is flatly refuted by the documents themselves, and she "cannot avoid arbitration with the unsubstantiated hope that discovery may turn up something," *see Olsen*, 2019 WL 3779190, at *6 n.7.

C.    **The Delaware Lawsuit Is Irrelevant to Defendants' Motions to Compel Arbitration and Does Not Support Grant's Request for Motion-Related Discovery**

In addition to the SEC Order and Crime-Fraud Decision, Grant now claims that discovery from the Delaware Lawsuit is also "highly relevant to [the] instant dispute." Renew. Disc. Mot. at 4. But she does not explain how the Delaware Lawsuit is highly relevant, nor could she credibly do so. The Delaware Lawsuit concerns claims against former WWE directors for alleged breaches

14

of fiduciary duty in connection with the 2023 merger of WWE and Endeavor.  Plaintiffs in the Delaware Lawsuit allege that, for McMahon's benefit and at the expense of WWE shareholders, McMahon and others intentionally undervalued WWE in connection with the sale of the Company, rushed the transaction, and ignored more favorable potential bids.  *See* Verified Class Action Compl., *In re World Wrestling Ent., Inc. Merger Litig.*, No. 2023-1166-JTL (Del. Ch. Mar. 12, 2026), Transaction I.D. 78712519, ¶ 7 (alleging that McMahon "conjured up a sham sales process designed to favor Endeavor and exclude other bidders seeking to axe McMahon"); *id.* ¶ 9 (alleging that WWE failed to inform potential bidders of Endeavor's earlier bid, creating "pretext[]" to accuse other bidders of showing "less enthusiasm and urgency"); *id.* ¶ 10 (alleging that, despite receiving additional offers, WWE failed to make counterproposals because those bidders would seek McMahon's ouster); *id.* ¶ 11 (alleging that McMahon and the WWE Board "negotiated exclusively with Endeavor"); *id.* ¶ 14 (alleging that "the Merger consideration did not reflect the fair value of the Company"); *id.* ¶ 15 (alleging that Defendants "breached their fiduciary duties by allowing McMahon to prioritize his own personal interests above those of WWE's former public stockholders to their financial detriment").   The case has nothing to do with the enforceability of the Agreement, let alone of the arbitration provision.

Even if Grant were correct that discovery has been exchanged in that case that is somehow related to the enforceability of the arbitration provision, the existence of such discovery in a separate matter still would not satisfy Grant's requirement to "come[] forth with reliable evidence that is more than a naked assertion . . . that [she] did not intend to be bound" by the arbitration agreement.  *See Flores*, 2022 WL 3098388, at *2 (citation omitted).  Grant has not offered any "facts or evidence to place the validity of the [a]greement to arbitrate in issue."  *See id.* (citation omitted).  Pointing to discovery in a different matter that *could* potentially be relevant—and to be

15

clear, discovery from the Delaware Lawsuit is not relevant—does not satisfy Grant's burden to come forward with her own evidence.

The Court should deny the Renewed Discovery Motion.

II.    **GRANT'S DISCOVERY REQUESTS EXCEED THE PROPER SCOPE OF "MOTION-RELATED" DISCOVERY AND WOULD CAUSE AN UNDUE BURDEN ON DEFENDANTS AND UNNECESSARY DISCOVERY DISPUTES FOR THE COURT**

Even assuming that Grant could provide "reliable evidence" challenging the enforceability of the arbitration provision, *see id.*, the Updated Requests—which are significantly broader than even the June 2025 Requests—are improper and the Court should deny Grant's motion on that independent basis. Because the Court's analysis in deciding a motion to compel arbitration is "generally limited to determining whether there is a valid agreement to arbitrate, whether one party has failed to perform its duties under that agreement, and whether the agreement, properly interpreted, encompasses the dispute at hand," motion-related discovery must also be limited to those issues. *See id.* Where the party opposing arbitration has met its burden to "come[] forth with reliable evidence that is more than a naked assertion . . . that it did not intend to be bound by the arbitration agreement," discovery should be limited to the alleged grounds for invalidating the agreement to arbitrate. *Id.* (internal quotation marks and citations omitted); *see also Ahmad* v. *Day*, 2021 U.S. Dist. LEXIS 32401, at *3–6 (S.D.N.Y. Feb. 22, 2021) (granting limited discovery into the metadata of an arbitration agreement in response to plaintiff's contention that his signature was falsified, and denying all other discovery requests). Grant's Updated Requests to WWE far exceed this limited scope.

16

**A.    Grant's "Motion-Related" Requests Are Not Remotely Tailored to the Issue in Defendants' Motions to Compel Arbitration, But Instead Attempt to Circumvent the Discovery Stay**

To the extent Grant is entitled to motion-related discovery at all, it must be tethered to motion-related issues. *Olsen*, 2019 WL 3779190, at *6 n.7. Grant's initial, June 2025 Requests did not even attempt to meet that standard. Her new, Updated Requests are even broader and more improper. Simply put, the discovery Grant again seeks is not relevant to the issue in Defendants' Motions to Compel Arbitration: the enforceability of the arbitration provision. Instead, it is a clear effort to obtain merits discovery in circumvention of the Court-ordered stay.

Grant still does not, and cannot, explain why evidence supporting her contention that she signed the Agreement "in an extreme state of duress and coercion" would be in the Defendants' possession, as opposed to her own. *See* Renew. Disc. Mot. at 5; *Moton*, 2016 WL 616343, at *5 (denying motion-related discovery and noting that "[a]ll information pertinent" would be within plaintiff's "possession, custody, and control and no one else's"). But even if she could, the cases Grant again cites in her Renewed Discovery Motion make clear that any motion-related discovery must be "limited" to the "restricted inquiry" of the right to arbitrate. *See Golightly* v. *Uber Techs., Inc.*, 2021 WL 3539146, at *3–4 (S.D.N.Y. Aug. 11, 2021) (permitting motion-related discovery where "the breadth of the discovery sought [was] narrow," "the time period for the requests [was] limited," and "[p]laintiff [did] not ask for all documents"); *de Moura Castro by Hilario* v. *Loanpal, LLC*, 715 F. Supp. 3d 373, 401 n.22 (D. Conn. 2024) (permitting the parties to "move the [c]ourt to allow discovery which [was] narrowly limited to the issue of whether valid arbitration contracts exist[ed]"); *Legacy*, 2023 WL 5530307, at *1 (permitting "limited discovery on whether the arbitration clause was induced by fraud"); *Alvarez* v. *Experian Info. Sols., Inc.*, 2021 WL 2349370, at *2 (E.D.N.Y. June 7, 2021) (allowing for only "arbitration-related discovery" while staying all other discovery).

Many of Grant's Requests are plainly irrelevant—for example, she again seeks "all" WWE "Board Materials" between January 1, 2019 and January 30, 2025, ECF No. 139-3, at 7, but does not (and cannot) articulate how materials from the WWE Board of Directors could possibly bear on the validity of the Agreement's arbitration provision. Grant's incremental requests are just as far afield. The enforceability of the Agreement, let alone the enforceability of the arbitration provision, is not at issue in the Delaware Lawsuit. And yet, without even attempting to articulate the potential relevance of any of the nineteen witnesses she identifies, she has demanded the recording and transcript from each of their depositions, along with "[a]ll documents used to prepare for, produced during, and related to" those depositions, including "notes used to prepare." ECF No. 139-3, at 9. Grant is simply fishing for anything she can think of that could potentially paint WWE in an unfavorable light, regardless of relevance to the Motion to Compel Arbitration.

Even the few Requests that facially touch on the Agreement are not relevant to the adjudication of the validity of the arbitration provision in particular, which will turn on whether the agreement to arbitrate itself, and not the Agreement as a whole, was induced by fraud or duress. *See* Am. Compl., ¶¶ 260–61, 314, 344. Grant seeks documents "sufficient to show the identity of each individual who participated in drafting and/or reviewing the NDA," "[a]ll communications . . . concerning terminating Ms. Grant's employment and/or the NDA," "[a]ll drafts of the NDA," and "[a]ll documents and communications generated by WWE's human resources personnel" related to "Ms. Grant's employment and separation from WWE and/or the NDA." ECF No. 139-3, at 8. None of these categories of documents is necessary to resolve Defendants' Motions to Compel Arbitration because they do not shed light on "the validity of the [a]greement to arbitrate," in particular. *See Flores*, 2022 WL 3098388, at *2. Indeed, not one of the twenty-one Updated Requests to WWE references the arbitration provision.

18

The Updated Requests are a far cry from Grant's representations to the Court that she seeks "directed," "[t]argeted," "aimed," and "narrowly tailored" discovery that speaks "directly to the legality, formation, and enforceability of the arbitration clause at issue." Renew. Disc. Mot. at 1, 3, 6, 7, 8, 10. Because the Updated Requests instead seek full-blown merits discovery in contravention of the stay, the Court should reject them. In the event that the Court does permit Grant to seek limited discovery in support of her opposition to Defendants' Motions to Compel Arbitration, WWE respectfully requests that WWE be allowed to obtain equivalent reciprocal discovery from Grant.

> **B.** **The Updated Requests, Which Implicate Significant Relevance and Privilege Concerns, Are Unduly Burdensome and Prejudicial and Would Lead to Extensive Discovery Disputes**

Grant's claim that Defendants "will suffer almost no burden from producing the documents Plaintiff seeks" is unsupported and inaccurate. *See id.* at 10. The Updated Requests would significantly delay adjudication of the pending Motions to Compel Arbitration. Collecting, reviewing, and producing documents in response to Grant's proposed Updated Requests would take many months to complete—the equivalent of a full merits document discovery period. And many of Grant's Updated Requests implicate significant relevance and privilege issues that will likely require motion practice to resolve, including the items seeking documents concerning: (i) WWE's response to "government investigators, including but not limited to the Department of Justice and/or Securities and Exchange Commission" (Requests 12–15); (ii) an internal investigation conducted by a Special Committee of WWE's Board of Directors (Requests 16–18); and (iii) discovery materials, including deposition transcripts and recordings, in the separate and unrelated Delaware Lawsuit, as well as all documents and notes used to prepare for depositions in that matter (Requests 19–21). ECF No. 139-3, at 8–10. Such litigation would unnecessarily burden the Court and further delay the transfer of this case to arbitration. And WWE would be

further prejudiced because litigation regarding the Updated Requests—which are directed to the merits of Grant's claims, rather than to their arbitrability—should occur before the arbitration panel, not this Court.

**CONCLUSION**

For the foregoing reasons, the Court should deny Grant's Renewed Motion for Leave to Serve Motion-Related Discovery.

Dated: May 13, 2026

Respectfully submitted,

By: */s/ Daniel J. Toal*

**MORGAN LEWIS & BOCKIUS LLP**

Christopher M. Wasil (ct28578)
One State Street
Hartford, CT 06103-3178
Phone: (860) 240-2700
Fax: (860) 240-2701
Email: christopher.wasil@morganlewis.com

David A. McManus (*pro hac vice*)
One Federal Street
Boston, MA 02110-1726
Phone: (617) 341-7700
Fax: (617) 341-7701
Email: david.mcmanus@morganlewis.com

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Daniel J. Toal (phv10907)
Liza M. Velazquez (phv02132)
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
Email: dtoal@paulweiss.com
         lvelazquez@paulweiss.com

Mitchell D. Webber (phv207889)
2001 K Street, NW
Washington, DC 20006-1047
Phone: (202) 223-7442
Fax: (202) 379-4162
Email: mwebber@paulweiss.com

*Attorneys for Defendant World Wrestling
Entertainment, LLC*

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 13, 2026, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Daniel J. Toal*

Daniel J. Toal