**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JANEL GRANT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:24-cv-00090-SFR |
| v. | ) | |
| | ) | |
| WORLD WRESTLING ENTERTAINMENT, INC., | ) | |
| a/k/a WORLD WRESTLING ENTERTAINMENT, | ) | |
| LLC; and VINCENT K. MCMAHON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT VINCENT K. McMAHON'S REPLY MEMORANDUM OF LAW**
**<u>IN SUPPORT OF HIS MOTION TO COMPEL ARBITRATION</u>**

<table>
<tr><td>

**McCARTER & ENGLISH, LLP**

James A. Budinetz (ct16068)
Snigdha Mamillapalli (ct31142)
McCarter & English, LLP
CityPlace I, 185 Asylum Street
Hartford, CT  06103
Telephone: (860) 275-6765
Facsimile: (860) 724-3397
jbudinetz@mccarter.com
smamillapalli@mccarter.com

</td><td>

**AKIN GUMP STRAUSS HAUER &**
**FELD LLP**

Jessica T. Rosenberg
  (admitted *pro hac vice*)
Ilana Roberts
  (admitted *pro hac vice*)
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
jrosenberg@akingump.com
iroberts@akingump.com

</td></tr>
</table>

*Attorneys for Defendant*
*Vincent K. McMahon*

**ORAL ARGUMENT SET: June 16, 2026**

**TABLE OF CONTENTS**

ARGUMENT .......................................................................................................................... 1

I.      Plaintiff Fails to Specifically Challenge the Arbitration Provision ..................................... 2

II.     Plaintiff's Superficial Attempt to Attack the Arbitration Provision Fails ......................... 6

III.    Plaintiff's Reliance on the EFAA and the Speak Out Act Is Misplaced ........................... 7

        A.    The EFAA Is Inapplicable......................................................................................... 7

        B.     The Speak Out Act Does Not Apply and Cannot Save the Opposition .................... 9

IV.     All Counts Are Arbitrable Regardless of Post-Agreement Allegations ........................... 11

V.      The Validly Executed Settlement Agreement Does Not Offend Public Policy................ 13

        A.    The SEC Order Does Not Void the Settlement Agreement ..................................... 13

        B.    The Anonymized Second Circuit Opinion Has No Bearing Here .......................... 14

VI.     Plaintiff Cannot Meet Her Burden for Any Motion-Related Discovery........................... 14

CONCLUSION..................................................................................................................... 14

## TABLE OF AUTHORITIES

CASES                                                                                                          PAGE(S)

*American Family Life Assurance Co. of N.Y. v. Baker*,
    778 F. App'x 24 (2d Cir. 2019) .......................................................................................10

*Aretakis v. First Fin. Equity Corp.*,
    744 F. App'x 741 (2d Cir. 2018) ......................................................................................2

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)........................................................................................................2, 3

*Castillo v. Altice USA, Inc.*,
    698 F. Supp. 3d 652 (S.D.N.Y. 2023).............................................................................8

*Chase Manhattan Mortg. Corp. v. Machado*,
    850 A.2d 260 (Conn. App. Ct. 2004)...............................................................................4

*Contemp. Mission, Inc. v. Bonded Mailings, Inc.*,
    671 F.2d 81 (2d Cir. 1982)...............................................................................................14

*D'Antuono v. Serv. Rd. Corp.*,
    789 F. Supp. 2d 308 (D. Conn. 2011)...............................................................................4

*de Moura Castro by Hilario v. Loanpal, LLC*,
    715 F. Supp. 3d 373 (D. Conn. 2024)...............................................................................4

*Doctor's Assocs., Inc. v. Alemayehu*,
    934 F.3d 245 (2d Cir. 2019)..............................................................................................4

*Edwards v. CVS Health Corp.*,
    714 F. Supp. 3d 239 (S.D.N.Y. 2024)..............................................................................8

*Falso v. Town of Dansville Police Dep't*,
    616 F. App'x 11 (2d Cir. 2015) ........................................................................................12

*Gengaro v. City of New Haven*,
    984 A.2d 1133 (Conn. App. Ct. 2009)..............................................................................3

*Gingras v. Think Fin., Inc.*,
    922 F.3d 112 (2d Cir. 2019)..............................................................................................10

*In re Grand Jury Subpoenas Dated September 13, 2023*,
    128 F.4th 127 (2d Cir. 2025) ...........................................................................................14

*Green v. XPO Last Mile, Inc.*,
    504 F. Supp. 3d 60 (D. Conn. 2020)................................................................................4

*Guyden v. Aetna, Inc.*,
544 F.3d 376 (2d Cir. 2008)..........................................................................................10

*Hanks v. Powder Ridge Rest. Corp.*,
885 A.2d 734 (Conn. 2005) .............................................................................................7

*Helenese v. Oracle Corp.*,
No. 09-cv-351, 2010 WL 670172 (D. Conn. Feb. 19, 2010).........................................4

*Indelicato v. Provident Life & Accident Ins. Co.*,
No. 89-cv-8436, 1990 WL 145149 (S.D.N.Y. Sept. 28, 1990) .....................................4

*Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. 145*
*v. Purity Food Co.*,
17 Conn. Supp. 12 (Conn. Super. Ct. 1950) ..................................................................5

*Jacobs v. Payward, Inc.*,
No. 25-cv-567, 2026 WL 866353 (D. Conn. Mar. 30, 2026) ........................................2

*Jenks v. Jenks*,
657 A.2d 1107 (Conn. 1995) ...........................................................................................4

*Khan v. Yale Univ.*,
85 F.4th 86 (2d Cir. 2023) ...............................................................................................9

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) (per curiam).....................................................................................13

*Laszczak v. Autozone, Inc.*,
No. 06-cv-1954, 2008 WL 11377711 (D. Conn. June 19, 2009) ...................................5

*May Dep't. Stores Co. v. First Hartford Corp.*,
435 F. Supp. 849 (D. Conn. 1977).................................................................................14

*Montanus v. Columbia Mgmt. Inv. Advisers, LLC*,
No. 25-cv-2798, 2025 WL 2503326 (S.D.N.Y. Sept. 2, 2025) ..................................8, 9

*Munn v. Hotchkiss Sch.*,
933 F. Supp. 2d 343 (D. Conn. 2013)..............................................................................7

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016).............................................................................................6

*Nielsen v. Van Leuven*,
No. 15-cv-1154, 2017 WL 3925412 (D. Conn. Sept. 7, 2017).....................................11

*Oldroyd v. Elmira Sav. Bank, FSB*,
134 F.3d 72 (2d Cir. 1998).............................................................................................12

iii

*Olivieri v. Stifel, Nicolaus & Co., Inc.*,
112 F.4th 74 (2d Cir. 2024) ...........................................................................................9

*Pingel v. Gen. Elec. Co.*,
No. 14-cv-00632, 2014 WL 7334588 (D. Conn. Dec. 19, 2014) .............................................6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967).........................................................................................................2

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010)...........................................................................................................2

*Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*,
263 F.3d 26 (2d Cir. 2001).............................................................................................3

*Squillante v. Capital Region Dev. Auth.*,
266 A.3d 940 (Conn. App. Ct. 2021).........................................................................11

*Stafford v. Int'l Business Machines Corp.*,
78 F.4th 62 (2d Cir. 2023) ...........................................................................................10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010).....................................................................................................11

*Venture Partners, Ltd. v. Synapse Techs., Inc.*,
679 A.2d 372 (Conn. App. Ct. 1996).........................................................................11

*Walters v. Starbucks Corp.*,
623 F. Supp. 3d 333 (S.D.N.Y. 2022)..........................................................................8

*Xeriant, Inc. v. Auctus Fund LLC*,
141 F.4th 405 (2d Cir. 2025) .......................................................................................13

*Young v. Data Switch Corp.*,
646 A.2d 852 (Conn. 1994) ............................................................................................3

**STATUTES**

9 U.S.C. § 401........................................................................................................................7

42 U.S.C. § 14902................................................................................................................10

42 U.S.C. § 19403................................................................................................................10

**OTHER AUTHORITIES**

168 Cong. Rec. H984 (statement of Rep. Nadler) (daily ed. Feb. 7, 2022)....................................8

168 Cong. Rec. H986 (statement of (statement of Rep. Griffith) (daily ed. Feb. 7, 2022) ..................................................................................................................8

Restatement (Second) of Contracts § 175(1) ...................................................................3

In his moving brief, ECF No. 122-1 (the "Motion" or "Mot."), McMahon firmly established that under the terms of the parties' agreement—and Supreme Court precedent—the Court should compel arbitration. Nothing in Plaintiff's opposition, ECF No. 138 ("Opposition" or "Opp."), justifies a different result.

## ARGUMENT

Plaintiff's 138-paragraph declaration filed in support of the Opposition all but ignores the arbitration clause—addressing it in only one paragraph. ECF No. 138-3 ("Pl. Decl.") ¶ 130. The Opposition instead advances a two-and-a-half-year effort to disparage McMahon, while minimizing that Plaintiff accepted and retained $1,000,000 after executing the Settlement Agreement and agreeing to arbitrate. The Court should enforce that agreement rather than allow further misuse of this forum.

Under Supreme Court precedent, only a specific, discrete challenge to the arbitration clause itself can keep a court from compelling arbitration; otherwise, the validity challenge is for the arbitrator. Plaintiff's broad attack on the Settlement Agreement as a whole is thus improper.[1] Her alleged defenses of illegality, coercion, and unconscionability do not relate specifically to the arbitration clause and do not change the simple, indisputable fact that Plaintiff executed an agreement to arbitrate that must be enforced.

Plaintiff's reliance on the EFAA and Speak Out Act as a basis to deny McMahon's Motion is misplaced. Neither law applies here. And neither the SEC Order nor the Second Circuit ruling addresses the enforceability of the parties' agreement to arbitrate. Finally, Plaintiff's attempt to circumvent arbitration by relying on post-settlement allegations is fundamentally flawed and unsupported by law. Plaintiff has not demonstrated any valid basis to deny McMahon's motion to

---

[1] Capitalized terms not defined herein have the same meanings as ascribed in the Motion.

1

compel this matter to arbitration.

## I.      Plaintiff Fails to Specifically Challenge the Arbitration Provision

As set forth in the Motion, the Supreme Court has made clear—time and again—that a challenge to a contract as a whole does not bar enforcement of a specific arbitration agreement. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("[A] . . . challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.");[2] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[T]he statutory language [of the Federal Arbitration Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.").

Absent a challenge to the arbitration provision itself, courts in this Circuit thus routinely compel arbitration. *Compare Aretakis v. First Fin. Equity Corp.*, 744 F. App'x 741, 742 (2d Cir. 2018) ("Because [plaintiff] challenges the validity of the contract, and not the validity of the specific arbitration provision, the district court properly compelled arbitration.") *with Jacobs v. Payward, Inc.*, No. 25-cv-567, 2026 WL 866353, at *5-7 (D. Conn. Mar. 30, 2026) (analyzing invalidity and enforceability arguments targeting the arbitration clause, rather than the contract as a whole).

Because the Opposition attacks only the Settlement Agreement as a whole, this case must go to arbitration.  Plaintiff's attempt to avoid that conclusion by arguing that the Supreme Court's

---

[2] Plaintiff's appeal to the dissent in *Rent-A-Center* is misplaced.  *See* Opp. 35.  The dissent argued that where the agreement to arbitrate is a standalone contract, "any challenge to the contract itself is also, necessarily, a challenge to the arbitration agreement" because "[t]hey are one and the same."  *Rent-A-Center*, 561 U.S. at 85 (Stevens, J., dissenting).  Given that the arbitration provision here is within the Settlement Agreement, the dissent has no bearing on the analysis.

clear directive applies to only voidable—not void—contracts fails for two independent reasons. *See* Opp. 30-34.  First, it is foreclosed by Supreme Court precedent.  Plaintiff relies on *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26 (2d Cir. 2001), in which the Second Circuit sought to reconcile its precedent with the Supreme Court's reasoning in *Prima Paint* by opining that specific challenges to arbitration provisions are necessary only where the underlying contract is alleged to be voidable, but not where it is alleged to be void.  *Id*. at 30-32.  Five years later, the Supreme Court in *Buckeye Check Cashing* rejected that distinction, holding that the critical question is whether the party contesting arbitration has challenged "the arbitration clause itself," and not whether "the challenge at issue would render the contract voidable or void."  546 U.S. at 445, 448.  Thus, Plaintiff's arguments—including her erroneous claim that the agreement precludes cooperation with law enforcement, which is belied by her own public statements proclaiming that she cooperated with federal investigations into McMahon—are irrelevant to the question of arbitration.[3]  *See* Opp. 20.

Even if the Supreme Court had embraced the void/voidable distinction, Plaintiff's argument would still fail because duress renders a contract voidable, not void.[4]  *See Young*, 646 A.2d at 856 (describing contract allegedly entered under duress as "voidable"); *Gengaro v. City of New Haven*, 984 A.2d 1133, 1139 (Conn. App. Ct. 2009) (similar); *accord* Restatement (Second) of Contracts § 175(1) (noting duress by threat renders a contract voidable).  None of Plaintiff's

---

[3] *See* Plaintiff's Statement, *Capitol News Briefing with the CT Alliance to End Sexual Violence, State Legislators and Advocates on 2026 Legislative Priorities*, CT NETWORK (Feb. 19, 2026), https://ct-n.com/ctnplayer.asp?odID=25977.

[4] More generally and to be addressed in arbitration, Plaintiff is precluded from arguing that duress voids the contract because she accepted and retained $1,000,000 under the Settlement Agreement years before initiating this action. *Young v. Data Switch Corp.*, 646 A.2d 852, 856-57 (Conn. 1994) (noting that "if the party who executed the contract under duress accepts the benefits flowing from it or remains silent or acquiesces in the contract for any considerable length of time after opportunity is afforded to annul or avoid it," that party waives claims of duress or undue influence as a matter of law).

cited cases suggest otherwise.[5]

Incredibly, Plaintiff still tries to insist that no agreement to arbitrate was ever formed. Opp. 29-38. But this Court has already opined on that premise, explaining that "the Amended Complaint concedes that Plaintiff signed an agreement containing an arbitration clause" and that there is no dispute "as to whether an arbitration agreement between [the parties] was ever formed." ECF No. 130. Plaintiff's authorities addressing formation (as opposed to enforceability) are thus irrelevant. *See, e.g.*, *de Moura Castro by Hilario v. Loanpal, LLC*, 715 F. Supp. 3d 373, 393 (D. Conn. 2024) (analyzing formation of arbitration agreement where elderly homeowners never saw the contract on which their signatures were forged).[6] So too are Plaintiff's attempts to challenge provisions ***other than*** the arbitration clause. *See* Opp. 35-38 (arguing that "[n]umerous material provisions of the NDA" are "unreasonably vague" and citing Sections I, II, VIII, but not Section X, the arbitration provision). Plaintiff cannot mount a challenge to the arbitration clause by arguing that *other* elements of the agreement are overly broad or purportedly "conceal[] illegal conduct." *See* Opp. 35-38. The Opposition utterly fails to demonstrate why the Court should deny McMahon's Motion.

A new declaration from psychologist Dr. Raghavan does not change matters. The declaration purports to analyze Plaintiff's mental condition in negotiating the Settlement

---

[5] *See* Opp. 31, 33-34 (citing *Chase Manhattan Mortg. Corp. v. Machado*, 850 A.2d 260 (Conn. App. Ct. 2004) (lacking any discussion of void/voidable distinction); *Indelicato v. Provident Life & Accident Ins. Co.*, No. 89-cv-8436, 1990 WL 145149 (S.D.N.Y. Sept. 28, 1990) (analyzing New York law); *Jenks v. Jenks*, 657 A.2d 1107 (Conn. 1995) (implying that duress would render a stipulated judgment voidable)).

[6] *See also Helenese v. Oracle Corp.*, No. 09-cv-351, 2010 WL 670172, at *6 (D. Conn. Feb. 19, 2010) (holding that an employee handbook and online course could not create a binding contract to arbitrate because employment was governed by an offer letter which did not include an arbitration policy, and the only clear arbitration clause lived in a contract that had expired); *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 324-25 (D. Conn. 2011) (denying motion to compel arbitration as to plaintiff who never signed the lease containing the arbitration provision); *Green v. XPO Last Mile, Inc.*, 504 F. Supp. 3d 60, 68 (D. Conn. 2020) (denying motion to compel arbitration because plaintiffs had not signed the contract in their personal capacity, and were therefore not parties to the agreement); *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 252-54 (2d Cir. 2019) (analyzing whether there was consideration for the agreement to arbitrate itself).

Agreement as a whole—but critically, it fails to ever reference the specific agreement to arbitrate. ECF No. 138-4 ("Raghavan Decl."). Even if it were responsive to the arbitrability issue, the Court should refuse to consider this untested declaration. Plaintiff's counsel refused to permit McMahon to review the "approximately 81,000 texts, emails, videos, . . . photographs," and notes from the purported 30 hours of interviews that Dr. Raghavan considered in forming her opinion. *See* Raghavan Decl. ¶¶ 2-4; *Laszczak v. Autozone, Inc.*, No. 06-cv-1954, 2008 WL 11377711, at *2 (D. Conn. June 19, 2009) (holding that under FRCP 26(a)(2)(B)(ii), "all materials 'considered' by a testifying expert witness in forming her opinion are fully discoverable by the adverse party" (citations omitted)); *see also* Declaration of Jessica T. Rosenberg in Support of Vincent K. Mcmahon's Reply in Support of His Motion to Compel Arbitration ¶ 3 & Ex. A (Email correspondence, dated April 15, 2026 and April 20, 2026 between counsel for the parties).

Plaintiff's declaration fares no better. Indeed, just a single paragraph in her sprawling 138-paragraph declaration even mentions the arbitration clause and there it is only to allege that Plaintiff was in a state of distress "throughout the entirety of the NDA period, including during the drafting of the arbitration provision." Pl. Decl. ¶ 130. Even if true, this fails to single out the arbitration clause in any meaningful way.

In sum, Plaintiff's attempt to avoid arbitration by attacking the contract's validity fails. Courts have long recognized the tactic: "a disgruntled party may resort to any pretext to avoid or evade [her] promise to arbitrate." *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. 145 v. Purity Food Co.*, 17 Conn. Supp. 12, 14 (Conn. Super. Ct. 1950). But "[i]f a party to an arbitration agreement could block arbitration proceedings by simply announcing a claim of the invalidity of the contract, however unfounded such claim might be, . . . then arbitration contracts become almost wholly ineffective and meaningless." *Id.* The law neither permits nor

5

tolerates such a result—and this Court should not either.

## II.     Plaintiff's Superficial Attempt to Attack the Arbitration Provision Fails

Plaintiff's weak attempt to single out the arbitration provision—confined to 1.5 pages of her nearly 40-page Opposition—fails.  *See* Opp. 34-35.  She offers only the bare assertion that "McMahon engaged in coercive tactics specific to the arbitration provision."  *Id.* at 34.  But rhetoric cannot substitute for substance: labeling a claim "specific" does not make it so.  *See Pingel v. Gen. Elec. Co.*, No. 14-cv-00632, 2014 WL 7334588, at *5 (D. Conn. Dec. 19, 2014) (finding a similar argument merely repackaged a generalized challenge rejected under *Rent-A-Center*).

The limited "facts" Plaintiff does offer are unavailing: she claims "no memories of the arbitration clause" and that she "do[es] not remember discussing it with either Vince or [her] attorney."  Pl. Decl. ¶ 130.  Those purported facts directly contradict her Amended Complaint and Statement of Material Facts, each of which states that Plaintiff "was told by her attorney that terms of the agreement (*e.g.*, the arbitration provision) could be undesirable as written."  ECF No. 138-1 ("Pl. SOMF") ¶ 23; Am. Compl. ¶ 260.  Such contradictory facts cannot be credited, and in any case do not advance the argument that the arbitration provision is now unenforceable.  The Court should also decline to credit Plaintiff's Statement of Material Facts in its entirety.  Not only does it fail to meaningfully target the arbitration provision, but it also interjects irrelevant facts about the agreement as a whole seemingly to create a factual dispute where there is none.[7]  Pl. SOMF ¶ 23.

Finally, Plaintiff does not dispute—and therefore concedes—that the Settlement

---

[7] McMahon has not responded to those statements at this time but stands ready to do so should the Court require it. The Court should also ignore Plaintiff's assertion that, "the allegations in Ms. Grant's Amended Complaint must be assumed as true for purposes of Defendants' Motions to Compel Arbitration," Pl. SOMF at 1, which is incorrect as a matter of law.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229-30 (2d Cir. 2016) (stating that "[i]n deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment," not a motion to dismiss (citation omitted)).

6

Agreement's broad arbitration clause and explicit incorporation of AAA rules delegate not just her substantive claims to arbitration, but also the threshold question of arbitrability. *See* Mot. at 16-20. Instead, she offers a last-gasp attempt to void the clause altogether, this time relying on two inapposite cases addressing when negligence waivers are enforceable as exculpatory clauses. *See* Opp. 38 (citing *Hanks v. Powder Ridge Rest. Corp.*, 885 A.2d 734 (Conn. 2005) (addressing enforceability of a recreational snowtubing release against negligence claims, not arbitrability or delegation); *Munn v. Hotchkiss Sch.*, 933 F. Supp. 2d 343 (D. Conn. 2013) (addressing enforceability of a school trip release in a negligence action, not arbitrability or delegation). Plaintiff's cases are far afield, underscoring her concession that in their Settlement Agreement, the parties clearly and unmistakably delegated arbitrability to the arbitrator.

### III.   Plaintiff's Reliance on the EFAA and the Speak Out Act Is Misplaced

Plaintiff invokes two federal statutes, the EFAA and the Speak Out Act, to try to preclude arbitration. Neither statute applies.

#### A.   The EFAA Is Inapplicable

Plaintiff is wrong to argue that the arbitration clause contained in the Settlement Agreement ending the parties' relationship is a "predispute arbitration agreement" under the EFAA. 9 U.S.C. § 401(1). By its plain terms, the EFAA applies only to agreements covering disputes that had "not yet arisen" when the agreement was executed. *Id.* § 401(2). The arbitration provision at issue appears in a negotiated post-dispute "Settlement Agreement," executed at the culmination—not the outset—of the parties' relationship. The Settlement Agreement was drafted and entered with the assistance of counsel on both sides, provides substantial consideration to Plaintiff, effects

mutual releases of claims, and critically resolves known and existing issues.[8]

The Settlement Agreement is the antithesis of the precise conduct the EFAA was designed to address: a boilerplate arbitration clause "buried deep" in employment paperwork that an employee is "forced" to sign *before* any alleged misconduct has occurred or any dispute has arisen. 168 Cong. Rec. H984 (statement of Rep. Nadler) (daily ed. Feb. 7, 2022); *see also id.* H986 (statement of Rep. Griffith) (explaining that employers often "incorporate a handbook" that has "buried in it language that says all disputes must go to mandatory arbitration").

Even if the agreement were "predispute," the EFAA still would not apply because the Amended Complaint contains no qualifying sexual assault or harassment allegations that arose or accrued after the statute's March 3, 2022 effective date.  Plaintiff claims the EFAA bars arbitration because Defendants' alleged misconduct continued "after the EFAA went into effect."  Opp. 28. Yet neither the Opposition nor the Amended Complaint identifies a single act by any Defendant after that date.  Recognizing this fatal gap, Plaintiff attempts to import the Speak Out Act's more favorable timing standard, which turns on when "a claim is [] filed."  Opp. 26.  But Congress's deliberate choice to include different language in the two statutes defeats this argument: while Congress tied the Speak Out Act to when a claim is filed, it used explicitly non-retroactive language in the EFAA, barring coverage of claims that "arose or accrued before March 3, 2022." *Walters v. Starbucks Corp.*, 623 F. Supp. 3d 333, 337 (S.D.N.Y. 2022); *see also Castillo v. Altice USA, Inc.*, 698 F. Supp. 3d 652, 656-58 (S.D.N.Y. 2023) (same); *Edwards v. CVS Health Corp.*, 714 F. Supp. 3d 239, 242 (S.D.N.Y. 2024) ("[T]he date on which Plaintiff commenced her lawsuit is irrelevant" for EFAA purposes); *Montanus v. Columbia Mgmt. Inv. Advisers, LLC*, No. 25-cv-

---

[8] Indeed, Plaintiff was represented by a highly regarded attorney with "over two decades of experience . . . as a skilled trial attorney" who previously served as President of the Connecticut Bar Association.  Jonathon Shapiro, Aeton Law Partners LLP, https://www.aetonlaw.com/our-team/jonathan-shapiro/ (last visited May 13, 2026).

2798, 2025 WL 2503326, at *5 (S.D.N.Y. Sept. 2, 2025) (stating that the EFAA "does not apply retroactively").

Plaintiff invokes a "continuing violation" theory to bridge this gap, but the theory fails. The continuing violation doctrine, which is "heavily disfavored in the Second Circuit," *Montanus*, 2025 WL 2503326, at *5, allows claims to re-accrue only when "the ***defendant*** engages in an act that is 'part of the ongoing . . . practice.'" *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 88 (2d Cir. 2024) (emphasis added) (citation omitted). It has no application here because the Amended Complaint pleads no actions by any Defendant after March 3, 2022.

As a last resort, Plaintiff suggests that two post-EFAA allegations—regarding emotions she allegedly felt and text exchanges with a third party—bring the Agreement within the scope of EFAA. Opp. 29 (citing Am. Compl. ¶¶ 269-70). Plaintiff is wrong. Accepting Plaintiff's theory would allow any historic sexual assault or harassment claim to be recharacterized as post-EFAA simply because the plaintiff continued to feel its effects or discussed the past with others. Courts reject such boundless applications. *Montanus*, 2025 WL 2503326, at *6 ("[T]he continuing violation doctrine does not permit a litigant to pursue claims based on conduct predating the EFAA by citing later dissimilar acts."); *Khan v. Yale Univ.*, 85 F.4th 86, 100 (2d Cir. 2023) (holding that the doctrine requires "*the defendant*" to commit a later wrongful act (emphasis added)); *Olivieri*, 112 F.4th at 82-83, 91-92 (applying doctrine only where plaintiff alleged substantial post-March 3, 2022 conduct by the defendant, including role reassignment, removal of responsibilities, and exclusion from advancement).

**B.    The Speak Out Act Does Not Apply and Cannot Save the Opposition**

Recognizing the weakness of her EFAA argument, Plaintiff devotes five pages to the Speak Out Act—a statute that has nothing to do with arbitration. The Speak Out Act renders

9

unenforceable predispute "nondisclosure [] or nondisparagement clause[s]" in cases alleging sexual harassment or assault.  42 U.S.C. § 19403(a).  It does not regulate arbitration, which Congress separately addressed by enacting the EFAA earlier that same year.

Nevertheless, Plaintiff argues the Speak Out Act applies because "the arbitration clause" itself "contains a prohibited nondisclosure covenant."  Opp. 22.  It does not.  The Agreement's arbitration clause does not prohibit the parties from "disclos[ing] or discuss[ing] conduct, the existence of a settlement involving conduct, or information covered by the terms and conditions of the contract or agreement."  42 U.S.C. § 14902(1).  It simply designates AAA arbitration in "sealed proceedings that preserve the confidential and private nature of this Agreement."  Agmt. § X.  That is a standard arbitration clause—not a nondisclosure covenant.

Plaintiff further contends that arbitration is "merely another unenforceable mechanism to subject [her] to nondisclosure," citing a 2004 Buffalo Law Review article for the proposition that "the majority of courts have held [confidential arbitration] provisions unconscionable."  Opp. 22.  This assertion contradicts nearly two decades of Second Circuit precedent recognizing that "[c]onfidentiality is 'a paradigmatic aspect of arbitration'" that courts routinely enforce.  *Stafford v. Int'l Business Machines Corp.*, 78 F.4th 62, 71 (2d Cir. 2023) (quoting *Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008)); *see also American Family Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (rejecting argument that arbitration confidentiality provision was substantively unconscionable).  Plaintiff's scattershot invocation of contract cases on severability, illegality, and consideration fares no better.  *See* Opp. 23-25.  None discusses the Speak Out Act.  Only one addresses arbitration, and there, the court declined to sever an arbitration clause invoking tribal law as part of a scheme to "skirt state and federal consumer protection laws" entirely.  *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126-28 (2d Cir. 2019).  That bears no

10

resemblance to this case, where Plaintiff's state and federal claims will be adjudicated in arbitration.  Her remaining authority is even less apposite.[9]

Finally, Plaintiff's insistence on rebranding the Settlement Agreement as "the NDA" and characterizing nondisclosure as its "essence" is legally irrelevant and factually inaccurate.  *See* Opp. 23-24.  Despite the Opposition conveniently ignoring the $3 million she stood to collect under the Agreement had she performed, the Amended Complaint alleges that McMahon's failure to pay Plaintiff an additional $500,000 under the Agreement was a "breach[ of] a core term."  Am. Compl. ¶ 315.  In the Opposition, Plaintiff concedes the Agreement's purpose included "prohibit[ing] her from taking legal actions against McMahon and WWE"—expressly acknowledging the release of claims (while omitting that the releases were mutual), one of several independent provisions defeating any notion of a single "essence."  *See* Opp. 24.

## IV.    All Counts Are Arbitrable Regardless of Post-Agreement Allegations

Plaintiff argues that "the NDA only covers conduct 'up to and including the date of her execution of this Agreement,'" (the "Execution Date") and as a result, all *counts* that include post-Settlement Agreement allegations are non-arbitrable and must remain in court.  Opp. 28.  Plaintiff is wrong.  In "construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties.  In this endeavor, as with any other contract, the parties' intentions control."  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (citations omitted).  The Settlement Agreement provides that Plaintiff "shall not institute or be a party to any lawsuits [] against McMahon and/or WWE as to *any matters* up to the date of

---

[9] *See, e.g., Nielsen v. Van Leuven*, No. 15-cv-1154, 2017 WL 3925412, at *2 (D. Conn. Sept. 7, 2017) (addressing enforceability of a substantive contract provision that required Defendant "to have oral sex up to five times a week"); *Venture Partners, Ltd. v. Synapse Techs., Inc.*, 679 A.2d 372, 377 (Conn. App. Ct. 1996) (addressing consideration and severability of a technology development contract); *Squillante v. Capital Region Dev. Auth.*, 266 A.3d 940, 950-52 (Conn. App. Ct. 2021) (addressing the absence of an essential term in a contract formation dispute).

11

execution of this Agreement."  Agmt. § II.E (emphasis added).  The parties' use of "matters" elsewhere confirms the term is used in its colloquial sense—to mean general "issues" or "situations," not discrete legal claims.  *See, e.g.*, Agmt. at 1 (the parties agree "to avoid any damage caused by public disclosure of *private matters* known to Grant and McMahon" (emphasis added)); *id.* § I.C (addressing "matters required to be kept confidential").  When the Agreement refers to components of litigation, it does so using precise legal terminology: "causes of action, claims, demands, [and] suits."  *Id.* § II.F.

Under the NDA's plain terms, then, any claim that depends on pre-Execution Date conduct must be arbitrated, even if the claim addresses post-Execution Date conduct too.  Established precedent reinforces this result.  To determine "whether a particular claim falls within the scope of the parties' arbitration agreement," the Second Circuit has instructed that "[i]f the allegations underlying the claims '*touch matters*' covered by the parties' contracts, then those claims must be arbitrated, whatever the legal labels attached to them."  *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 77 (2d Cir. 1998) (emphasis added) (citations and alteration omitted), *abrogated on other grounds by Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015).

Plaintiff thus has it backwards when she argues that any claim that touches *post*-Execution Date conduct must remain in federal court, no matter if it also implicates pre-Execution Date conduct.  *See* Opp. 28 ("Because claims IV, V, VI, VIII, and IX include post-NDA conduct, they must remain in court as they are not covered by the arbitration clause.").  That position ignores the plain terms of the NDA and Second Circuit precedent.  To be clear: the continuing tort doctrine does not salvage Plaintiff's argument.  It governs accrual, not arbitrability, and is thus beside the point.  *See Falso v. Town of Dansville Police Dep't*, 616 F. App'x 11, 12 (2d Cir. 2015) (explaining that the "continuing tort doctrine speaks to when a cause of action accrues").

12

If the Court nonetheless determines that Plaintiff's "dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011) (per curiam).  "A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration."  *Id.*

## V.    The Validly Executed Settlement Agreement Does Not Offend Public Policy

The Settlement Agreement was not drafted or signed in furtherance of any crime—nor did the SEC or Second Circuit find otherwise.  The Court should thus reject Plaintiff's argument that the SEC order or Second Circuit findings impact arbitrability.

### A.    The SEC Order Does Not Void the Settlement Agreement

In 2025, McMahon entered into an agreement with the SEC "without admitting or denying the findings"—directly refuting Plaintiff's claim that McMahon has admitted criminal conduct. *See* SEC Order; SEC Press Release, at 2; Opp. 19.  This is the third time Plaintiff has intentionally misconstrued the SEC record.  *See* ECF Nos. 94-1, 126-1.  To be clear, neither the SEC Order nor the agency's press release suggests McMahon coerced Plaintiff into executing the Settlement Agreement or that the Agreement is unenforceable.  *See* ECF No. 98 at 11-13, ECF No. 127 at 11-12.  On the contrary, the fact that WWE had to restate its financials to account for the Settlement Agreement, as referenced in the SEC Order, confirms its validity.  *See id.*; SEC Order ¶¶ 5, 37.

In any event, an otherwise valid agreement is not voided by an illegal act that is neither part of the bargained-for exchange nor required for performance.  *See Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 414-15 (2d Cir. 2025) (explaining that illegality voids a contract only if "performance of the contract *itself* is unlawful, not merely [that] the *conduct* of a party to the contract is unlawful").  Whether McMahon disclosed the Settlement Agreement to WWE is, at most, "merely collaterally rather than directly connected with" Plaintiff's alleged coercion and

13

duress. *Contemp. Mission, Inc. v. Bonded Mailings, Inc.*, 671 F.2d 81, 83-84 (2d Cir. 1982). And even if the conduct underlying the SEC Order related directly to the Settlement Agreement, a consent order "does not embody the forceful legal mandate necessary to justify permitting a third party to rely upon it in order to relieve [themself] from an obligation that [they] ha[ve] voluntarily assumed." *May Dep't. Stores Co. v. First Hartford Corp.*, 435 F. Supp. 849, 853 (D. Conn. 1977).

### B.      The Anonymized Second Circuit Opinion Has No Bearing Here

Plaintiff also mischaracterizes the Second Circuit's anonymized crime-fraud opinion. *See* Opp. at 18-19. Her claim that the decision vitiates the Settlement Agreement finds no support in the opinion's text. To the contrary, the court expressly declined to opine on guilt or evidentiary sufficiency, leaving those questions to "prosecutors [and] grand jurors … as the investigation progresse[d]." *In re Grand Jury Subpoenas Dated September 13, 2023*, 128 F.4th 127, 145-46 & n.19 (2d Cir. 2025). In any event, McMahon was never criminally indicted, charged, or prosecuted in connection with the Settlement Agreement.

### VI.      Plaintiff Cannot Meet Her Burden for Any Motion-Related Discovery

As set forth in McMahon's Opposition to Plaintiff's Renewed Motion for Discovery, filed contemporaneously herewith, Plaintiff cannot meet her burden for any motion-related discovery because she cannot provide reliable evidence that she did not intend to be bound by the arbitration agreement. In any event, Plaintiff's discovery requests are overly broad and not narrowly tailored to the relevant issues.

### CONCLUSION

For the foregoing reasons and those in the Motion, Defendant Vincent K. McMahon respectfully requests that the Court grant his Motion to Compel Arbitration.

Date: May 13, 2026                              Respectfully submitted,

                                  **AKIN GUMP STRAUSS HAUER &**
                                  **FELD LLP**

                    By:    */s/ Jessica T. Rosenberg*

                           Jessica T. Rosenberg
                              (admitted *pro hac vice*)
                           Ilana Roberts
                              (admitted pro hac vice)
                           One Bryant Park
                           New York, NY  10036
                           Telephone: (212) 872-1000
                           Facsimile: (212) 872-1002
                           jrosenberg@akingump.com
                           iroberts@akingump.com


                           **McCARTER & ENGLISH, LLP**
                           James A. Budinetz (ct16068)
                           Snigdha Mamillapalli (ct31142)
                           CityPlace I, 185 Asylum Street
                           Hartford, CT  06103
                           Telephone: (860) 275-6765
                           Facsimile: (860) 724-3397
                           jbudinetz@mccarter.com
                           smamillapalli@mccarter.com

15

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 13, 2026, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all Parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*/s/ Jessica T. Rosenberg*