**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JANEL GRANT<br><br>        Plaintiff,<br><br>v.<br><br>WORLD WRESTLING ENTERTAINMENT, INC. n/k/a WORLD WRESTLING ENTERTAINMENT, LLC; and VINCENT K. MCMAHON,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)  Case No.: 3:24-cv-00090-SFR<br>)<br>)<br>)<br>)<br>)  May 27, 2026<br>)<br>)<br>)<br>) |

**PLAINTIFF'S OMNIBUS REPLY TO DEFENDANTS' OPPOSITIONS TO RENEWED MOTION FOR LEAVE TO SERVE MOTION-RELATED DISCOVERY**

Plaintiff Janel Grant ("Plaintiff" or "Ms. Grant") hereby files her omnibus reply to Defendant Vincent K. McMahon ("McMahon")'s Opposition to Plaintiff's Renewed Motion for Leave to Serve Motion-Related Discovery, dated May 13, 2026 (ECF No. 146) ("McMahon Opp."), and Defendant World Wrestling Entertainment, Inc. n/k/a World Wrestling Entertainment, LLC ("WWE")'s Opposition to Plaintiff's Renewed Motion for Leave to Serve Motion-Related Discovery, dated May 13, 2026 (ECF No. 144) ("WWE Opp."), in further support of her Renewed Motion for Leave to Serve Motion-Related Discovery dated April 1, 2026 (ECF No. 140) (the "Motion"). McMahon and WWE are hereinafter each referred to as a "Defendant" and together, the "Defendants." Plaintiff respectfully requests that the Court grant her Motion for limited discovery related to the Defendants' pending Motions to Compel Arbitration (ECF Nos. 122, 124).

## I.    INTRODUCTION

The Court gave Plaintiff a second opportunity to move for motion-related discovery for a reason. Neither Opposition addresses the elephant in the room: this case involves allegations of

sex trafficking under 18 U.S.C. § 1591.  Courts and legislatures have moved proactively to shift the burden of enforced arbitration clauses off of victims in cases involving sexual harassment and assault, as evidenced by the federal Ending Forced Arbitration Act ("EFAA"), 9 U.S.C. § 402.  The EFAA would render the arbitration clause at issue here voidable at Plaintiff's election relating to claims of sexual harassment or assault, thus barring the Defendants from compelling her to arbitration.    Thus, if the Court determines that the EFAA applies, the entire arbitration enforceability question is moot.  While Plaintiff acknowledges that there is a strong policy favoring arbitration, that policy must yield to the even stronger public policy against sex trafficking and in favor of allowing victims their opportunity to face their accusers in open court, without being silenced by confidential arbitrations.  At the very least, discovery is needed to determine whether Ms. Grant's claims fall within the EFAA's scope and time limitations.

WWE's Opposition to motion-related discovery rests on a doctrinal technicality, that Ms. Grant must identify documents needed as to *only* the arbitration clause specifically; WWE Opp., at 8-13; while ignoring the unprecedented factual context of sex trafficking and coercive control allegations in this case.  WWE, through its own admissions and available public records, confirms that McMahon operated through deception and concealment, which is the very conduct that makes the discovery sought necessary.  McMahon's Opposition, on the other hand, boils down to two propositions: (1) Ms. Grant should already have all of the evidence she needs, and (2) even if she doesn't, her requests are too broad.  McMahon Opp. at 5-8.  Neither withstands scrutiny.  McMahon's central argument – that evidence of coercion is exclusively within the victim's possession – fundamentally misunderstands the nature of coercive control and reflects an outdated view of duress in contract formation.

## II.    ARGUMENT

### A. Ms. Grant Has Presented Reliable Evidence Specific to the Arbitration Provision.

Defendants argue at length that Ms. Grant has only made a "naked assertion" that she did not agree to arbitrate, which is insufficient to carry her burden in seeking motion-related discovery. *See* McMahon Opp. at 3; WWE Opp. at 7-8.  Despite Defendants' assertions that Ms. Grant has not provided anything more than bare or conclusory assertions that she did not agree to arbitrate, Ms. Grant has submitted a 93-page Amended Complaint with detailed factual allegations of coercive control spanning years (ECF No. 117), a sworn Declaration specifically attesting to her psychological state during the negotiation of the agreement at issue (ECF No. 138-3), and an expert Declaration from Dr. Raghavan, a clinical psychologist, who provides the clinical framework explaining why Ms. Grant could sign an agreement containing an arbitration clause without meaningfully consenting to it (ECF No. 138-4).  This can hardly be considered "no evidence," particularly when no formal discovery has yet occurred.

More specifically, Paragraph 130 of Ms. Grant's Declaration is not a bare denial, as Defendants claim.  *See* WWE Opp. at 11.  Instead, it is a sworn statement attesting to Ms. Grant's extremely psychological state (distress, sleep deprivation, fear) that specifically prevented her from recalling or meaningfully consenting to the arbitration clause.  Defendant WWE also argues that Paragraph 260 of the Amended Complaint, stating that Ms. Grant was specifically apprised of the arbitration provision by her counsel, undercuts her claim that she was "somehow tricked or unduly pressured into agreeing to that provision."  *See* WWE Opp. at 13.  On the contrary, this allegation actually supports Plaintiff:  her counsel flagged the arbitration clause <u>because it was unusual and onerous</u>, and McMahon simultaneously pressured Grant to accept the NDA "quickly

and without further change" – *i.e.*, without revising the arbitration clause.  This allegation demonstrates coercion <u>specific</u> to the arbitration provision.

Ms. Grant has provided substantially more evidence than any of the plaintiffs in the cases upon which Defendants rely, which are each readily distinguishable in that they involve either routine employment or commercial arbitration agreements – not allegations of sex trafficking and coercive control under 18 U.S.C. § 1591 – where the party opposing arbitration simply had no factual basis for its arguments opposing arbitration.[1]

Defendant WWE places great emphasis on its assertion that Ms. Grant must put forward "reliable facts or evidence challenging the arbitration provision in particular, as opposed to the agreement containing the arbitration provision as a whole."  WWE Opp. at 9.  However, this distinction does not apply where coercion corrupted Ms. Grant's capacity to consent.  When a party lacks the mental capacity to consent due to coercive control, the incapacity necessarily extends to every provision, including an arbitration provision.  This is distinct from the *Buckeye* and *Grimmett* cases relied on by WWE, which dealt with fraudulent inducement as to the contract generally, and did not address incapacity or coercion destroying free will.  *See Buckeye Check Cashing, Inc. v.*

---

[1] *See, e.g., Gonder v. Dollar Tree Stores, Inc.*, 144 F. Supp.3d 522, 528 (compelling arbitration of Title VII racial discrimination and retaliation claims where plaintiff alleged only a bald assertion that he did not recall signing at-will employment agreement); *Filho v. OTG Mgmt., LLC*, 2022 WL 4567498, at *3 (S.D.N.Y. Sept. 29, 2022) (compelling arbitration for a subset of opt-in plaintiffs in a putative class action for FLSA and wage and hour violations where plaintiffs raised only conclusory assertions that they did not recall signing or were uncertain if signatures were theirs, without more); *Moton v. Maplebear Inc.,* 2016 WL 616343, at *5 (S.D.N.Y. Feb. 9, 2016) (compelling arbitration and denying motion-related discovery on FLSA and New York Labor Law claims where plaintiff claimed only that his electronic signature "look[ed] different" than his actual signature and defendant provided audit trail to substantiate that agreement was validly signed); *Flores v. National Football League*, 2022 WL 3098388, at *2 (S.D.N.Y. Aug. 4, 2022) (denying discovery related to motion to compel arbitration where plaintiffs sought additional agreements between themselves and the defendants that "might bear on the issue of arbitration" in part to determine whether any subsequent contract invalidated their agreement to arbitrate, and holding that the plaintiffs should know whether they entered into any other contracts or agreements that would impact their agreement to arbitrate); *but see Billie v. Coverall North America, Inc.,* 444 F. Supp. 3d 332 (D. Conn. 2020) (holding that unconscionable terms in arbitration agreement could preclude enforcement of agreement under Connecticut law, but finding that no such unconscionability existed in commercial arbitration agreement where plaintiffs claimed that delegation provision had not been explained to them).

*Cardegna*, 546 U.S. 440, 444-45 (2006) ("if the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it.  But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally."); *Grimmett v. DMM Solutions, Inc.*, 2024 WL 5090009, at *3 (S.D.N.Y. Dec. 11, 2024) (granting targeted discovery on motion to compel, but denying request for discovery on theory that arbitration provision was fraudulently induced because her allegations "relate to the contract as a whole, rather than to the arbitration agreement in particular").

Plaintiff urges this Court to adopt a pragmatic approach, allowing discovery into the circumstances of the Agreement's formation where the allegations, if proven, would establish that the victim lacked capacity to consent to the arbitration provision.

**B.  Evidence of Coercion is Not Exclusively Within Ms. Grant's Possession.**

Defendant McMahon spends the majority of his Opposition arguing that all evidence that Ms. Grant could possibly need of coercion is exclusively within her possession, custody, and control.  McMahon Opp. at 5-11.  Defendant McMahon argues that "[c]oercion and duress are not schemes hatched in secret; they are words and actions directed at the subject[.]" *Id.* at 6.  McMahon is correct that Ms. Grant has in her possession what represents her side of the communications.  McMahon's words and actions, however, are documented in his communications, his emails to counsel,[2] and his instructions to WWE personnel, which would evidence what he was doing and why.  While the victim experiences coercion, the perpetrator plans and executes it, and it logically follows that documents evidencing the perpetrator's intent and strategy are not within the victim's

---

[2] Which are no longer privileged, pursuant to the Second Circuit's ruling that they were made in furtherance of a crime. *See In Re: Grand Jury Subpoenas Dated September 13 (2025)*, Case Nos. 24-1588-cv (L), 24-1589-cv (Con) (2d Cir. 2025).

possession.   McMahon's side of the communications, including his internal strategy, his instructions to lawyers in drafting the agreement, his communications with WWE about Ms. Grant, are exclusively in his possession.

Likewise, WWE argues that the evidence of duress is in Ms. Grant's possession; WWE Opp. at 17; but does not account for the fact that McMahon's internal communications, strategy documents, and instructions about structuring the agreement to maximize enforceability would be uniquely in Defendants' possession.

Defendants' demands for "reciprocal discovery" are an implicit acknowledgement that such discovery is relevant and material to the Court's adjudication of the pending motions.   WWE requests "equivalent reciprocal discovery from Grant".   WWE Opp. at 19.   Similarly, McMahon argues that no discovery is warranted and then requests reciprocal discovery into Grant's communications and Dr. Raghavan's materials.   McMahon Opp. at 10.   This concession, along with his counsel's demand for all of Dr. Raghavan's materials on April 15, 2026, stating that "[w]e need the materials to respond to your submission",[3] underscores Ms. Grant's contention that discovery is indeed relevant to the present motion.   If, as McMahon argues, the evidence Ms. Grant seeks truly adds nothing, then he would not "need" reciprocal disclosure from her for his Reply brief.   As McMahon believes that the 81,000 documents and 30 hours of interviews with Plaintiff are relevant to the arbitration question, he cannot simultaneously argue that discovery into his own files on the same question is unwarranted.

### C. McMahon's Proposal to Limit the Scope of Motion-Related Discovery to A Three-Week Period is Insufficient.

Defendants' own inconsistent positions make clear that targeted, motion-related discovery is appropriate in this case.   However, this Court should not accept McMahon's proposal that

---

[3] A copy of the email exchange between counsel is appended hereto as Exhibit A.

discovery be limited to the "three weeks over which the Settlement Agreement was negotiated." McMahon Opp. at 11. Coercive control, the theory underlying Ms. Grant's sex trafficking claims, is, by definition, a pattern of behavior that develops over months or years. The negotiation of the Settlement Agreement was the culmination of the coercive control relationship, not its entirety. Limiting discovery to the negotiation window would exclude evidence of the broader coercive relationship that vitiated Ms. Grant's free will, which is essential to understanding why Ms. Grant was unable to resist the arbitration clause during those three weeks.

Additionally, documents related to the time period after execution of the agreement are particularly relevant because the parties disagree about the applicability of the EFAA. Plaintiff has alleged that acts of trafficking occurred after the execution of the arbitration provision, bringing it within the scope of the EFAA's protections and rendering it unenforceable. Ms. Grant does not oppose reasonable, reciprocal discovery. But reciprocity presupposes that some discovery is appropriate, which is all Ms. Grant has asked for.

### D. The SEC Order, Crime Fraud Decision, and Delaware Shareholder Litigation Are Directly Relevant to the Issue of Enforcement of the Arbitration Provision.

Defendants argue that the SEC Order presumes or presupposes the Agreement's enforceability. McMahon Opp. at 9; WWE Opp. at 13-14. However, the SEC Order also confirms that McMahon concealed the Agreement from WWE's own legal and accounting departments, conduct that speaks directly to McMahon's intent to operate outside normal corporate oversight. If McMahon concealed the Agreement from his own company, the inference that he would structure its terms (including the arbitration provision) in a way to prevent public scrutiny of his conduct is entirely reasonable and warrants discovery into the formation of the Agreement. The SEC Order's finding that McMahon failed to disclose the Agreement confirms that the Agreement was designed to operate in secrecy – an environment that is conducive to threats and coercion.

7

Further, the SEC Order's relevance is not limited to the arbitration clause in isolation, it speaks to McMahon's pattern and practice of using legal agreements to conceal misconduct through the use of confidential arbitration provisions.

Likewise, the Crime Fraud Decision found probable cause that McMahon used attorney-client communications to conceal the very Agreement that is the subject of the instant suit from WWE's internal controls.  Specifically, the Second Circuit upheld the District Court's decision that "**[e]very edit to the draft agreement and every discussion about the negotiations and how to structure the deals played a role in keeping the Victims quiet and the Company . . . in the dark**." *In re Grand Jury Subpoenas Dated September 13, 2023*, 128 F.4th 127, 145 (2d Cir. 2025) (emphasis added).  The communications at issue, which are no longer protected by the attorney-client privilege because they were in furtherance of a crime or fraud, go directly to the formation of the Agreement with Ms. Grant and the arbitration clause in particular.  Because McMahon was willing to deceive his own company, through the use of his attorney who drafted this Agreement <u>and</u> the arbitration provision at issue, the inference that he would be willing to coerce a vulnerable employee into an arbitration clause to prevent public litigation is more than reasonable.

Similarly, Defendants attempt to downplay the core of the allegations in the Delaware Shareholder Litigation, stating that it only has to do with the merger between WWE and Endeavor and has "nothing to do with whether Plaintiff agreed to arbitrate."  McMahon Opp. at 10.  On the contrary, the crux of the Delaware Shareholder Litigation is whether McMahon and his executives orchestrated the merger in such a way that McMahon would be able to remain in charge, despite WWE's awareness of his sexual misconduct with Ms. Grant and resulting NDA.  The Delaware Shareholder Litigation involves testimony about McMahon's exercise of control over WWE, his willingness to subordinate others' interests to his own, and the corporate environment in which the

Agreement was drafted, negotiated, and executed.[4]  This context is directly relevant to whether Ms. Grant was coerced.  Further, Defendants have produced substantial records related to the formation of the Agreement at issue here and Plaintiff's state of duress during that time. Defendants' agents have all testified under oath about their personal knowledge of the circumstances surrounding the formation of the NDA.  This testimony and evidence is directly relevant to the factual disputes surrounding Defendants' efforts to enforce the Agreement and compel arbitration in this action.

### E.  Defendants' Burden Arguments are Overstated.

Ms. Grant's Updated Discovery Requests seek documents that <u>have already been collected, screened for privilege, and produced</u> in response to government investigations and the Delaware Shareholder Litigation.  WWE's claim that re-production of documents relating to the Delaware Shareholder Litigation would take "many months" is belied by the fact that these documents have already been collected, reviewed, and produced in the Delaware action or to government investigators.  Re-production in this action would be ministerial and the burden minimal.  Any privilege concerns can be managed through a negotiated protective order and privilege log, as the parties would undertake in any complex litigation.

Further, counsel for Ms. Grant has offered to meet and confer with Defendants' counsel to discuss reasonable limits on motion-related discovery, including in response to this Court's instructions last summer.  *See* ECF No. 126-1, at 3.  Requests for Defendants to simply re-produce materials from the others related actions present a minimal burden.  If the discovery sought in this

---

[4] In fact, submissions filed the Shareholder Litigation on May 23, 2026, directly reference Plaintiff (pseudonymously) and quote her counsel.  *See In re World Wrestling Entertainment, Inc. Merger Litigation*, 2023-1166-JTL (Del. Ch. 2023), Prop. Stip. Pre-Tr. Mot., E-file 79550417, ¶¶ 134-135, 137, 204, 217.

motion is ordered, Plaintiff remains willing to meet and confer to resolve reasonable scope and burden objections on her other Requests.

The real prejudice is to Ms. Grant, who is being forced to oppose a motion to compel arbitration without access to evidence uniquely in Defendants' possession. Requiring a trafficking victim to articulate clause-specific coercion before receiving any discovery creates an impossible scenario: she cannot identify evidence specific to the arbitration clause without discovery, but she cannot get discovery without evidence specific to the arbitration clause.

## III.    CONCLUSION

Ms. Grant has met her burden, and the Court should grant limited, motion-related discovery as to the pending motions to compel arbitration. At minimum, the Court should permit discovery into: (1) communications concerning the drafting and negotiation of the arbitration clause; (2) McMahon's communications concerning Grant during the NDA negotiation period; and (3) documents already produced to government investigators and in the Delaware Shareholder Litigation concerning Ms. Grant and/or the Agreement.

**PLAINTIFF JANEL GRANT**

/s/  Ann E. Callis
HOLLAND LAW FIRM, LLC
Eric D. Holland (phv207692)
Gregory R. Jones (phv207693)
211 North Broadway, Suite 2625
St. Louis, MO 63102
Tel: (314) 241-8111/Fax: (314) 241-5554
eholland@hollandtriallawyers.com
gjones@hollandtriallawyers.com

Ann E. Callis (phv207694)
6181 Bennett Drive, Suite 210
Edwardsville, Illinois 62025
Tel: (618) 452-1323/Fax: (618) 452-8024
acallis@hollandtriallawyers.com

/s/ Aaron C. Lang
Aaron C. Lang (phv51511)
NELSON MULLINS RILEY & SCARBOROUGH LLP
330 Madison Avenue, 27th Floor
New York, New York 10017
Tel: (267) 229-6029
Aaron.lang@nelsonmullins.com

/s/ Erica O. Nolan
David A. Slossberg (ct13116)
Erica O. Nolan (ct31097)
Julie V. Pinette (ct30573)
HURWITZ, SAGARIN & SLOSSBERG, LLC
135 Broad Street
Milford, CT 06460
Tel: (203) 877-8000/Fax: (203) 878-9800
DSlossberg@hss.law
ENolan@hss.law
JPinette@hss.law

11

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on May 27, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to all parties that are unable to accept electronic filing.  Parties may access this filing through the Court's electronic system.

*/s/ Erica O. Nolan*
Erica O. Nolan (ct31097)